# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| JOHN T. LAMONT and PRESTON POULTER, | § § § | |
| Plaintiffs, | § § | Civil Action No. 3:21-CV-1176-K |
| v. | § § § | |
| DEAN ASSAF A/K/A DA TALK VICTORIA KUNDERT A/K/A VIKKIVERSE, AND ETHAN VAN SCIVER. | § § § § § § | Judge Kinkeade |
| Defendants. | § | |

## DEFENDANT ETHAN VAN SCIVER'S
## MOTION TO DISMISS AND BRIEF IN SUPPORT

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................... iii

I. INTRODUCTION ............................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................ 3

III. LEGAL STANDARDS ..................................................................................... 6

    A.    Request for Judicial Notice ..................................................................... 6

    B.    Personal Jurisdiction Exists When a Defendant Purposefully Avails Himself of the Privilege and Benefits of the Forum. ............................................... 6

    C.    A Plaintiff Must Plead Plausible Claims to Avoid a Rule 12(b)(6) Dismissal. ... 8

IV. ARGUMENTS AND AUTHORITIES ............................................................. 8

    A.    Internet Contacts from a "Passive Website" Are Not Sufficient to Establish Personal Jurisdiction. .............................................................................. 8

    B.    Van Sciver Has No Contacts with Texas. ............................................... 9

V. FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6) ........................ 10

    A.    There Is No Nexus Between the Alleged Defamatory Video and the Alleged Damage Because (1) Plaintiffs' Campaign Was Canceled Before the Video and (2) the Campaign Violated Terms of Service of the Hosting Website. ............ 10

    B.    Opinions Are Not Actionable. ............................................................. 10

VI. CONCLUSION ................................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                                            **Pages**

*Ashcroft v. Free Speech Coalition*,
   535 U.S. 234 (2002) .................................................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................8

*Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*,
   976 F.3d 585 (5th Cir. 2020) .....................................................................................6

*Burger King Corporation v. Rudzewicz,*
   471 U.S. 462 (1985) ...................................................................................................9

*Chapin v. Knight-Ridder, Inc.*,
   993 F.3d 1087 (4th Cir. 1993) .................................................................................12

*Clemens v. McNamee*,
   615 F.3d 374 (5th Cir.2010) ......................................................................................7

*Dodds v. ABC, Inc.*,
   145 F.3d 1053 (9th Cir. 1998) .................................................................................12

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
   141 S.Ct. 1017 (2021)................................................................................................6

*Guidry v. Bank of LaPlace,*
   954 F.2d 278 (5th Cir.1992) ......................................................................................8

*Hawbecker v. Hall*,
   88 F.Supp.3d 723 (W.D. Tex. 2015) .....................................................................7, 8

*Hawbecker*, 88 F.Supp. at 731 ........................................................................................9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ...................................................................................................7

*In re Enron Corp. Securities, Derivative*,
   511 F.Supp.2d 742 (S.D. Tex. 2005).......................................................................11

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) .....................................................................................................11

*Revell v. Lidov*,
   317 F.3d 467 (5th Cir. 2002) .....................................................................................7

*U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*,
   336 F.3d 375 (5th Cir. 2003) ..................................................................................... 8

*Walden v. Fiore*,
   134 S.Ct. 1115 (2014) ................................................................................................ 9

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*,
   952 F.Supp. 1119 (W.D.Pa.1997) ............................................................................. 8

**Rules**

Fed. R. Civ. P. 12(b)(2) ........................................................................................... 1, 12

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1, 12

Fed. R. Evid. 201(b) ..................................................................................................... 6

Defendant Ethan Van Sciver ("Van Sciver") respectfully moves the Court to dismiss this lawsuit against him because: (1) the Court lacks personal jurisdiction over him pursuant to Fed. R. Civ. P. 12(b)(2); and (2) because the First Amended Complaint, Doc. No. 6, fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

I.   INTRODUCTION

As Plaintiffs allege in the First Amended Complaint, Van Sciver is a resident of New Jersey where he grew up. He has worked in the comic book industry for decades, including at DC Comics and more recently as an industry commentator, at all times while residing in New Jersey. As an industry commentator, Van Sciver has developed and used a trademark, COMICSGATE. Recently, Plaintiff Preston Poulter has used and claimed a right to this trademark.

