# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| JOHN T. LAMONT and PRESTON POULTER, | § § § |
| Plaintiffs, | § Civil Action No. 3:21-CV-1176-K § |
| v. | § Judge Kinkeade § |
| DEAN ASSAF A/K/A DA TALKS, VICTORIA KUNDERT A/K/A VIKKIVERSE, AND ETHAN VAN SCIVER. Defendants. | § § § § § |

# DEFENDANT ALI ASSAF A/K/A DEAN ASSAF A/K/A DA TALKS MOTION TO DISMISS AND BRIEF IN SUPPORT

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................................... iii

I. INTRODUCTION .......................................................................................................................... 1

II. FACTUAL BACKGROUND ....................................................................................................... 2

III. LEGAL STANDARDS ............................................................................................................... 3

A. Personal Jurisdiction Exists When a Defendant Purposefully Avails Himself of the Privilege and Benefits of the Forum. ....................................................................................................... 3

B. A Plaintiff Must Plead Plausible Claims to Avoid a Rule 12(b)(6) Dismissal……………….. 4

IV. ARGUMENTS AND AUTHORITIES ....................................................................................... 5

A. Internet Contacts from a "Passive Website" Are Not Sufficient to Establish Personal Jurisdiction. ................................................................................................................................ 5

B. Assaf Has No Contacts with Texas. ........................................................................................ 5

V. FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6) ................................................... 6

A. Plaintiffs Fail To Establish How Any Statement Allegedly Made By Defendants Led To Cancellation Of "The Demonatrix" Campaign………………………………….. .................... 6

B. Plaintiffs Fail To Establish How Any Statement Allegedly Made By Defendants Led To Decreased Sales Of Plaintiff Poulter's Most Recent Campaign……........................................ 8

C. Plaintiff Poulter Continues To Attend Conventions Without Worry………………………….. 9

VI. CONCLUSION ...........................................................................................................................9

# TABLE OF AUTHORITIES

**Cases**                                                  **Pages**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................. 6

*Burger King Corporation v. Rudzewicz,*
 471 U.S. 462 (1985) ................................................................................................. 8

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
 141 S.Ct. 1017 (2021).............................................................................................. 5

*Hawbecker v. Hall*,
 88 F.Supp.3d 723 (W.D. Tex. 2015) ....................................................................... 5

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
 466 U.S. 408 (1984) ................................................................................................. 6

*Meyer v. Waid*
 No. 1:18-cv-0080W.D. Tx (Dec. 23, 2020)………....………………………………… 8

*Revell v. Lidov*,
 317 F.3d 467 (5th Cir. 2002) ................................................................................... 6

*U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*,
 336 F.3d 375 (5th Cir. 2003) ................................................................................... 6

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*,
 952 F.Supp. 1119 (W.D.Pa.1997) ........................................................................... 7

**Rules**

Fed. R. Civ. P. 12(b)(2)................................................................................................... 3
Fed. R. Civ. P. 12(b)(6)................................................................................................... 3

**DEFENDANT ALI ASSAF'S MOTION TO DISMISS**
**AND BRIEF IN SUPPORT**                                                                                                                  **PAGE iii**

Defendant Ali Assaf ("Assaf") respectfully moves the Court to dismiss this lawsuit against him because: (1) this Court lacks personal jurisdiction over him pursuant to Fed. R. Civ. P. 12(b)(2); and (2) because the First Amended Complaint, Doc. No. 6, fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

**INTRODUCTION**

As Plaintiffs allege in the First Amended Complaint, Assaf is a citizen of California, domiciled and employed there.  He is a social commentator on YouTube and social media going by the name DA Talks and on his YouTube channel with the same name, specifically speaking on internet personalities and, in particular, has spoken about Plaintiffs who claim to be affiliated with the "Comicsgate" internet movement.  Recently, Plaintiff Preston Poulter ("Poulter") has claimed a right to the trademark "Comicsgate" which is currently in dispute with Defendant Ethan Van Sciver ("Van Sciver").  Plaintiffs state the following about themselves:

"John T. Lamont is a writer and illustrator of gothic and fantasy comics that are primarily released through the internet and dedicated community chat rooms and YouTube channel." (Am. Com., Doc. No. 6, Par 9)

