In the United States District Court
For the Northern District of Texas
Dallas Division

| | | |
|---|---|---|
| John T. Lamont and Preston Poulter | § | |
| Plaintiffs | § | |
| | § | |
| | § | No. 3:21-cv-1176-K-BN |
| v. | § | |
| | § | |
| Dean Assaf et al. | § | |
| Defendants | § | |

## Plaintiffs' Response to Defendant Ethan Van Sciver's Motion to Dismiss and Brief in Support [Doc. 19]

# Table of Contents

Table of Contents ................................................................. i

Table of Authorities ............................................................ ii

Response Brief ................................................................... 1

Factual Background .............................................................. 1

Arguments & Authorities ........................................................ 3

   A. Rule 12(b)(2)—Personal Jurisdiction .................................... 3

      1. Van Sciver picked a fight in Texas, and that fight should be
settled in Texas. ............................................................ 4

         a) General Rules of Personal Jurisdiction ............................. 4

         b) Specific Rules of Personal Jurisdiction in Internet
Defamation Cases .......................................................... 5

         c) Van Sciver's Contacts with Texas ................................... 8

      2. The "fair play and substantial justice" factors weigh in favor
of exercising personal jurisdiction. ........................................ 8

      3. Van Sciver's argument against personal jurisdiction relies on
faulty premises. ........................................................... 10

      4. The Court can exercise personal jurisdiction over Van Sciver ....... 11

   B. Rule 12(b)(6)—Statement of a Claim on Which Relief Can Be
Granted ..................................................................... 12

      1. Standard of Review ................................................. 12

      2. Lamont and Poulter stated claims against Van Sciver. .............. 13

      3. Van Sciver's arguments otherwise are based on faulty
premises. .................................................................. 14

Conclusion ..................................................................... 17

Certificate of Service .......................................................... 19

i

# Table of Authorities

## Case Law

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985)..............................................8–9

*Calder v. Jones*, 465 U.S. 783 (1984) ........................................................... 5–10

*Clemens v. McNamee*, 615 F.3d 374 (5th Cir. 2020) ..........................................7

*Dallas Morning News Inc. v. Hall*, 579 S.W.3d 370 (Tex. 2019) ......................13

*Dallas Morning News Inc. v. Tatum*, 554 S.W.3d 614 (Tex. 2018) ........... 13, 15

*Fielding v. Hubert Burda Media Inc.*, 415 F.3d 419 (5th Cir. 2005)................7

*Hawbecker v. Hall*, 88 F. Supp. 3d 723 (W.D. Tex. 2015)............................ 6, 10

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S.
694 (1982) ...........................................................................................................10

*Keeton v. Hustler Magazine, Inc.*,465 U.S. 770 (1984)......................................9

*Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001) ............................................ 5, 10

*McGee v. International Life Insurance Co.*, 355 U.S. 220 (1957) ......................9

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ................................. 15–16

*Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002) ................................. 4–5, 7–8, 11

*So. U.S. Trade Ass'n v. Unidentified Parties*, No. Civ. A. 10-1669
(E.D. La. June 16, 2011) (slip opinion) ................................................7–8, 10–11

*Walker v. Beaumont I.S.D.*, 938 F.3d 724 (5th Cir. 2019) ......................... 12–13

*Wien Air Alaska v. Brandt*, 195 F.3d 208 (5th Cir. 1999) .................................5

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119
(W.D. Pa. 1997) .............................................................................................. 8, 11

## Rules and Statutes

Fed. R. Civ. P. 12 ....................................................................................*passim*

Fed. R. Evid. 201...................................................................................................1

## Response Brief

Plaintiffs John T. Lamont and Preston Poulter sued Defendants Dean Assaf, Victoria Kundert, and Ethan Vin Sciver for defamation arising out of a series of conversations broadcast on YouTube. Assaf has appeared and consented to this Court's jurisdiction; Kundert is evading service; Van Sciver moved to dismiss for lack of personal jurisdiction and failure to state a claim. The Court should deny Van Sciver's motion (a) because he picked a fight in Texas and should be required to settle it in Texas, and (b) because calling someone a pedophile and a child pornographer is actionable as defamation.

