In the United States District Court
For the Northern District of Texas
Dallas Division

| | | |
|---|---|---|
| John T. Lamont and Preston Poulter | § | |
| Plaintiffs | § | |
| | § | No. 3:21-cv-1176-K-BN |
| v. | § | |
| | § | |
| Dean Assaf et al. | § | |
| Defendants | § | |

## Plaintiffs' Response to Defendant Dean Assaf's Motion to Dismiss and Brief in Support [Doc. 26]

# Table of Contents

Table of Contents ................................................................................................. i

Table of Authorities ........................................................................................... iii

Brief in Response ................................................................................................. 1

Factual Background ............................................................................................. 1

Arguments & Authorities ................................................................................... 4

A. Rule 12(b)(2)—Personal Jurisdiction ............................................................ 4

1. Assaf consented to the personal jurisdiction of this Court. ......................... 5

2. Assaf picked a fight in Texas, and that fight should be settled in
Texas. ................................................................................................................. 5

a) General Rules of Personal Jurisdiction ................................................. 5

b) Specific Rules of Personal Jurisdiction in Internet
Defamation Cases ..................................................................................... 6

c) Assaf's Contacts with Texas .................................................................. 10

3. The "fair play and substantial justice" factors weigh in favor of
exercising personal jurisdiction. ..................................................................... 10

4. Assaf's arguments against personal jurisdiction rely on faulty
premises. ........................................................................................................... 11

5. The Court can exercise personal jurisdiction over Assaf. ......................... 13

B. Rule 12(b)(6)—Statement of a Claim on Which Relief Can Be
Granted ............................................................................................................... 13

1. Standard of Review .................................................................................... 13

2. The complaint states claims against Assaf. .............................................. 14

3. Lamont and Poulter object to the Court's consideration of the
attachments to Assaf's motion. ..................................................................... 15

4. Assaf's remaining arguments fail to pass muster under
Rule 12(b)(6) ................................................................................. 15

Conclusion ............................................................................................... 18

Certificate of Service ............................................................................. 20

# Table of Authorities

Case Law

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)..................................... 10

*Calder v. Jones*, 465 U.S. 783 (1984) ..................................................... 7–10, 12

*Clemens v. McNamee*, 615 F.3d 374 (5th Cir. 2020) ...........................................9

*Dallas Morning News Inc. v. Hall*, 579 S.W.3d 370 (Tex. 2019) .................... 14

*Fielding v. Hubert Burda Media Inc.*, 415 F.3d 419 (5th Cir. 2005) ................9

*Hawbecker v. Hall*, 88 F. Supp. 723 (W.D. Tex. 2015)................................. 8, 12

*Innova Hospital, San Antonio, L.P. v. Blue Cross and Blue Shield of Georgia, Inc.*, 892 F.3d 719 (5th Cir. 2018) ................................................. 15–16

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) .........................................................................................................5

*Keeton v. Hustler Magazine, Inc.*,465 U.S. 770 (1984)..................................... 10

*Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001) ....................................... 6, 11–12

*McGee v. International Life Insurance Co.*, 355 U.S. 220 (1957) ............. 10–11

*Meyer v. Waid*, No. 1:18-cv-800-DAE (W.D. Tex. Dec. 23, 2020)............... 12–13

*Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002) .......................................... 6, 9, 12

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)........................................................... 15

*So. U.S. Trade Ass'n v. Unidentified Parties*, No. Civ. A. 10-1669, Slip Op. (E.D. La. June 16, 2011) .......................................................... 8–9, 12

*Walker v. Beaumont I.S.D.*, 938 F.3d 724 (5th Cir. 2019) ........................ 13–14

*Wien Air Alaska v. Brandt*, 195 F.3d 208 (5th Cir. 1999) .................................7

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) .................................................................................................. 12

Statutes and Rules

Fed. R. Civ. P. 12 ........................................................................................*passim*

Fed. R. Evid. 201...................................................................................................2

