IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN T. LAMONT and<br>PRESTON POULTER,<br><br>    Plaintiffs,<br><br>v.<br><br>DEAN ASSAF A/K/A DA TALK<br>VICTORIA KUNDERT A/K/A<br>VIKKIVERSE, AND ETHAN VAN<br>SCIVER.<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:21-CV-1176-K-BN |

**DEFENDANT ETHAN VAN SCIVER'S**
**REPLY BRIEF**

# TABLE OF CONTENTS

                                                                                                                            Page
TABLE OF CONTENTS ................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................ iii

I.   LAMONT'S CASE MUST BE DISMISSED. ........................................................ 1

II.  A SINGLE "MINIMUM CONTACT"—PLAINTIFF POULTER'S TEXAS
     RESIDENCY—IS NOT SUFFICIENT FOR PERSONAL JURISDICTION OVER
     VAN SCIVER. ......................................................................................................... 2

     A.   Plaintiffs Misrepresent *Calder v. Jones* ................................................. 3

     B.   Plaintiffs' Reliance on *Revell v. Lidov* Is Mistaken. ............................. 4

     C.   The Other Cases Plaintiffs Cite Are of No Help to Them. ..................... 5

III. PLAINTIFFS DO NOT DISPUTE THAT WHEN ACTUAL IMAGES ARE
     DISPLAYED, THE COMMENTS ON THE IMAGES ARE OPINION AND
     CANNOT BE DEFAMATORY. ............................................................................. 7

IV.  ALLEGATIONS PRESENTED IN THE COMPLAINT HAVE BEEN TACITLY
     WITHDRAWN SHOWING THE ORIGINAL ALLEGATIONS WERE FALSE AND
     MISLEADING. ........................................................................................................ 9

V.   CONCLUSION ........................................................................................................ 9

## TABLE OF AUTHORITIES

Page

**Cases**

*Calder v. Jones*,
   465 U.S. 783 (1984) ..................................................................................................3

*Chapin v. Knight-Ridder, Inc.*,
   993 F.3d 1087 (4th Cir. 1993) ..................................................................................7

*Clemens v. McNamee*,
   615 F.3d 374 (5th Cir. 2010) ....................................................................................6

*Dodds v. ABC, Inc.*,
    145 F.3d 1053 (9th Cir. 1998) .................................................................................7

*Epicous Adventure Travel, LLC v. Tateossian, Inc.*,
   573 S.W.3d 375 (Tex. App. 2019) ............................................................................7

*Fielding v. Hubert Burda Media, Inc.*,
   415 F.3d 419 (5th Cir. 2005) ................................................................................4, 6

*GreatFence.com, Inc. v. Bailey*,
   No. 17-20487 (5th Cir., June 13, 2018) ....................................................................7

*Hawbecker v. Hall*,
   88 F.Supp.3d 723 (W.D. Tex. 2015) ........................................................................5

*Jobe v. ATR Marketing, Inc.*,
   87 F.3d 751  (5th Cir. 1996) .....................................................................................4

*Lewis v. Fresne*,
   252 F.3d 352 (5th Cir. 2001) ....................................................................................5

*Revell v. Lidov*,
   317 F.3d 467 (5th Cir. 2002) ................................................................................4, 5

*Southmark Corp. v. Life Investors, Inc.*,
   851 F.2d 763 (5th Cir. 1988) ....................................................................................4

*U.S. Trade Ass'n v. Unidentified Parties*,
   No. Civ. A. 10-1669 (E.D. La. June 16, 2011) .........................................................6

*Walden v. Fiore*,
   571 U.S. 277 (2014) ..................................................................................................4

*Wien Air Alaska Inc. v. Brandt*,
   195 F.3d 208 (5th Cir. 1999) ................................................................................. 4, 5

**Rules**

Fed. R. Civ. P. 12(b)(2) ............................................................................................... 9

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 9

Defendant Ethan Van Sciver ("Van Sciver") hereby replies to Plaintiffs' brief ("Pl. Br."), Dkt. No. 28, filed in opposition to Van Sciver's Motion to Dismiss ("D. Br."), Dkt. No. 19. Van Sciver respectfully requests the Court dismiss Plaintiffs' claims against him for lack of personal jurisdiction and failure to state a claim upon which relief may be granted.