Plaintiffs are independent comic book creators who have filed this suit against Van Sciver in connection with two comments Van Sciver made during one online broadcast where he said he did not want his trademark placed on material that he deemed graphic and inappropriate. The comments were made during an online show broadcast on YouTube during which Van Sciver's COMICSGATE mark and Plaintiffs' work called "The Demonatrix" were discussed. Van Sciver was a guest participant on that single YouTube broadcast, a 1 hr. 8 min. "livestream" (broadcast to approximately 750 viewers) on April 25, 2021.[1] Notably, during the

---

[1] The live stream is available online at
<https://www.youtube.com/watch?v=PqjGXuJuVcg&t=2793s>
(indicating 757 views when last visited on 8/3/2021).

**DEFENDANT ETHAN VAN SCIVER'S MOTION**
**TO DISMISS AND BRIEF IN SUPPORT**                                                                    **PAGE 1**

livestreamed discussion, Defendants displayed Plaintiffs' own drawing,[2] which enabled viewers to form their own opinions about whether the material was graphic.

Plaintiffs allege only two statements made by Mr. Van Sciver were defamatory:

(1) "I don't want Preston to make child pornography and put Comicsgate on it."

and,

(2) "In order to have a trademark you have to protect it. I will not allow it to be put on child pornography by Preston Poulter."

Am. Compl., Doc. No. 6, at 8, ¶18. Based on these two statements Plaintiffs allege a host of damages. Mr. Poulter alleges, "on Kickstarter, former customers refused to support him citing his association with a 'pedophile'" and that Mr. Poulter will "continue to suffer pain and mental anguish" since the remarks "have been disseminated into a large part of the community of comic book professionals and enthusiasts." *Id*. at 15, ¶1.f. Yet, as shown below, the Kickstarter campaign was cancelled *before* the allegedly defamatory statements were made.

Mr. Lamont makes similar damages allegations, adding Kickstarter "declined to approve his next book project" and "has shut him out with unprecedented demands." *Id.* at 16, ¶2.b.

Critically, Plaintiffs have not alleged any facts that establish that this Court has personal jurisdiction over Van Sciver, and dismissal of the claims against him is therefore warranted. Further, the claims Plaintiffs have alleged against Van Sciver do not state a claim upon which relief can be granted because the alleged damages were incurred prior to the alleged defamation

---

[2] As independent comic book creators, Plaintiffs must obtain their own funding and had apparently sought funding for "The Dominatrix" by crowdfunding on the platform Kickstarter.

**DEFENDANT ETHAN VAN SCIVER'S MOTION**
**TO DISMISS AND BRIEF IN SUPPORT**                                                      **PAGE 2**

and Plaintiffs fail to plead all elements of their claims. Accordingly, Van Sciver requests the Court dismiss this suit against him because (1) this Court lacks personal jurisdiction over him, and (2) Plaintiffs have failed to state a claim upon which relief can be granted.

## II. FACTUAL BACKGROUND

The alleged defamation stems from a comic book discussion on the YouTube channel entitled "VikkiVerse" hosted by Defendant Victoria Kundert and co-hosted by Defendant Dean Assaf on April 25, 2021. Like many YouTube channels, it preserved this broadcast in the public record, word for word, which allows the reproduction of the allegedly defamatory statements, in context, as they occurred.[3]

The context shows that Defendants accurately portrayed Plaintiff's as comic book creators and even displayed the image from Plaintiffs' Kickstarter campaign for the comic in question, "The Demonatrix." Viewers of the livestream saw for themselves exactly what Plaintiffs were producing, a cartoon drawing, and would have easily recognized that the use of the phrases "child pornography" and "pedophiles" was merely hyperbolic descriptions of the cartoon drawing.