"Preston Poulter is a publisher, producer, writer, and illustrator of gothic and fantasy comics, and also hosts a web presence called Comicsgate and hosts a show on a YouTube channel and interactive community that promotes and discusses comics and their authors." (Am. Com., Doc. No. 6, Par. 10)

Plaintiffs are independent comic book creators[1] who have filed this suit against Assaf in connection with comments allegedly made by him.  The comments were made during either livestreams on YouTube or via social media, specifically the platform Twitter, according to the First Amended Complaint.  However, no specificity is provided as to where or when the comments are alleged to have been made, only that the comments were made "beginning March 1, 2021" (Am. Complaint, Doc. No. 6, Par. 14).

Plaintiffs have not established any facts to support that this Court has personal jurisdiction over Assaf, nor any other defendant in this case.  Accordingly, dismissal of the claims against him is warranted.  Further, the claims Plaintiffs have alleged against Assaf do not state a claim upon which relief can be granted as they have failed to provide facts giving rise to plausible entitlement to relief.

**FACTUAL BACKGROUND**

The alleged defamation occurred on "a CGDG stream"[2] "beginning March 1, 2021" and carried over to April 12, 2021.  YouTube maintains a permanent record of such streams and allows for accurate reproduction of statements and context.  However, no stream exists for March 1, 2021, as Assaf did not stream on that day.  The first stream after the beginning date is March 3, 2021.  The topic of the stream was not Plaintiff Lamont's ("Lamont") comic book, but rather the claimed document Poulter sent "to a DA [district attorney]" to ascertain if he had a valid lawsuit against Defendant Ethan Van Sciver ("Van Sciver") for having located public

---

[1] As independent comic book creators, Plaintiffs obtain their own funding and had sought funding for "The Demonatrix" by crowdfunding on the platform Kickstarter.

[2] "CGDG" is an acronym for "ComicsGate Dumping Ground", a YouTube live stream hosted by Defendants Ali Assaf and Victoria Kundert.

---

**DEFENDANT ALI ASSAF'S MOTION TO DISMISS
AND BRIEF IN SUPPORT** PAGE 2

pornographic videos depicting Plaintiff Poulter in humiliating and degrading sexual activities. Plaintiff Poulter had previously threatened to sue Van Sciver and unaffiliated parties to this case for invasion of privacy for having found these videos and linked them to him.

Plaintiffs also allege that these statements were repeated to an individual named "Big Daddy" on a "public platform" (Am. Com., Doc. 6, Par. 16). In this instance, there is no specificity as to where it was said.

## LEGAL STANDARDS

A. Personal Jurisdiction Exists When a Defendant Purposefully Avails Himself of the Privilege and Benefits of the Forum

The United States Supreme Court stated that "a tribunal's authority depends on the defendants having such "contacts" with the forum State that "the maintenance of the suit" is "reasonable, in the context of our federal system of government", and "does not offend traditional notions of fair play and substantial justice." *See Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,* 141 S.Ct, 1017, 1024 (2021).

In order to establish personal jurisdiction in a diversity case over an out-of-state defendant, the plaintiff must present *prima facie* evidence that "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *See Hawbecker v. Hall,* 88 F.Supp.3d 723, 727 (W.D. Tex. 2015) (citing *Clemens v. McNamee,* 615 F.3d 374, 378 (5th Cir.2010)).

"Because Texas's long-arm statute reaches to the constitutional limits," it is only necessary to assess if the Court's exercise of personal jurisdiction offends due process. *Id.* (citing

*Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–14 (1984)). Due process is satisfied when (1) the "defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *See Hawbecker*, 88 F.Supp.3d at 727.

Minimum contacts are found, supporting specific personal jurisdiction "when the defendant's contacts with the forum arise from, or are directly related to, the cause of action." *See Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002). One State's "sovereign power to try" a suit may prevent "sister States" from exercising their like authority. The law of specific jurisdiction seeks to ensure that States with "little legitimate interest" in a suit do not encroach on States more affected by the controversy. *Ford Motor Co.,* 141 S.Ct at 1025 (citations omitted).