## Factual Background

Preston Poulter and Ethan Van Sciver are both well-known figures in the independent comics community. Poulter is based out of Dallas, Texas, and Van Sciver is based out of New Jersey. They are engaged in a lengthy and public fight for control of the Comicsgate mark. Doc. 6 at 8. Poulter registered the mark first, but Van Sciver claims to have a common law right to it. PX 1 (TESS search results) [1]; Doc. 19-1 at 5. Those issues are being litigated before the Trademark Trial and Appeal Board. PX 2 (TTAB docket). [2] But Van Sciver

---

[1] The Court can and should take judicial notice of the trademark registrations because they are in the public record, and their content can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201.

[2] The Court can and should take judicial notice of the trademark docket because it is in the public record, and its content can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201.

and his allies have taken the fight to the public forum.

On April 25, 2021, Van Sciver appeared on a talk show hosted by Defendants Dean Assaf and Victoria Kundert[3] on YouTube. On the talk show, Van Sciver made the following statements about Poulter's use of the Comicsgate seal on a comic series developed by Plaintiff John Lamont:

> But I mean, you know my side of things is that is that it's pretty demonstrable that COMICSGATE has been used in commerce by me and me alone, up until Preston [Poulter] decided he would try to spite trademark the term.
>
> . . .
>
> . . . I was told this by another trademark attorney that, you know, look, you know you have been using COMICSGATE in commerce. You have what's known as the common law trademark to the word COMICSGATE. You don't need to register it. I mean, you don't need to register it, it doesn't need to happen. You are, you are the trademark owner.
>
> . . .
>
> Uh, you know I, I don't think anybody is going to be attitudinal about it. I just don't think anybody is going to get very upset and think that I'm, you know, coopting a movement. All of those accusations have already been made and put into play, and they amounted to nothing. So I just, I don't want Preston to make child pornography and put COMICSGATE on the label. You know what I mean?

---

[3] Mr. Assaf and Ms. Kundert are also named defendants in this lawsuit. Mr. Assaf has appeared and answered, but Ms. Kundert has been evading service.

[Assaf:] Yea, that was a pretty fuckin' gross move.

[Van Sciver:] Especially right now, you know, at this point one of his pals, Slick Jimmy, outed as an actual, you know, child pornographer, uh pedophile. You know it's like, this, now is not a good time for that bullshit.

. . .

In order to have a trademark you do have to protect it. So I will protect it in that way. I will not allow it to be put on child pornography by Preston Poulter.

Doc. 19-1 at 4–6.

As a result of Van Sciver's false statements, Lamont and Poulter have suffered losses of sales and income and been forced to incur increased expenses for personal security and mental health treatment. Doc. 6 at 13–18.

Lamont and Poulter initiated this lawsuit on May 23, 2021. Doc. 1; *see also* Doc. 6. Van Sciver was served on July 14, 2021. Doc. 15. Van Sciver filed the instant motion to dismiss on August 4, 2021. Doc. 19. The Court issued a briefing order on August 13, 2021. Doc. 25.

## Arguments & Authorities

Van Sciver moved to dismiss this lawsuit on two basic grounds: lack of personal jurisdiction and failure to state a claim. For the reasons set forth below, both arguments fail.

## A.    Rule 12(b)(2)—Personal Jurisdiction

This Court has personal jurisdiction over Van Sciver. He picked a fight

3

in Texas by calling someone he knew to be a Texas resident a pedophile and child pornographer, intending to cause him harm in Texas. The law compels him to settle that fight here.

### 1.   *Van Sciver picked a fight in Texas, and that fight should be settled in Texas.*

#### a)   *General Rules of Personal Jurisdiction*

A federal court sitting in diversity jurisdiction may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution. Because Texas's long-arm statute reaches to the constitutional limits, the only question is whether exercising personal jurisdiction over Van Sciver would offend due process. *See Revell v. Lidov*, 317 F.3d 467, 469–70 (5th Cir. 2002) (citations and quotations omitted).