## Brief in Response

Plaintiffs John T. Lamont and Preston Poulter sued Defendants Dean Assaf, Victoria Kundert, and Ethan Vin Sciver for defamation arising out of a series of conversations broadcast on YouTube. Assaf has appeared and consented to this Court's jurisdiction; Kundert is evading service[1]; Van Sciver moved to dismiss for lack of personal jurisdiction and failure to state a claim. After Van Sciver filed his motion,[2] Assaf filed his own motion to dismiss, making many of the same arguments. The Court should deny Assaf's motion because (a) he consented to this Court's jurisdiction when he filed his answer, (b) like Van Sciver, he picked a fight in Texas and should be required to settle that fight in Texas, and (c) Poulter and Lamont have stated a claim for defamation arising out of Assaf calling them pedophiles and child pornographers.

## Factual Background

Preston Poulter is a well-known figure in the independent comics community. For the last few years, he has been engaged in a public dispute with Ethan Van Sciver for control of the ComicsGate mark. Doc. 6 at 8. Poulter

---

[1] Kundert is aware of and monitoring this litigation. Shortly after Plaintiffs filed their response to Van Sciver's motion to dismiss, Kundert commented on a video analysis by The Spectre Report of the response on YouTube, claiming that she "is not evading service," but Plaintiffs just don't have the right address. But instead of voluntarily appearing or challenging Lamont and Poulter's accusations directly (or even contacting Lamont and Poulter's counsel), she is sitting on the sidelines, leaving her friends holding the bag.

[2] Plaintiffs responded to Van Sciver's motion to dismiss on September 13, 2021. Doc. 28.

registered the mark first, but Van Sciver claims to have a common law right to it. PX 1 (TESS search results).[3] Those issues are being litigated before the Trademark Trial and Appeal Board. PX 2 (TTAB docket).[4] But Van Sciver and his allies, including specifically Dean Assaf, have taken the fight outside the realm of intellectual property law.

Defendants Dean Assaf and Victoria Kundert are allies of Van Sciver in the ComicsGate fight. They host a show on YouTube called "ComicsGate Dumping Ground," or "CGDG." Doc. 26 at 2 n.2. In March, April, and May 2021, Assaf and Kundert used their show to broadcast claims that Plaintiff John T. Lamont "is a pedophile" who "is making f_____ be pedophilic comics" and "child porn." Doc. 6 at 7. Assaf and Kundert called for Lamont to "be ostracized from society" and "shot." Doc. 6 at 7. Assaf and Kundert also claimed that Poulter engaged in the same activities (i.e., being a pedophile and making pedophilic comics and child pornography). Doc. 6 at 9.

On April 25, 2021, Assaf and Kundert had Van Sciver on their show as a guest. On the show, Van Sciver made the following statements about Poulter's use of the Comicsgate seal on a comic series developed by Lamont:

> But I mean, you know my side of things is that is that
> it's pretty demonstrable that COMICSGATE has been

---

[3] The Court can and should take judicial notice of the trademark registrations because they are in the public record, and their content can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201.

[4] The Court can and should take judicial notice of the trademark docket because it is in the public record, and its content can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201.

used in commerce by me and me alone, up until Preston [Poulter] decided he would try to spite trademark the term.

. . .

. . . I was told this by another trademark attorney that, you know, look, you know you have been using COMICSGATE in commerce. You have what's known as the common law trademark to the word COMICSGATE. You don't need to register it. I mean, you don't need to register it, it doesn't need to happen. You are, you are the trademark owner.

. . .

Uh, you know I, I don't think anybody is going to be attitudinal about it. I just don't think anybody is going to get very upset and think that I'm, you know, coopting a movement.  All of those accusations have already been made and put into play, and they amounted to nothing. So I just, I don't want Preston to make child pornography and put COMICSGATE on the label. You know what I mean?

[Assaf:] Yea, that was a pretty fuckin' gross move.