As Plaintiffs' response brief confirms, their assertion that personal jurisdiction over Van Sciver exists in Texas is premised solely on the fact that one Plaintiff, Preston Poulter, lived in Texas at the time that Van Sciver made two untargeted comments on a YouTube broadcast watched by 750 people. The alleged statements by Van Sciver, who has at all times resided in New Jersey, were merely two comments expressing his opinion that two comic book images illustrated by Poulter were distasteful and graphic. The context in which Van Sciver's opinions about the images were made related to his efforts to protect his trademark rights in his COMICSGATE mark and in particular why he did not want the mark used on Plaintiffs' graphic images. Plaintiff Poulter's mere residence at the time of such comments, which were not directed to Texas, is not a sufficient basis for the exercise of personal jurisdiction. Further, Plaintiffs' brief has failed to identify facts alleged in their First Amended Complaint ("Complaint") (Dkt. No. 6) that state a plausible claim against Van Sciver.

I.  **LAMONT'S CASE MUST BE DISMISSED.**

While all claims against Van Sciver should be dismissed for lack of personal jurisdiction, Plaintiffs' Complaint and recent brief fail to allege any facts to support a cause of action by Plaintiff John Lamont against Van Sciver. The two allegedly defamatory statements

spoken by Van Sciver do not mention Lamont. *See* D. Br. at 10, n.4.[1] Plaintiffs' opposition brief disputes none of this and no rationale is offered to rescue Lamont's causes of action against Van Sciver. Therefore, Lamont's case against Van Sciver must be dismissed.

II. **A SINGLE "MINIMUM CONTACT"—PLAINTIFF POULTER'S TEXAS RESIDENCY—IS NOT SUFFICIENT FOR PERSONAL JURISDICTION OVER VAN SCIVER.**

The Parties agree that personal jurisdiction, if present, must be specific personal jurisdiction and, accordingly, the Plaintiffs must properly allege that Van Sciver has "minimum contacts" with Texas directly relating to the two alleged defamatory statements. In the following passage Plaintiffs list all "minimum contacts" he alleges Van Sciver has with Texas:

> Van Sciver expressly aimed his defamation at Texas. Van Sciver knew that Poulter lives and works in Texas. When he called Poulter a pedophile and a child pornographer, he knew and intended that the brunt of the harm would be felt in Texas. Under the rule in *Calder*, that contact alone is sufficient for this Court to exercise personal jurisdiction over him.

Pl. Br. at 8. Plaintiffs are employing a bit of puffery. There are two categories of "contacts" with the forum state defined in defamation cases (1) defamation "expressly aimed" at the forum state contact and (2) defamation in which the "brunt of the harm" is found in the forum state. *See below*. But here Plaintiffs are deriving both types of contacts from a single piece of information, the alleged knowledge that Poulter lives in Texas. Thus, Plaintiffs' Complaint alleges only a single contact with Texas, Poulter's own residence here.

---

[1] The briefs each have two series of page numbers. All citations to the briefs will use the numbers found at the bottom of the page rather than the numbers generated by the ECF system located in the heading.

**DEFENDANT ETHAN VAN SCIVER'S**
**REPLY BRIEF** PAGE 2

### A. Plaintiffs Misrepresent *Calder v. Jones*

Plaintiffs largely rely on *Calder v. Jones*, 465 U.S. 783 (1984) for the assertion of jurisdiction over Van Sciver here. In *Calder,* actress Shirly Jones brought suit in California claiming she had been libeled in an article published by the National Enquirer and its editor Iain Calder. The United States Supreme Court held that sufficient minimum contacts existed between the National Enquirer and California to support personal jurisdiction because (1) California was the focal point the story and (2) California is where the brunt of the harm was suffered. *Id.*

In *Calder*, the court concluded the subject statements were not "mere untargeted" libel, because California was the focal point given that information contained in the article was obtained through phone calls to sources in California and calls to Ms. Jones' California home to elicit comments. *Calder*, 465 U.S. at, 788-89. In other words, in *Calder*, the allegedly libelous article was the result of affirmative acts directed at California. Further, California was the location in which the brunt of the harm was suffered not only because Ms. Jones lived and worked there, but because the National Enquirer had its largest circulation there:

> [The National Enquirer] publishes a national weekly newspaper with a total circulation of over 5 million. About 600,000 of those copies, *almost twice the level of the next highest State*, are sold in California.