The discussion involving Plaintiffs began with a discussion about Defendant Van Sciver's efforts to trademark the word COMICSGATE and to discredit Preston Poulter's claims to the mark. During this discussion, the hosts played pre-recordings of both Mr. Poulter and Mr. Van Sciver discussing the trademark issue. The image below of Plaintiffs' comic, "The

---

[3] Available online at <https://www.youtube.com/watch?v=PqjGXuJuVcg&t=2793s>

Demonatrix," the subject of this defamation lawsuit, appeared during this discussion. Appendix ("Appn") at 3-6, Ex. 1.



**From 16:22 to 16:51** (The image above, from Plaintiffs' Kickstarter campaign, appears at 16:44. Nudity redaction in the original. Logo detail, at the right, is added for clarity.)

```
MR. VAN SCIVER (prerecorded):

So COMICSGATE is trademarked and feel free. As long as
you abide by the principles and rules, the standards
that we all kind of understand COMICSGATE is, there's
going to be no problem. If you want to publish child
pornography under the COMICSGATE banner, that's gonna be
a problem. Or anything like that. And in, in that
instance I will come down and exercise my trademark and
protect the trademark.
```

From 30:10 to 30:38 (Mr. Van Sciver joins the livestream in person):

```
Mr. Assaf:
```

(crosstalk). . . want to hear your side of things,

Mr. Van Sciver:

Well, I mean you know my side of things, fortunately, I, you know I talk about almost everything pretty openly on my channel. But I mean, you know my side of things is that is that it's pretty demonstrable that COMICSGATE has been used in commerce by me and me alone, up until Preston decided he would try to spite trademark the term.

From 33:26 to 34:11:

MR. VAN SCIVER:

. . . I just don't think anybody is going to get very upset and think that I'm, you know, coopting a movement. All of those accusations have already been made and put into play, and they amounted to nothing. <u>So I just, I don't want Preston to make child pornography and put COMICSGATE on the label. You know what I mean</u>?"

At 46:24 to 46:33:

MR. VAN SCIVER:

<u>In order to have a trademark you do have to protect it. So I will protect it in that way. I will not allow it to be put on child pornography by Preston Poulter</u>.

Appn at 3-6, Ex. 1.

---

**DEFENDANT ETHAN VAN SCIVER'S MOTION**
**TO DISMISS AND BRIEF IN SUPPORT**                                                             **PAGE 5**

As demonstrated above, Mr. Van Sciver was discussing his efforts to protect his trademark COMICSGATE against an improper use by Plaintiffs. The improper use was prominently displayed during the discussion.

### III. LEGAL STANDARDS

#### A. Request for Judicial Notice

To the extent the Court references the above livestream excerpts and the attachments to this motion when deciding the motion, Van Sciver respectfully requests this Court take judicial notice of those materials because those are specifically referenced and incorporated into Plaintiffs' First Amended Complaint. In particular, Plaintiffs refer to the livestream as the source of defamation and statements in the livestream. The other documents also expand on items directly referred to in the complaint, the Plaintiff's "The Demonatrix" campaign on Kickstarter and Kickstarter as a party before whom Plaintiffs' reputation has been damaged. Thus, the campaign and the basic facts about Kickstarter, its location, are also incorporated, by reference, into the complaint and not matters outside of the pleadings.

Under such circumstances the Court can properly take judicial notice. *See e.g. Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020). The livestream and the three exhibits are obtained from public records and are not subject to reasonable dispute. Their content "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id*. (quoting Fed. R. Evid. 201(b)).

#### B. Personal Jurisdiction Exists When a Defendant Purposefully Avails Himself of the Privilege and Benefits of the Forum.

As the United States Supreme Court recently stated, "a tribunal's authority depends on the defendant's having such "contacts" with the forum State that "the maintenance of the suit"

is "reasonable, in the context of our federal system of government," and "does not offend traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S.Ct. 1017, 1024 (2021).

In order to establish personal jurisdiction in a diversity case over an out-of-state defendant, the plaintiff must present *prima facie* evidence that "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Hawbecker v. Hall*, 88 F.Supp.3d 723, 727 (W.D. Tex. 2015) (citing *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir.2010)).

"Because Texas's long-arm statute reaches to the constitutional limits," it is only necessary to assess if the Court's exercise of personal jurisdiction offends due process. *Id*. (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984)). Due process is satisfied when (1) the "defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Hawbecker*, 88 F.Supp.3d at 727.