B. A Plaintiff Must Plead Plausible Claims to Avoid a Rule 12(b)(6) Dismissal.

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A facially plausible claim "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.; see also Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). "[C]onclusory allegations" and "unwarranted deductions of fact" "will not suffice to prevent" dismissal. *See U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992).

ARGUMENTS AND AUTHORITIES

A. Internet Contacts from a "Passive Website" Are Not Sufficient to Establish Personal Jurisdiction

Plaintiffs' First Amended Complaint does not allege that Defendants Assaf, Kundert, or Van Sciver have any contacts with this forum. The only contacts the Defendants have with this forum is via the Internet, which is tenuous contact. The Fifth Circuit applies a "sliding scale" test to determine if whether a defendant has met the sufficient minimum contacts with the state via the internet. *See Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997). The test requires examination of the extent of the interactivity and nature of the forum contacts and categorized internet use into a spectrum. At one end is a "passive" website that merely allows the owner to post information. This contact does not meet that standard to establish personal jurisdiction. On the other end of the spectrum is where the site owners engage in repeated online contacts with forum residents over the internet, which would allow the forum to establish personal jurisdiction. The middle cases require an examination of the extent of the interactivity and nature of the forum contact.

B. Assaf Has No Contacts With Texas

As the First Amended Complaint states, neither Defendant Assaf nor any of the other defendants live in Texas, nor do they have any significant contact with Texas. The alleged defamatory statements were not directed at Texas. The defendants do not interact with anyone from Texas. They merely speak amongst themselves, three individuals outside the forum, and one as-yet-unidentified individual ("Big Daddy") who has not been shown to be in Texas.

The viewing of these discussions required the unilateral activity of those who "tuned in" by specifically seeking out the content on these public platforms (Plaintiffs do not assert where

this material can be found, only stating "public platforms", nor do they provide exhibits and evidence for the Court to consider except for what appear to be excerpted statements and no context in the First Amended Complaint). This "unilateral activity" does not qualify as "purposeful availment" contacts necessary to consider this Court a proper venue. *See Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 475 (1985).

Further, the case *Richard C. Meyer v. Mark Waid* in the Western District of Texas solidified that a defendant cannot be brought into a forum simply for posting on social media or YouTube. In that case, the plaintiff alleged that social media posts by the defendant on the platform Twitter fell under the court's jurisdiction, even though neither the plaintiff nor the defendant asserted that they were made while in Texas or directed specifically to Texas. *See Meyer v. Waid,* No. 1:18-cv-00800, W.D. Tx (Dec. 23, 2020). Indeed, even in this case the Plaintiffs only allege without showing evidence that that alleged statements "targeted the Plaintiffs where they reside and are located and intended that the [alleged] defamatory statements would damage their reputations locally and nationally in their professions." (Am. Com., Doc. No. 6, Par. ).

Lacking these contacts, this court lacks personal jurisdiction.

**FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)**

A. Plaintiffs Fail To Establish How Any Statement Allegedly Made By Defendants Led To Cancellation Of "The Demonatrix" Campaign

Plaintiff Lamont's Kickstarter campaign "The Demonatrix" is cited multiple times throughout the pleading. According to the Kickstarter campaign, Plaintiff Lamont started the

Kickstarter campaign on March 15, 2021 and canceled the campaign on March 16, 2021, raising only $26 in one day of it being available to be funded. *See* Appn 3-7 Ex 1. Two true and correct copies of the campaign are attached from Kickstarter.

Plaintiff Lamont took the campaign down with the following reason on March 16, 2021: "Thank you all very much for your interest in *The Demonatrix*. Please do not be alarmed, but I will withdrawing the campaign and lowering the funding amount to $500.00. This will assist in meeting our funding goal and help put copies of the book into your hand. I will post another update once the process is complete. I look forward to seeing you back. Cheers!" Plaintiff Lamont makes no mention of why he took his campaign down except to say that he was lowering the goal by 50%, making no mention of any type of commentary made by Defendants, nor any actions on their part to have it removed. *See* Appn 8-9 Ex 2. However, Kickstarter's Terms of Service prevent campaigns featuring pornographic materials from being presented on their platform, putting Plaintiff Lamont in violation of Kickstarter's own rules, which would have led to the inevitable cancellation, if not being the ultimate reason it was canceled to begin with and why Kickstarter refused to allow Plaintiff Lamont to renew it. A true and correct copy of an archived screenshot of the Kickstarter Terms of Service Prohibited Items is attached. See Appn 10 Ex 3.