Due process permits a court to exercise personal jurisdiction over a foreign defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." A defendant's contacts with the forum state will give rise to either specific or general jurisdiction. General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." Specific jurisdiction arises when the defendant's

4

contacts with the forum arise from, or are directly related to, the cause of action. *Revell*, 317 F.3d at 470 (citations and quotations omitted).

      b)    *Specific Rules of Personal Jurisdiction in Internet Defamation Cases*

To determine whether it can exercise specific jurisdiction, the Court should "look only to the contact out of which the cause of action arises." *Revell*, 317 F.3d at 472 (citing *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)). In intentional tort cases, "A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis*, 252 F.3d at 358–59. "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment. The defendant is purposefully availing himself of 'the privilege of causing a consequence' in Texas." *Wien Air Alaska v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). In the case at bar, the Court's jurisdiction over Van Sciver arises out of his defamatory statements about Lamont and Poulter, which were published on the Internet via YouTube.

In defamation cases, including internet defamation cases, a Texas court may exercise specific jurisdiction over a non-Texas defendant who has "expressly aimed" his defamatory statements at a Texas plaintiff. In *Calder v. Jones*, the Supreme Court adopted the "effects test" for personal jurisdiction in defamation cases:

> [The Florida defendants'] intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an

> article that they knew would have a potentially
> devastating impact upon respondent. And they knew
> that the brunt of that injury would be felt by
> respondent in the State in which she lives and works
> and in which the National Enquirer has its largest
> circulation. Under the circumstances, petitioners must
> "reasonably anticipate being haled into court there" to
> answer for the truth of the statements made in their
> article. An individual injured in California need not go
> to Florida to seek redress from persons who, though
> remaining in Florida, knowingly cause the injury in
> California.

*Calder v. Jones*, 465 U.S. 783, 789–90 (1984) (cleaned up). Under the *Calder*
test, a plaintiff's contacts with the forum state "may be so manifold as to permit
jurisdiction when it would not exist in their absence." *Calder*, 465 U.S. at 788.

The *Calder* test works very well in internet defamation cases. For
example, in *Hawbecker v. Hall*, Judge Rodriguez of the Western District of
Texas determined that his court had personal jurisdiction over a Pennsylvania
resident who posted messages on Facebook about a Texas resident:

> Hall apparently knew Hawbecker lives in Texas, and
> the focal point or effects of her allegations were
> designed to be felt in Texas by Hawbecker. Taking
> Hawbecker's allegations as true for the purpose of
> answering this jurisdictional question, Hall expressly
> aimed online contacts to Texas residents and intended
> the focal point and brunt of her posts and interactions
> to be felt by Hawbecker in Texas. Therefore, specific
> jurisdiction over Hall is proper because she had
> sufficient minimum contacts with Texas.

*Hawbecker v. Hall*, 88 F. Supp. 3d 723, 729 (W.D. Tex. 2015).

In another case, Judge Fallon of the Eastern District of Louisiana held that his court had personal jurisdiction over a foreign defendant who posted "numerous defamatory statements . . . on several websites" referring to "sexual and other misconduct" by the plaintiffs. *So. U.S. Trade Ass'n v. Unidentified Parties*, No. Civ. A. 10-1669, Slip Op. at 1, 10 (E.D. La. June 16, 2011) (hereinafter, "*SUSTA*").[4] Judge Fallon found that the subject matter of the statements was in Louisiana, that the sources relied upon for the statements were in Louisiana, and that the defendant knew that the brunt of the harm would be felt in Louisiana, because the defendant knew that the plaintiffs lived and worked there. Slip Op. at 10–12 (citing *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002); *Fielding v. Hubert Burda Media Inc.*, 415 F.3d 419 (5th Cir. 2005); *Clemens v. McNamee*, 615 F.3d 374 (5th Cir. 2020)).

Judge Fallon's analysis in *SUSTA* addresses a few factors that are either irrelevant or non-determinative. First, *Calder* does not require the defamatory statements to explicitly or specifically refer to the forum state. Slip Op. at 12. Second, *Calder* does not require the harm to be exclusively felt in the forum state. Slip Op. at 12 (noting that the Supreme Court "clearly found it irrelevant that the victim, who was of national renown, almost certainly had a reputation to protect outside California"). Third, the share of the audience in the forum state is not relevant. Slip Op. at 13–15 (noting that the defendants in *Calder* published their statements in a national magazine "that had only about one-

---

[4] A true and correct copy of the slip opinion is attached as PX – .

tenth of its circulation in California"). And finally, the *Zippo* spectrum is not determinative in internet defamation cases where the defaming defendant does not operate the website. Slip Op. at 15–18 (discussing and applying the reasoning from *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002) (discussing *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997))).