[Van Sciver:] Especially right now, you know, at this point one of his pals, Slick Jimmy, outed as an actual, you know, child pornographer, uh pedophile. You know it's like, this, now is not a good time for that bullshit.

. . .

In order to have a trademark you do have to protect it. So I will protect it in that way. I will not allow it to be put on child pornography by Preston Poulter.

3

Doc. 19-1 at 4–6. Assaf and Kundert echoed and agreed with Van Sciver's comments. Doc. 6 at 9.

Lamont and Poulter are not pedophiles, nor are they child pornographers. Assaf, Kundert, and Van Sciver's statements were objectively and verifiably false. But, as a result of those false statements, Lamont and Poulter have suffered losses of sales and income and been forced to incur increased expenses for personal security and mental health treatment. Doc. 6 at 13–18.

Lamont and Poulter initiated this lawsuit on May 23, 2021. Doc. 1; *see also* Doc. 6. Assaf was served on July 13, 2021. Doc. 16. Assaf appeared and answered on August 4, 2021. Doc. 18. He later filed a motion to dismiss on August 18, 2021. Doc. 26. The Court issued a briefing order on August 19, 2021. Doc. 27.

## Arguments & Authorities

Assaf moved to dismiss this lawsuit on two basic grounds: lack of personal jurisdiction and failure to state a claim. For the reasons set forth below, both arguments fail.

### A.    Rule 12(b)(2)—Personal Jurisdiction

This Court has personal jurisdiction over Assaf for two reasons. First, he consented to this Court's jurisdiction when he filed an answer that did not challenge personal jurisdiction. Second, like Van Sciver, he picked a fight in Texas by calling someone he knew to be a Texas resident a pedophile and child

pornographer, intending to cause him harm in Texas. The law compels him to settle that fight here.

### 1.   *Assaf consented to the personal jurisdiction of this Court.*

Assaf moves to dismiss under Fed. R. Civ. P. 12(b)(2). But that defense must be asserted *before* filing an answer. Fed. R. Civ. P. 12(b) (language after subdivision (7)). Failing to do so amounts to waiver. Fed. R. Civ. P. 12(h)(1)(B)(ii); *see also Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) (holding that personal jurisdiction is subject to consent and waiver).

Assaf filed his answer (a responsive pleading) on August 4, 2021. Doc. 18. Assaf's answer asserts several defenses, but not lack of personal jurisdiction.[5] Doc. 18 at 5. As such, he waived the defense and consented to this Court's personal jurisdiction.

On that basis alone, the motion should be denied.

### 2.   *Assaf picked a fight in Texas, and that fight should be settled in Texas.*

#### a)   *General Rules of Personal Jurisdiction*

A federal court sitting in diversity jurisdiction may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of

---

[5] Assaf's motion to dismiss briefs his Rule 12(b)(6) defense, but none of the others. Plaintiffs object to the Court's consideration of any issues other than those briefed in Assaf's motion to dismiss.

personal jurisdiction is consistent with the due process guarantees of the United States Constitution. Because Texas's long-arm statute reaches to the constitutional limits, the only question is whether exercising personal jurisdiction over Assaf would offend due process. *See Revell v. Lidov*, 317 F.3d 467, 469–70 (5th Cir. 2002) (citations and quotations omitted).

Due process permits a court to exercise personal jurisdiction over a foreign defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." A defendant's contacts with the forum state will give rise to either specific or general jurisdiction. General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." Specific jurisdiction arises when the defendant's contacts with the forum arise from, or are directly related to, the cause of action. *Revell*, 317 F.3d at 470 (citations and quotations omitted).

*b)    Specific Rules of Personal Jurisdiction in Internet Defamation Cases*

To determine whether it can exercise specific jurisdiction, the Court should "look only to the contact out of which the cause of action arises." *Revell*, 317 F.3d at 472 (citing *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)). In intentional tort cases, "A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis*,

252 F.3d at 358–59. "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment. The defendant is purposefully availing himself of 'the privilege of causing a consequence' in Texas." *Wien Air Alaska v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). In the case at bar, the relevant contacts are Assaf's defamatory statements about Lamont and Poulter, which were published on the Internet via YouTube.