*Id*. at 785 (emphasis added).

In the present case, Plaintiffs rely upon the so-called "effects test" or "the rule in *Calder*" (Pl. Br at 5, 8) to justify their claim that personal jurisdiction in the forum state can be found merely on a plaintiff's residence. They characterize *Calder* with brazen inaccuracy:

> . . . the share of the audience in the forum state is not relevant. . . . the defendants in *Calder* published their statements in a national magazine 'that had only about one-tenth of its circulation in California.'

Pl. Br. at 7-8.[2]

The actual language of *Calder*, cited above, does not contain a "rule" favoring personal jurisdiction based solely on the location of the injury. Unfortunately for Plaintiffs, numerous cases hold precisely the opposite, that foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 291 (2014) ("the mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum [s]tate does not suffice to authorize jurisdiction."); *Wien Air Alaska Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) (citing *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753-54 (5th Cir. 1996); *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763 (5th Cir. 1988)); *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419 (5th Cir. 2005).

### B. Plaintiffs' Reliance on *Revell v. Lidov* Is Mistaken.

According to Plaintiffs, Van Sciver "picked a fight in Texas" and so "it is reasonable to expect that it be settled there." Pl. Br at 3-4, 8 (citing *Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002)). But despite its encouraging quote, *Revell's* holding is directly contrary to Plaintiffs' interests here and can be cited as precedent in favor of Defendant Van Sciver.

In *Revell*, an article was posted on a publicly accessible bulletin board maintained by the Columbia University School of Journalism in New York City. The article singled out Texas resident Oliver "Buck" Revell, for severe criticism over his handling of the terrorist bombing

---

[2] Here Plaintiff is not quoting *Calder.* Plaintiff is quoting a lawyer's *unsuccessful* argument about *Calder* in a later case.

of Pan Am Flight 103 going so far as to accuse Revell of complicity in a conspiracy and a coverup of the bombing. *Revell,* 317 F.3d at 469.

Revell insisted on suing in his home state, Texas, despite the fact that the article (1) contained no reference to Texas, (2) did not refer to Texas activities of Revell, (3) was not directed at Texas readers any more than readers in other states, and (4) Texas was not the focal point of the article, or the harm suffered. *Id*. at 473. Unsurprisingly, the trial court granted the New York defendants' motion to dismiss for lack of personal jurisdiction and, after Revell appealed, the 5th Circuit affirmed the trial court. *Id*. at 476.

The present case is closely analogous, Defendant Van Sciver was a guest on a YouTube livestream conversation which (1) did not reach out to the forum state for content, (2) did not discuss any activity in the forum state and, (3) unlike a magazine, was not "sent" to cause injury to anyone in any particular state. Rather, it was sought out by about 750 listeners who found the video on a particular YouTube channel. Pl. Br. at 13. Indeed, for all we know Plaintiff Poulter may have been the only Texas resident who saw it.

C.  The Other Cases Plaintiffs Cite Are of No Help to Them.

In their brief, Plaintiffs cite additional cases in which personal jurisdiction was justified. But they are inapposite. In each, the defendant had directly contacted the forum state and that contact gave rise to the cause of action. *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001) (defendant directed telephone conversations to the forum state which contained the fraudulent statements that led to the cause of action); *Wien Air Alaska*, 195 F.3d at 212 (defendant directed to the forum state calls, letters and faxes whose contents contained fraudulent misrepresentations that were at the heart of the cause of action); *Hawbecker v. Hall,* 88 F.Supp.3d 723, 729 (W.D. Tex. 2015) (defendant publicized defamatory statements in the

forum state by contacting Plaintiff's friends, family members and employer via Facebook messages and emails); *U.S. Trade Ass'n v. Unidentified Parties*, No. Civ. A. 10-1669, Slip Op. at 1, 11 (E.D. La. June 16, 2011) (defendant's alleged defamatory statements refer to Plaintiff's conduct in the forum state and defendant used sources in forum state for the alleged facts).