Minimum contacts are found, supporting specific personal jurisdiction "when the defendant's contacts with the forum arise from, or are directly related to, the cause of action." *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002).

One State's "sovereign power to try" a suit may prevent "sister States" from exercising their like authority. The law of specific jurisdiction seeks to ensure that States with "little legitimate interest" in a suit do not encroach on States more affected by the controversy. *Ford Motor Co.*, 141 S.Ct at 1025 (citations omitted).

### C. A Plaintiff Must Plead Plausible Claims to Avoid a Rule 12(b)(6) Dismissal.

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A facially plausible claim "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.; see also Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). "[C]onclusory allegations" and "unwarranted deductions of fact" "will not suffice to prevent" dismissal. *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citing *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992).

## IV. ARGUMENTS AND AUTHORITIES

### A. Internet Contacts from a "Passive Website" Are Not Sufficient to Establish Personal Jurisdiction.

Plaintiffs' First Amended Complaint does not allege that Van Sciver has any contacts with this forum. The only contact Defendants have with this forum is via the Internet, which is a tenuous contact at most. The Fifth Circuit applies a "sliding scale" test, described in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997), to decide whether a defendant has sufficient minimum contacts with the forum state via the internet. *Hawbecker v. Hall*, 88 F.Supp.3d 723, 727 (W.D. Tex. 2015). The test requires an examination of the extent of the interactivity and nature of the forum contacts and categorized internet use into a spectrum. *Id*. At one end is a "passive" website that merely allows the owner to post information. This contact will not be sufficient to establish personal jurisdiction. *Id*. On the other hand, personal jurisdiction will be proper in cases at the other end of the spectrum where the site owners engage

in repeated online contacts with forum residents over the internet. *Id*. The middle cases require an examination of the extent of the interactivity and nature of the forum contacts. *Id*.

### B. Van Sciver Has No Contacts with Texas.

As the First Amended Complaint states, neither Mr. Van Sciver, nor any other defendant, lives in Texas or has had any significant contact with Texas. The alleged defamatory video is not directed to Texas. The participants did not interact with anyone from Texas. They talked among themselves.

Viewing this discussion required the unilateral activity (carried out by about 750 listeners) of those who tuned in by specifically seeking out the content on this particular YouTube channel. This "unilateral activity" does not qualify as "purposeful availment" contacts necessary to justify personal jurisdiction. *See, e.g.*, *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 475 (1985) ("purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts or of the unilateral activity of another party or a third person) (citations omitted).

Further, the alleged damage is not centered in Texas.  In defamation cases, however scandalous a publication might be, it can lead to a loss of reputation only if communicated to third persons. *Hawbecker*, 88 F.Supp. at 731 (citing *Walden v. Fiore*, 134 S.Ct. 1115, 1124-25 (2014)). Here, the only third party allegedly connected to Plaintiffs' damages that supposedly heard the alleged defamation is Kickstarter. It, however, is a Delaware corporation with headquarters in Brooklyn, NY.  *See* Appn 7-8, Ex. 2. Thus, the alleged damages do not occur in Texas.

### V. FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)

#### A. There Is No Nexus Between the Alleged Defamatory Video and the Alleged Damage Because (1) Plaintiffs' Campaign Was Canceled <u>Before</u> the Video and (2) the Campaign Violated Terms of Service of the Hosting Website.

Plaintiff's Kickstarter campaign for "The Demonatrix" is cited seven times in the pleading. *See* Am. Compl., Doc. No. 6 at 3 (¶ b.(i), 4 (¶ b.(ii), 6 (¶¶ 11-13), 15 (¶¶ 2.a., 2.b)). A copy of the campaign is attached. *See* Appn 9-14, Ex 3. The exhibit shows that the Kickstarter campaign was not affected by the alleged defamation. It was canceled on March 16, 2021, over a month *before* the alleged defamation on April 25, 2021. Also, the campaign, which featured pornographic images, was likely canceled because it violated Kickstarter's terms of service, which explicitly forbid pornography. Appn at 15, Ex. 4 (Kickstarter's "Prohibited Items").