As stated previously, there is no YouTube live stream on Assaf's YouTube channel for March 1, 2021. Further, there is no specificity with regards to when statements were made, where they were made, and to whom they were made aside from between the Defendants. Indeed, the Plaintiffs allege only that the statements were made "beginning March 1, 2021", continued to "April 12, 2021" and finally to "April 25, 2021" "on a public platform". There is no mention of where exactly or when these statements were made beyond that. Plaintiffs allege

that Assaf had appeared on a public platform with an individual known as Big Daddy on April 12, 2021, but fail to inform this Court of what platform this was. Lacking any type of specificity in this issue, the logical conclusion is that Plaintiffs wish to waste the time of Defendants, their counsel, and the Court by requiring everyone but themselves to do the work for them, when no party other than the Plaintiffs are required to do such a thing. Aside from the April 25, 2021 allegation, Defendants cannot properly defend themselves when they have no idea of when and where to look to ascertain the validity of the claims made, and the Defendants should not be burdened with what the due diligence of the Plaintiffs should have been.

B. Plaintiffs Fail To Establish How Any Statement Allegedly Made By Defendants Led To Decreased Sales Of Plaintiff Poulter's Most Recent Campaign

Plaintiffs allege that Poulter's most recent campaign "suffered a 20% drop in average funding contributions from the last major campaign in November of 2020", but offer no evidence to support this claim. Indeed, Poulter's April campaign for Guinevere and the Divinity Factory #4: Mega-campaign! has an update stating, "Thanks to all your support, this campaign turned out to be my best launch yet. As the campaign nears its first 24 hours on Kickstarter, it has made over 60% of the $5,000 goal." The campaign raised $10,171, 203% of its $5,000 goal. *See* Appn 15-16 Ex 5. Plaintiff Poulter's most recent campaign for Guinevere and the Divinity Factory #5 / Trade Paperback has made $10,982, 220% of the $5,000 goal, on August 17, 2021 with 8 days of remaining in the campaign. *See* Appn 17-22 Ex 6. Plaintiff Poulter's November campaign for White Lily: the Trade Paperback - 164 Full Color Pages made $5,424 in total. *See* Appn 11-14 Ex 4. True and correct copies of the campaigns, including the singular update, are attached. It seems, contrary to Plaintiffs' claims, these campaign by Plaintiff Poulter have instead made more than the previous campaign, with Plaintiff Poulter bragging about its success as the very first

update.

### C. Plaintiff Poulter Continues To Attend Conventions Without Worry

Plaintiff Poulter has attended three conventions this year to sell his works in-person: North Texas RPG convention in Irving, Texas, Albuquerque Comic Con in Albuquerque, New Mexico, and Anime Matsuri in Houston, Texas.  At both the North Texas RPG convention and Anime Matsuri, Poulter appeared to be in good spirits, with no private security in visible attendance.  Plaintiff Poulter also made posts on Twitter bragging about the amount of sales he was making at all three conventions. *See* Appn 23-28 Ex 7, Appn 29-30, Ex 8, Appn 31-36. Taking into account what was said previously about Poulter misrepresenting in the complaint the amount of money made between his November campaign and his "most recent" campaign (as of April 2021, when this suit was filed), serious questions arise over whether Poulter has lost money.

### VI. CONCLUSION

For the reasons above, Defendant Assaf moves this Court to dismiss him from this suit because the Court lacks personal jurisdiction under Rule 12(b)(2) and to dismiss this suit in its entirety because it fails to state a cause of action under Rule 12(b)(6).


Date:   Aug. 18, 2021                                                    Respectfully submitted,


    /Ali Assaf/
    ———————————————
    Ali Assaf
    Aliassaf959@gmail.com
    (415) 450-5212

                1014 East Alameda Street
                Manteca, California 95336

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record for Plaintiffs are being served with a copy of this document, including the attachments, via the Court's CM/ECF system on August 18, 2021.

                                                      /Ali Assaf/