In sum, the test for personal jurisdiction in internet defamation cases is "in the main a pragmatic account of reasonable expectations—if you are going to pick a fight in Texas, it is reasonable to expect that it be settled there." *Revell*, 317 F.3d at 475.

> c) *Van Sciver's Contacts with Texas*

Van Sciver expressly aimed his defamation at Texas. Van Sciver knew that Poulter lives and works in Texas. When he called Poulter a pedophile and a child pornographer, he knew and intended that the brunt of the harm would be felt in Texas. Under the rule in *Calder*, that contact alone is sufficient for this Court to exercise personal jurisdiction over him.

> ## 2. The "fair play and substantial justice" factors weigh in favor of exercising personal jurisdiction.

Having established that Van Sciver has sufficient minimum contacts with Texas to be sued here, the next question is whether doing so would offend traditional notions of fair play and substantial justice. Courts generally recognize five factors relevant to this determination:

1. the burden on the defendant,
2. the forum State's interest in adjudicating the dispute,

8

3.  the plaintiff's interest in obtaining convenient and effective relief,

4.  the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and

5.  the shared interest of the several States in furthering fundamental substantive social policies.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985). These factors may "sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King*, 471 U.S. at 477 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984); *Calder v. Jones*, 475 U.S. 783 (1984); *McGee v. International Life Insurance Co.*, 355 U.S. 220 (1957)).

All five factors weigh in favor of exercising jurisdiction in this court. While this is a multistate case involving parties in Texas, California, and New Jersey, there is only one set of facts to be adjudicated. Plaintiffs seek compensation for statements made by Defendants during conversations with each other that were broadcast worldwide on YouTube. Because of the one set of facts and harm, it will be more convenient, effective, and efficient to adjudicate the claims in one forum. This Court is the best forum. It balances the travel burden among the parties by making the coastal parties meet in the middle. Additionally, one of the coastal defendants (Assaf) has already consented to this Court's jurisdiction.[5] *See* Doc. 18. Thus, even if the Court

---

[5] Assaf later filed a motion to dismiss for lack of personal jurisdiction. Doc. 25. However, because he filed his answer first without objecting under Fed. R. Civ. P. 12(b)(2), he consented to this Court's exercise of personal jurisdiction. *See* Fed. R.

dismisses the claims against Van Sciver for lack of personal jurisdiction, the claims against Assaf will be litigated here.

It is better for one set of facts to be adjudicated by one court than by two. Accordingly, traditional notions of fair play and substantial justice would not be offended—in fact, would bless—the exercise of personal jurisdiction over Van Sciver in this case.

### 3.   *Van Sciver's argument against personal jurisdiction relies on faulty premises.*

Van Sciver's motion to dismiss relies on several faulty premises:

First, Van Sciver relies in part on the unsupported, conclusory statement by his lawyer that he has not "had any significant contact with Texas." Doc. 19 at 9. But as the *Lewis* court explained, the minimum contacts analysis is not a math test: a single contact—such as a false statement claiming that a Texas resident is a pedophile and a child pornographer—can be enough. *Lewis*, 252 F.3d at 358–59.

Second, Van Sciver relies in part on the conclusory statement by his lawyer that, "The alleged defamatory video is not directed to Texas." Doc. 19 at 13. But that is the question to be answered. If, like the defendants in *Calder*, *Hawbecker*, and *SUSTA*, Van Sciver made statements about somebody he knew was a Texas resident with knowledge that the brunt of the harm would

---

Civ. P. 12(h); *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) (holding that personal jurisdiction is subject to consent and waiver).

be felt there, then he directed his statements to Texas.

Third, Van Sciver relies in part on the *Zippo* test, arguing that YouTube is a passive website and that hearing Van Sciver's statements required the unilateral activity of non-party viewers. Doc. 19 at 9. But as Judge Fallon and the *Revell* court explained, the *Zippo* test is not determinative in internet defamation cases where the defendant did not operate the website on which the statements were posted. *SUSTA*, Slip Op. at 15–18 (discussing and applying the reasoning from *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002)).