In defamation cases, including internet defamation cases, a Texas court may exercise specific jurisdiction over a non-Texas defendant who has "expressly aimed" his defamatory statements at a Texas plaintiff. In *Calder v. Jones*, the Supreme Court adopted the "effects test" for personal jurisdiction in defamation cases:

> [The Florida defendants'] intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in their article. An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.

*Calder v. Jones*, 465 U.S. 783, 789–90 (1984) (cleaned up). Under the *Calder*

test, a plaintiff's contacts with the forum state "may be so manifold as to permit jurisdiction when it would not exist in their absence." *Calder*, 465 U.S. at 788.

The *Calder* test works very well in internet defamation cases. For example, in *Hawbecker v. Hall*, Judge Rodriguez of the Western District of Texas determined that his court had personal jurisdiction over a Pennsylvania resident who posted messages on Facebook about a Texas resident:

> Hall apparently knew Hawbecker lives in Texas, and the focal point or effects of her allegations were designed to be felt in Texas by Hawbecker. Taking Hawbecker's allegations as true for the purpose of answering this jurisdictional question, Hall expressly aimed online contacts to Texas residents and intended the focal point and brunt of her posts and interactions to be felt by Hawbecker in Texas. Therefore, specific jurisdiction over Hall is proper because she had sufficient minimum contacts with Texas.

*Hawbecker v. Hall*, 88 F. Supp. 723, 729 (W.D. Tex. 2015).

In another case, Judge Fallon of the Eastern District of Louisiana held that his court had personal jurisdiction over a foreign defendant who posted "numerous defamatory statements . . . on several websites" referring to "sexual and other misconduct" by the plaintiffs. *So. U.S. Trade Ass'n v. Unidentified Parties*, No. Civ. A. 10-1669, Slip Op. at 1, 10 (E.D. La. June 16, 2011) (hereinafter, "*SUSTA*").[6] Judge Fallon found that the subject matter of the statements was in Louisiana, that the sources relied upon for the statements

---

[6] A true and correct copy of the slip opinion is attached as PX 3.

were in Louisiana, and that the defendant knew that the brunt of the harm would be felt in Louisiana, because the defendant knew that the plaintiffs lived and worked there. Slip Op. at 10–12 (citing *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002); *Fielding v. Hubert Burda Media Inc.*, 415 F.3d 419 (5th Cir. 2005); *Clemens v. McNamee*, 615 F.3d 374 (5th Cir. 2020)).

Judge Fallon's analysis in *SUSTA* addresses a few factors that are either irrelevant or non-determinative in internet defamation cases. First, *Calder* does not require the defamatory statements to explicitly or specifically refer to the forum state. Slip Op. at 12. Second, *Calder* does not require the harm to be exclusively felt in the forum state. Slip Op. at 12 (noting that the Supreme Court "clearly found it irrelevant that the victim, who was of national renown, almost certainly had a reputation to protect outside California"). Third, the share of the audience in the forum state is not relevant. Slip Op. at 13–15 (noting that the defendants in *Calder* published their statements in a national magazine "that had only about one-tenth of its circulation in California"). And finally, the *Zippo* spectrum is not determinative in internet defamation cases where the defaming defendant does not operate the website. Slip Op. at 15–18 (discussing and applying the reasoning from *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002)).

In sum, the test for personal jurisdiction in internet defamation cases is "in the main a pragmatic account of reasonable expectations—if you are going to pick a fight in Texas, it is reasonable to expect that it be settled there."

*Revell*, 317 F.3d at 475.

      c)     *Assaf's Contacts with Texas*

Assaf expressly aimed his defamation at Texas. He knew that Poulter lives and works in Texas. When he called Poulter a pedophile and a child pornographer, he knew and intended that the brunt of the harm would be felt in Texas. Under the rule in *Calder*, that contact alone is sufficient for this Court to exercise personal jurisdiction over him.