Plaintiffs cite two other cases but, inexplicably, they favor Van Sciver. In *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419 (5th Cir. 2005), no personal jurisdiction was found for an alleged defamatory series of articles despite the fact that several copies were purposefully sent to the forum state, Texas, and despite the use of Texas sources for background research. This was because the clear focus of the articles was outside the forum state and knowledge of harm in the forum state was conspicuously lacking. Interestingly, *Fielding* explicitly held "the plaintiff's mere residence in the forum state is not sufficient to show that the defendant had knowledge that effects would be felt there." 415 F.3d at 426-27.

Similarly, in *Clemens v. McNamee*, 615 F.3d 374 (5th Cir. 2010) the baseball player Roger Clemens, a Texas resident, sued in Texas over alleged defamatory statements which were published by every national news service and in every major newspaper. Nevertheless, the 5th Circuit affirmed the Texas district court's dismissal for lack of personal jurisdiction despite the defendant's thirty-five trips to Texas because the focal point of the statements, alleging Clemens used performance-enhancing drugs, was not directed at Texas but concerned only non-Texas activities, the delivery of the drugs to Clemens in New York and Canada. 615 F.3d at 377, 380.

Plaintiffs also argue, the "*Zippo* spectrum," which guides jurisdictional analyses for internet cases, "is not determinative in internet defamation cases where the defaming defendant does not operate the website." Pl. Br. at 8 (citing the *U.S. Trade Ass'n* case, supra). Plaintiffs,

however, are oversimplifying. In the *U.S. Trade Ass'n* case, a Louisiana district court judge commented on the personal jurisdiction analysis of the *Revell* case. The judge explicitly acknowledged that *Revell* cited *Zippo*'s personal jurisdiction analysis and "whether a website is interactive is relevant in the [personally jurisdiction] inquiry with respect to a defendant who is not a website operator." *U.S. Trade Ass'n*, Slip Op. at 16-17. But the judge suggested *Revell* may ultimately have relied exclusively on the *Calder* factors. *Id.* None of this helps the Plaintiffs. The *Calder* analysis strongly favors Defendant Van Sciver, as discussed above.

In any event, *Zippo* is often cited in Texas, not only in defamation cases like *Revell*, but in other tort cases when personal jurisdiction is based on contacts over the internet. *See, e.g., Epicous Adventure Travel, LLC v. Tateossian, Inc.*, 573 S.W.3d 375, 387 (Tex. App. 2019) (fraud); *GreatFence.com, Inc. v. Bailey,* No. 17-20487, Slip Op. at 4 (5th Cir., June 13, 2018) (trademark infringement) ("To determine whether personal jurisdiction can be exercised over a defendant based on its Internet presence, our circuit follows the approach developed in *Zippo Mfg.*"). Under *Zippo*, because YouTube is a passive website, the contacts with that website by Texans will not give rise to personal jurisdiction in Texas. *See* D. Br. at 8-9.

III. **PLAINTIFFS DO NOT DISPUTE THAT WHEN ACTUAL IMAGES ARE DISPLAYED, THE COMMENTS ON THE IMAGES ARE OPINION AND CANNOT BE DEFAMATORY.**

Plaintiffs are also faced with a line of precedent that appears to require dismissal for failure to state a claim upon which relief can be granted. When the underlying basis for an alleged defamatory statement is disclosed (allowing the public to see for themselves) the First Amendment protects that statement as a non-actionable opinion. *See e.g. Chapin v. Knight-Ridder, Inc.*, 993 F.3d 1087, 1093 (4th Cir. 1993); *Dodds v. ABC, Inc.*, 145 F.3d 1053, 1067 (9th Cir. 1998). D. Br. at 11-12.