At most only about 750 people viewed the video, Plaintiffs fail to allege a nexus between the video and a significant circulation of the alleged defamatory statements which would lead to the alleged stalling of "poor sales" that "forced the campaign's cancellation." Also, Plaintiffs' allegations such as "Kickstarter has shut him down with unreasonable demands" are vague and not connected to the alleged defamatory video. Complaint at 4, ¶ b.(ii).

#### B. Opinions Are Not Actionable.

Plaintiffs have failed to plead facts establishing the requisite elements of their claims against Van Sciver. To this end, Plaintiffs have not pled that Van Sciver made a statement of fact that was false and actionable defamation.[4]  "[A] statement of opinion relating to matters of

---

[4] The two allegedly defamatory statements made by Van Scriver do not relate to or involve Defendant John Lamont in any way. Thus, Lamont's claims against Van Scriver must also be dismissed in addition to the reasons set forth in the body of this motion and brief.

public concern which does not contain a provably false factual connotation will receive full constitutional protection. In other words, if a statement cannot reasonably [be] interpreted as stating actual facts, it is shielded by the First Amendment. *In re Enron Corp. Securities, Derivative*, 511 F.Supp.2d 742, 819 (S.D. Tex. 2005) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990)).

An image of Plaintiffs' comic, The Demonatrix (*see* Am. Compl., Doc. No. 6, at p. 3 ¶b.(i)), appeared in the livestream during a discussion of trademark rights. Defendants' statements were clearly opinions about that image.[5]

In addition to showing Plaintiffs' actual drawings, the livestream contained several other statements making clear that Defendants were merely expressing their opinions. For example, Mr. Van Sciver describes a third party as "an actual . . . child pornographer" indicating Plaintiffs, who are comic book artists, are not "actual" child pornographers. Also, Mr. Van Sciver's statement, "I don't want Preston to make child pornography" suggests that Plaintiff Poulter is currently *not* making child pornography. The statement is merely Van Sciver's opinion that he would not want pornography on his COMICSGATE label.

The fact that Defendants displayed the image is fatal to Plaintiffs cause of action in another way. As the Fourth Circuit noted, "[b]ecause the bases for the . . . conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related." *Chapin v. Knight-Ridder, Inc.*, 993 F.3d 1087, 1093 (4th

---

[5] The Supreme Court has held fictional depictions of children neither obscene nor child pornography. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) (holding statute prohibiting fictional pornographic images of children overbroad and unconstitutional).

Cir. 1993). *See also Dodds v. ABC, Inc.*, 145 F.3d 1053, 1067 (9th Cir. 1998) (an opinion "based on an implication arising from disclosed facts is not actionable when the disclosed facts themselves are not actionable").

Finally, we note the obvious, the video was on the YouTube channel "VikkiVerse" and was viewed by about 750 people. There is no allegation that the channel held itself out as a source of "facts" like a news broadcast, or even a YouTube news channel. No reasonable person would cite to a quote on "VikkiVerse" as a factual authority.

## VI.   CONCLUSION

For the reasons above, Defendant Ethan Van Sciver moves this Court to dismiss him from this suit because the Court lacks personal jurisdiction under Rule 12(b)(2) and to dismiss this suit in its entirety because it fails to state a cause of action under Rule 12(b)(6).

Date: August 4, 2021          Respectfully submitted,

                               /s/ *Thomas J. Adair*
Scott Houtteman
Virginia State Bar No. 65567
(*pro hac vice* application forthcoming)
scott@houtteman.com
Tel. (202) 263-0808
Fax. (202) 697-4306
HOUTTEMAN LAW LLC
10560 Main St – Suite 420
Fairfax, VA 22020

and

Thomas J. Adair
Texas Bar No. 24047753
tom@adairlaw.com
(512) 431-2736
ADAIR LAW, PLLC
1001 14th Street, Suite 112
Plano, Texas 75074

*Attorneys for Defendant Ethan Van Sciver*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record for Plaintiffs are being served with a copy of this document, including the attachments, via the Court's CM/ECF system on August 4, 2021.

                                                                                      /s/   Thomas J. Adair