Finally, Van Sciver relies in part on the premise that "the only third party allegedly connected to Plaintiffs' damages that supposedly heard the alleged defamation is Kickstarter." Doc. 19 at 9. But Poulter and Lamont's damages are not limited to the cancellation of the Kickstarter campaign; they include damages caused by people hearing and believing Van Sciver's lies, including publishers refusing to sell Poulter and Lamont's comic books, customers refusing to buy Poulter and Lamont's comic books, the need for additional security at comic book conventions and gatherings, and Plaintiffs' mental anguish suffered as a result of those injuries. Doc. 6 at 13–17. In other words, the brunt of the harm caused by Van Sciver's statements was felt (and intended to be felt) in Texas.

### 4.    *The Court can exercise personal jurisdiction over Van Sciver.*

Van Sciver made defamatory statements about somebody he knew was

a Texas resident, with knowledge and intent that the brunt of the harm would be felt in Texas. The Court should deny the motion to dismiss and exercise jurisdiction.

## B.   Rule 12(b)(6)—Statement of a Claim on Which Relief Can Be Granted

### 1.   *Standard of Review*

Rule 12(b)(6) authorizes the dismissal of cases where the complaint fails to state a claim upon which relief can be granted. The basis for the motion can be either legal or factual. The legal basis applies where the plaintiff would not be entitled to relief even if everything he alleged were true. The factual basis applies where "the complaint does not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Walker v. Beaumont I.S.D.*, 938 F.3d 724, 734 (5th Cir. 2019) (cleaned up). Plausibility "is not akin to a 'probability requirement'"; a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely. *Walker*, 938 F.3d at 735 (citations omitted).

In evaluating motions to dismiss filed under Rule 12(b)(6), the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiffs. All questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiffs' favor. In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached

to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker*, 938 F.3d at 735 (citations omitted).

### 2.   *Lamont and Poulter stated claims against Van Sciver.*

Lamont and Poulter sued Van Sciver for (1) defamation, slander per se, and cyber libel, and (2) statutory libel. Doc. 6 at 10–13. The basic elements of a claim for defamation[6] are (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, and (3) was made with the requisite degree of fault. *Dallas Morning News Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019).

Lamont and Poulter have pled sufficient facts to show a plausible claim that Van Sciver defamed them. Lamont and Poulter alleged that Van Sciver intentionally or negligently made statements to a public audience on YouTube, that were about Lamont and Poulter (indeed, that referenced them by name); that were apparently statements of fact—specifically, that Lamont and Poulter were pedophiles and pornographers; and that were false. Doc. 6 at 8–13. Lamont and Poulter also alleged that, as a result of Van Sciver's false statements, they suffered general reputational damages, as well as special damages, including lost sales and income from publishers refusing to sell Poulter and Lamont's comic books, lost sales and income from customers

---

[6] Texas law recognizes defamation in two forms: slander (a defamatory statement expressed orally) and libel (a defamatory statement expressed in written or other graphic form). *Dallas Morning News Inc. v. Tatum*, 554 S.W.3d 614, 623–24 (Tex. 2018).

13

refusing to buy Poulter and Lamont's comic books, the need for additional security at comic book conventions and gatherings, and Plaintiffs' mental anguish suffered as a result of those. Doc. 6 at 13–17.

Lamont and Poulter's complaint stated a claim on which relief can be granted, and the motion should be denied.

### 3.   *Van Sciver's arguments otherwise are based on faulty premises.*

Van Sciver makes two arguments ostensibly under Rule 12(b)(6): that the alleged damages were incurred prior to the defamation and that Van Sciver's statements were merely opinions and thus not actionable. Doc. 19 at 10–12. Both arguments fail.

First, Van Sciver construes Lamont and Poulter's claim for damages too narrowly. Van Sciver seems to think that Lamont and Poulter's only claim for damages is the cancellation of the Kickstarter campaign.[7] Doc. 19 at 13, 14. But Lamont and Poulter have alleged that they anticipate continuing to suffer damages from Van Sciver's statements for at least the next three years, including future lost sales and income, mental anguish, the cost of counseling and therapy, and the increased cost of personal security. Doc. 6 at 14–17. Much of these damages were and will be incurred after Van Sciver's defamatory statements.