### 3. The "fair play and substantial justice" factors weigh in favor of exercising personal jurisdiction.

Having established that Assaf has sufficient minimum contacts with Texas to be sued here, the next question is whether doing so would offend traditional notions of fair play and substantial justice. Courts generally recognize five factors relevant to this determination:

1. the burden on the defendant,

2. the forum State's interest in adjudicating the dispute,

3. the plaintiff's interest in obtaining convenient and effective relief,

4. the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and

5. the shared interest of the several States in furthering fundamental substantive social policies.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985). These factors may "sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King*, 471 U.S. at 477 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S.

770 (1984); *Calder v. Jones*, 475 U.S. 783 (1984); *McGee v. International Life Insurance Co.*, 355 U.S. 220 (1957)).

All five factors weigh in favor of exercising jurisdiction in this court. While this is a multistate case involving parties in Texas, California, and New Jersey, there is only one set of facts to be adjudicated. Plaintiffs seek compensation for statements made by Defendants during conversations with each other that were broadcast worldwide on YouTube. Because of the one set of facts and harm, it will be more convenient, effective, and efficient to adjudicate the claims in one forum, and this Court is the best forum. It balances the travel burden among the parties by making the coastal parties meet in the middle. Additionally, Assaf himself has already consented to this Court's jurisdiction. *See* Doc. 18.

It is better for one set of facts to be adjudicated by one court than by two. Accordingly, traditional notions of fair play and substantial justice would not be offended—in fact, would bless—the exercise of personal jurisdiction over Assaf in this case.

### 4. *Assaf's arguments against personal jurisdiction rely on faulty premises.*

Assaf's motion to dismiss asserts some of the same arguments as Van Sciver's motion to dismiss and fails for the same reasons:

First, Assaf claims he does not "have any significant contact with Texas." Doc. 26 at 8. But as the *Lewis* court explained, the minimum contacts analysis

is not a math test: a single contact—such as a false statement claiming that a Texas resident is a pedophile and a child pornographer—can be enough. *Lewis*, 252 F.3d at 358–59.

Second, Assaf asserts in a conclusory statement that, "The alleged defamatory statements were not directed to Texas." Doc. 26 at 8. But that is the question to be answered. If, like the defendants in *Calder*, *Hawbecker*, and *SUSTA*, Assaf made statements about somebody he knew was a Texas resident with knowledge that the brunt of the harm would be felt there, then he directed his statements to Texas.

Third, Assaf relies in part on the *Zippo* test,[7] arguing that YouTube is a passive website and that hearing Assaf's statements required the unilateral activity of non-party viewers. Doc. 26 at 8. But as Judge Fallon and the *Revell* court explained, the *Zippo* test is not determinative in internet defamation cases where the defendant did not operate the website on which the statements were posted. *SUSTA*, Slip Op. at 15–18 (discussing and applying the reasoning from *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002)).

Finally, Assaf cites another case in the ComicsGate controversy, *Meyer v. Waid*, as supporting his arguments.[8] Doc. 26 at 9. But that case was dismissed on an the agreed stipulation of the parties. PX 4 (order granting

---

[7] *See Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).

[8] Perhaps ironically, the alignment of the parties there was the opposite of the alignment here. The plaintiff, Richard C. Meyer is allied with Assaf, Kundert, and Van Sciver, while the defendant, Mark Waid, is allied with Lamont and Poulter.

agreed stipulation of dismissal with prejudice). And, unlike Lamont and Poulter, Meyer did not "argue for personal jurisdiction on [his internet defamation] claim under *Calder's* 'effects' test and has therefore waived this argument." PX 5 at 11 n.6 (magistrate's report in *Meyer v. Waid*). In other words, the *Meyer* court did not address the arguments raised here and is not particularly helpful.