The livestream containing Defendant Van Sciver's alleged defamatory statements first displayed the image that was the underlying basis for Van Sciver's statements. D. Br. at 4; Exhibit 1, Appn 3, Dkt. No. 19-1. In an attempt to address this issue, Plaintiffs quote a truncated version of the alleged defamatory statement in which Van Sciver distinguished Poulter from an individual "outed as an actual you know, child pornographer, uh pedophile." Van Sciver's full statement was:

> Especially right now, you know, at this point one of his pals, Slick Jimmy, outed as an actual, you know, child pornographer, uh pedophile. You know it's like, this, now is not a good time for that bullsh[*]t.

Exhibit 1, Appn 5, Dkt. No. 19-1. Rather than quote the statement in full, Plaintiffs represent the statement as follows:

> Van Sciver showed a few images, then made broad statements, bolstered by the allegation that Poulter was associated with "an actual, you know, child pornographer, uh pedophile." Van Sciver clearly intended to make or imply a false assertion of fact about Lamont and Poulter.

Pl. Br. at 16. Thus, Plaintiffs truncated Van Sciver's actual statement and replaced it with their lawyer's words, "associated with." Plaintiffs thus converted a statement distinguishing Poulter from an "actual, you know, child pornographer, uh pedophile" into one which "associated" Poulter with "an actual child pornographer and pedophile."

Plaintiffs argue the above somehow implicates Van Sciver. Despite the fact that he showed "a few images," he nevertheless "clearly intended" false assertions. This misleading, out of context quotation to the record is no substitute for legal argument. Indeed, it is a tacit admission that Plaintiffs have no valid legal argument and have failed to state a claim upon which relief may be granted against Van Sciver.

## IV. ALLEGATIONS PRESENTED IN THE COMPLAINT HAVE BEEN TACITLY WITHDRAWN SHOWING THE ORIGINAL ALLEGATIONS WERE FALSE AND MISLEADING.

Plaintiff Poulter originally pleaded that he was "owner of [the trademark] Comicsgate" and "promoter of Comicsgate," that "Ethan Van Sciver claims [the Comicsgate trademark] is no longer of interest to him," and that Van Sciver "would do whatever he had to do to interfere with Poulter's comic business." Complaint, Doc. 6, at ¶¶19, 20.

But as Van Sciver presented his side of the story in these briefs, Poulter's case is falling apart. The Comicsgate trademark was *not* owned by Poulter (or Lamont). Poulter merely filed an "intent to use" application and has filed a Cancellation Proceeding before the U.S. Patent and Trademark Office attacking the pre-existing registered Comicgate trademark owned by another. *See* Doc. 28-2, Ex.2 (Cancellation No. 92075375, Ethan Van Sciver, co-defendant).

It is now clear that Poulter started this dispute. He applied the Comicsgate trademark to a comic containing graphic images of very young women without the consent of Van Sciver. Van Sciver's allegedly defamatory comments were merely legally protected expressions, elicited from him by the program hosts, that he did not approve of the unauthorized use of this trademark on images that he found distasteful and graphic. As set forth in Van Sciver's Motion to Dismiss, the allegedly defamatory statements are not actionable, and dismissal is therefore appropriate.

## V. CONCLUSION

For the reasons above and in his Motion to Dismiss, Defendant Ethan Van Sciver respectfully requests this Court dismiss him from this suit because the Court lacks personal jurisdiction under Rule 12(b)(2) and to dismiss this suit in its entirety because it fails to state a cause of action under Rule 12(b)(6).

Date:  September 28, 2021         Respectfully Submitted,

   /s/ Scott Houtteman
Scott Houtteman, *pro hac vice*
Virginia State Bar No. 65567
scott@houtteman.com
Tel. (202) 263-0808
Fax. (202) 697-4306
Houtteman Law LLC
10560 Main St – Suite 420
Fairfax, VA 22020

and

Thomas J. Adair
Texas Bar No. 24047753
tom@adairlaw.com
(512) 431-2736
ADAIR LAW, PLLC
1001 14th Street, Suite 112
Plano, Texas 75074

*Attorneys for Defendant Ethan Van Sciver*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record for Plaintiffs are being served with a copy of this document, via the Court's CM/ECF system on September 28, 2021.

   /s/    Scott Houtteman