---

[7] It bears noting that, according to the complaint, Van Sciver's codefendants made defamatory statements about Lamont and Poulter prior to the cancellation. Doc. 6 at 6–7.

Second, Van Sciver's statements that Lamont and Poulter are pedophiles and child pornographers are actionable. He argues that his statements are privileged because he was "merely expressing [his] opinions" and he displayed some drawings made by Lamont. Doc. 6 at 14–16. But the Supreme Court has rejected the "artificial dichotomy between 'opinion' and fact." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990). Instead, the question is whether the statement is verifiable as false and whether "the 'entire context in which it was made' discloses that it is merely an opinion masquerading as a fact." *Dallas Morning News Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018).

Van Sciver's statements are verifiable as false, and their context shows that he made them as assertions of fact. Van Sciver was discussing the fact that Poulter placed his COMICSGATE seal on Lamont's comic book series, The Demonatrix. *See* Doc. 19 at 8. Van Sciver objected to Poulter placing the COMICSGATE seal on The Demonatrix because

> [Van Sciver:] I just, I don't want Preston to make child pornography and put COMICSGATE on the label. You know what I mean? . . . I will not allow it to be put on child pornography by Preston Poulter.

> [Assaf:] Yea, that was a pretty fuckin' gross move.

> [Van Sciver:] Especially right now, you know, at this point one of his pals, Slick Jimmy, outed as an actual, you know, child pornographer, uh pedophile. You know it's like, this, now is not a good time for that bullshit.

Doc. 19-1 at 5.[8]

Van Sciver's statements about Lamont and Poulter are like the "In my opinion John Jones is a liar" example discussed by the Supreme Court in *Milkovich*:

> [By saying that, the speaker] implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar."

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–19 (1990).

Just so here. Van Sciver showed a few images, then made broad statements, bolstered by the allegation that Poulter was associated with "an actual, you know, child pornographer, uh pedophile." Van Sciver clearly intended to make or imply a false assertion of fact about Lamont and Poulter. Van Sciver's statements are therefore actionable, and the motion to dismiss should be denied.

---

[8] Perhaps ironically, Van Sciver himself has faced criticism in the community for collaborating with and defending another comic book creator, Dave Sims. Van Sciver apparently defended Sims's relationship with a 14-year-old girl, comparing it to Elvis Presley's relationship with Priscilla. *See* Wikipedia's article about Van Sciver (accessed from https://en.wikipedia.org/wiki/Ethan_Van_Sciver on September 13, 2021).

## Conclusion

The Court should deny Van Sciver's motion in its entirety. First, the Court has personal jurisdiction over Van Sciver because his defamatory statements about somebody he knew to be a Texas resident, made with the intent to cause harm in Texas, are sufficient contacts with Texas for the courts of Texas to exercise personal jurisdiction. Exercising personal jurisdiction over Van Sciver will not offend traditional notions of fair play and substantial justice. Should the Court be inclined otherwise, however, Plaintiffs would request leave to file a motion to transfer the case to another district which may be able to exercise personal jurisdiction.

Second, Lamont and Poulter stated claims on which relief can be granted.

The Court should therefore deny Van Sciver's motion and grant to Plaintiffs such other and further relief to which they may be entitled.

17

Respectfully submitted,

Jeremy M. Masten
Texas Bar No. 24083454
jeremy@themastenlawfirm.com
2608 N. Main, Suite B, Box 238
207 Lake Road
Belton, Texas 76513
(254) 307-9185

M. Sameer Ahmed
THE AHMED FIRM PLLC
Texas Bar No. 24001631
sameer@theahmedfirm.com
8111 LBJ Freeway, Ste. 655
Dallas, Texas 75251
(972) 934-5858 - tel
(972) 934-5859 – fax

Counsel for Plaintiffs

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served on all parties through the Court's CM/ECF system, including those listed below, on September 13, 2021.

| | |
|---|---|
| Scott Houtteman<br>scott@houtteman.com | Counsel for Defendants |
| Thomas J. Adair<br>tom@adairlaw.com | |
| Dean Assaf<br>Aliassaf959@gmail.com | Pro se defendant |
| Victoria Kundert<br>5895 Jensen Road<br>Castro Valley, California 94552 | Pro se defendant evading service<br>Via CMRRR and first-class mail |

_____

Jeremy Masten

19