### 5.     *The Court can exercise personal jurisdiction over Assaf.*

Assaf made defamatory statements about somebody he knew was a Texas resident, with the knowledge and intent that the brunt of the harm would be felt in Texas. The Court should deny the motion to dismiss and exercise jurisdiction.

## B.     Rule 12(b)(6)—Statement of a Claim on Which Relief Can Be Granted

### 1.     *Standard of Review*

Rule 12(b)(6) authorizes the dismissal of cases where the complaint fails to state a claim upon which relief can be granted. The basis for the motion can be either legal or factual. The legal basis applies where the plaintiff would not be entitled to relief even if everything he alleged were true. The factual basis applies where "the complaint does not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Walker v. Beaumont I.S.D.*, 938 F.3d 724, 734 (5th Cir. 2019) (cleaned up). Plausibility "is not akin to a 'probability requirement'"; a well-pleaded complaint may

proceed even if it appears that a recovery is very remote and unlikely. *Walker*, 938 F.3d at 735 (citations omitted).

In evaluating motions to dismiss filed under Rule 12(b)(6), the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiffs. All questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiffs' favor. In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker*, 938 F.3d at 735 (citations omitted).

### 2.   *The complaint states claims against Assaf.*

Lamont and Poulter sued Assaf for (1) defamation, slander per se, and cyber libel, and (2) statutory libel. Doc. 6 at 10–13. The basic elements of a claim for defamation[9] are (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, and (3) that was made with the requisite degree of fault. *Dallas Morning News Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019).

Lamont and Poulter have pled sufficient facts to show a plausible claim

---

[9] Texas law recognizes defamation in two forms: slander (a defamatory statement expressed orally) and libel (a defamatory statement expressed in written or other graphic form). *Dallas Morning News Inc. v. Tatum*, 554 S.W.3d 614, 623–24 (Tex. 2018).

that Assaf defamed them. Lamont and Poulter alleged that Assaf intentionally or negligently made statements to a public audience on YouTube, that were about Lamont and Poulter (indeed, that referenced them by name); that were apparently statements of fact—specifically, that Lamont and Poulter were pedophiles and pornographers; and that were false. Doc. 6 at 8–13. Lamont and Poulter also alleged that, as a result of Assaf's false statements, they suffered general reputational damages, as well as special damages, including lost sales and income from publishers refusing to sell Poulter and Lamont's comic books, lost sales and income from customers refusing to buy Poulter and Lamont's comic books, the need for additional security at comic book conventions and gatherings, and Plaintiffs' mental anguish suffered as a result of those. Doc. 6 at 13–17.

Lamont and Poulter's complaint stated a claim on which relief can be granted, and the motion should be denied.

### 3. *Lamont and Poulter object to the Court's consideration of the attachments to Assaf's motion.*

Assaf purports to rebut Lamont and Poulter's claims with a handful of documents. Doc. 26-2. But that is improper at this stage. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S.

232, 236 (1974). To determine that, this Court is limited to considering "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Innova Hospital, San Antonio, L.P. v. Blue Cross and Blue Shield of Georgia, Inc.*, 892 F.3d 719, 726 (5th Cir. 2018).

Lamont and Poulter object to all of Assaf's exhibits because none of them fit within a category of documents the Court may consider at this stage. They are not the complaint, nor were they attached to or incorporated into the complaint, nor are they matters of which the Court may take judicial notice, at least not for the purposes asserted by Assaf. The Court should therefore exclude Assaf's attachments and consider only the matters properly before it.

### 4.   *Assaf's remaining arguments fail to pass muster under Rule 12(b)(6).*

First, Assaf argues that the complaint does not "establish" that Assaf's statements led to the cancellation of The Demonatrix campaign. Doc. 26 at 9–10. But the complaint specifically alleges:

> John T. Lamont[] launched his first comic, The Demonatrix on March 1, 2021 with projected sales of $5,000.00. On the same day the comic was launched, Defendants Ali "Dean" Assaf and Victoria [Kundert] began an intense campaign of denigration and vilification of John Lamont calling him a pedophile. Comic book sales immediately stalled. Some prospective customers refused to support the campaign citing allegations of pedophile. Poor sales forced the campaign's cancellation.

16

Doc. 6 at 15. When the complaint is viewed in the light required under Rule 12(b)(6), it establishes that Assaf's statements caused the cancelation of The Demonatrix campaign.

Second, Assaf argues that the allegations in the complaint are insufficiently specific for him to determine when he made the statements complained of and therefore defend himself. Doc. 26 at 10–11. He claims that "Defendants cannot properly defend themselves when they have no idea of when and where to look to ascertain the validity of the claims made." Doc. 26 at 11. But the complaint specifically alleges that the statements were made between March 1 and May 2, 2021, by Assaf, to Kundert and Van Sciver, on Assaf and Kundert's talk show, which was broadcast on YouTube. Doc. 6 at 6–9. Assaf admits that "YouTube maintains a permanent record of such streams and allows for accurate reproduction of statements and context." Doc. 26 at 5. He knows exactly when and where to look to find an "accurate reproduction of [his] statements and [their] context." He has all the notice the law requires.

Third, Assaf argues that the complaint does not "establish" that Assaf's statements led to decreased sales. Doc. 26 at 11. But the complaint specifically alleges that, "As a direct and proximate result of [Assaf's] publication of the defamatory statements, [Lamont and Poulter have] suffered . . . loss of future sales," including a 20% drop in funding and $25,000 per year in lost revenue. Doc. 6 at 14–16. When the complaint is viewed in the light required under Rule 12(b)(6), it establishes that Assaf's statements caused Lamont and

Poulter to suffer lost sales.

Finally, Assaf argues that "Poulter continues to attend conventions without worry." Doc. 26 at 12 (capitalization normalized). But that is nothing more than a factual dispute regarding the extent of Poulter's damages.

## Conclusion

The Court should deny Assaf's motion in its entirety. First, the Court has personal jurisdiction over Assaf because (a) he consented to this Court's jurisdiction when he filed an answer that didn't assert the defense, and (b) his defamatory statements about somebody he knew to be a Texas resident, made with the intent to cause harm in Texas, are sufficient contacts with Texas for the courts of Texas to exercise personal jurisdiction. Exercising personal jurisdiction over Assaf will not offend traditional notions of fair play and substantial justice. Should the Court be inclined otherwise, however, Plaintiffs would request leave to file a motion to transfer the case to another district which may be able to exercise personal jurisdiction.

Second, Lamont and Poulter stated claims on which relief can be granted.

The Court should therefore deny Assaf's motion and grant to Plaintiffs such other and further relief to which they may be entitled.

18

Respectfully submitted,

Jeremy M. Masten
Texas Bar No. 24083454
jeremy@themastenlawfirm.com
2608 N. Main, Suite B, Box 238
207 Lake Road
Belton, Texas 76513
(254) 307-9185

M. Sameer Ahmed
**THE AHMED FIRM PLLC**
Texas Bar No. 24001631
sameer@theahmedfirm.com
13601 Preston Road, Suite E770
Dallas, Texas 75240
(972) 934-5858 - tel
(972) 934-5859 – fax

Counsel for Plaintiffs

19

**Certificate of Service**

I hereby certify that a true and correct copy of the foregoing was served on all parties through the Court's CM/ECF system, including those listed below, on September 20, 2021.

Scott Houtteman
scott@houtteman.com

Counsel for Defendant Ethan Van Sciver

Thomas J. Adair
tom@adairlaw.com

Dean Assaf
Aliassaf959@gmail.com

Pro se defendant

Victoria Kundert
5895 Jensen Road
Castro Valley, California 94552

Pro se defendant evading service
Via CMRRR and first class mail

_____

Jeremy Masten

20