# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| JOHN T. LAMONT and | § | |
| PRESTON POULTER, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 3:21-CV-1176-K |
| | § | |
| v. | § | Judge Kinkeade |
| | § | |
| DEAN ASSAF A/K/A DA TALKS, | § | |
| VICTORIA KUNDERT | § | |
| A/K/A VIKKIVERSE, | § | |
| AND ETHAN VAN SCIVER. | § | |
| Defendants. | § | |

# DEFENDANT ALI ASSAF'S
# REPLY BRIEF

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS………………………………………...……………………………..i

TABLE OF AUTHORITIES…………………………………………………………..………..ii

I.    ASSAF OBJECTS TO PLAINTIFFS' CLAIMS MS. KUNDERT IS EVADING SERVICE……………………………………………………………………………......1

II.    ASSAF OBJECTS TO PLAINTIFFS' CLAIMS HE HAS CONSENTED TO JURISDICTION………………………………………………………......…………....2

III.    PLAINTIFFS ARGUE THAT JURISDICTION IS PROPER BECAUSE ONE PLAINTIFF LIVES IN TEXAS....................................................................................3

IV.    KNOWLEDGE OF A PLAINTIFF'S LOCATION IS NOT SUFFICIENT FOR PERSONAL JURISDICTION…………………………………………………....….4

      A.    Plaintiffs Misrepresent *Calder v. Jones*………………………………………...4

      B.    Plaintiffs Misrepresent *Revell v. Lidov*…………………………………………5

      C.    Less Cited Cases Provide No Basis For Jurisdiction……………………………...6

V.    PLAINTIFFS FAIL TO ESTABLISH HOW MR. LAMONT IS AFFECTED IN TEXAS……………………………………………………….………7

VI.    PLAINTIFFS FAIL TO ESTABLISH DEFAMATORY COMMENTS MADE AGAINST MR. POULTER BY ALI ASSAF……………………………..………8

VII.    REQUEST FOR THE COURT TO TAKE JUDICIAL NOTICE OF EXHIBITS………..9

VIII.    CONCLUSION…………………………………………………………………………..11

## TABLE OF AUTHORITIES

Page

### Cases

*Calder v. Jones*,
465 U.S. 783 (1984)……………………………………………………………………………….4

*Chapin v. Knight Ridder, Inc.*,
993 F.3d 1087, 1093 (4th Cir. 1993)…………………………………………………………….9

*Clemens v. McNamee*,
615 F.3d 374 (5th Cir. 2010)………………………………………………………………...…7

*Dodds v. ABC, Inc.*,
145 F.3d 1053, 1067 (9th Cir. 1998)………………………………………………………...…9

*Fielding v. Hubert Burda Media, Inc.*,
415 F.3d 419 (5th Ci. 2005)……………………………………………………………………..6

*Hawbecker v. Hall*,
88 F.Supp.3d 723, 729 (W.D. Tex. 2015)……………………………………………………...…6

*Lewis v. Fresne*,
252 F.3d 352, 358-359 (5th Cir. 2001)………………………………………………………....6

*Revell v. Lidov*,
317 F.3d 467, 475 (5th Cir. 2002)…………………………………………………………...…5

*U.S. Trade Ass'n v. Unidentified Parties*,
No. Civ. A. 10-1669 (E.D. La. June 16, 2011)……………………………………………………7

*Wien Air Alaska v. Brandt*,
195 F.3d 208, 212 (5th Cir. 1999)…………………………………………………………......6

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*,
952 F. Supp. 1119 (W.D. Pa 1997)……………………………………………………….…7

### Rules

Fed. R. Civ. Pro. 2(b)(2)……………………………………………………………………………..1

Fed. R. Civ. Pro. 2(b)(6)……………………………………………………………………………..1

Fed. R. Civ. Pro. 4(m)……………………………………………………………………………..1

Rule 12(b)(2)……………………………………………………………………………………..11

Rule 12(b)(6)……………………………………………………………………………….…...11

Defendant Ali Assaf ("Assaf"), proceeding *pro se*, files this reply to Plaintiffs' opposition brief ("Pl. Br.") filed September 20, 2021.  Mr. Assaf will not repeat arguments from his own brief on his motion to dismiss this claim for lack of personal jurisdiction under Fed. R. Civ. Pro. 2(b)(2) and failure to state a claim on which relief can be granted under Fed. R. Civ. Pro. 2(b)(6), but will respond to new issues Plaintiffs' bring up.

I.  **ASSAF OBJECTS TO PLAINTIFFS' CLAIMS MS. KUNDERT IS EVADING SERVICE.**

Mr. Assaf objects to Plaintiffs' assertion that Defendant Victoria Kundert ("Kundert") is evading service and attempting to both tie her "evasion" to other Defendants via innuendo and insinuation, and further to drive a wedge between them.  Assaf also objects on the grounds that this is a gross mischaracterization by Plaintiffs of the circumstances surrounding the failure of service.

Plaintiffs failed to serve Ms. Kundert properly and in the time allotted under Fed. R. Civ. Pro. 4(m).  Plaintiffs were aware as late as August 4, 2021 that service had not been affected because the address was improper when the unserviced summons was entered into the record, and had 17 calendar days to either obtain the proper address to serve her or in the alternative file a motion for an extension of time or seeking permission to serve in an alternative manner. Plaintiffs, to date, have not done any of this despite having two calendar months from the date which the court had the unserviced summons filed, and instead have simply changed her address on both response briefs to Defendants' motions to dismiss from a New Mexico address to a California address without providing evidence that *this* address is correct.  If Ms. Kundert has been commenting on YouTube streams talking about the case and litigation, she is within her right to do so and her agency is her own.  Defendants cannot be held liable for her actions unless Plaintiffs can prove they are acting in concert to help her evade service.  The Spectre Report

YouTube channel is not a party to this case and so stating Ms. Kundert has responded to a stream of his breaking down of this litigation is immaterial to the current proceedings. Plaintiffs cannot accuse Defendants of actions when their own lack of action regarding service is the issue.

## II.     ASSAF OBJECTS TO PLAINTIFFS' CLAIMS HE HAS CONSENTED TO JURISDICTION.

Plaintiff stipulates that in his responsive brief filed August 4, 2021, he did not raise the issue of this court's lack of personal jurisdiction and only raised (1) subject matter jurisdiction; (2) venue, and; (3) lack of a claim upon which relief can be granted. Mr. Assaf had worked to retain counsel prior to proceeding *pro se* but had not been able to do so, and so filed his response in order to not default. However, his motion to dismiss was filed August 17, 2021, fourteen calendar days after his reply brief was filed. Aside from Defendant Ethan Van Sciver's ("Van Sciver") motion to dismiss (Doc. 19) and the Court's order setting briefing schedule (Doc. 25), nothing else was filed by Mr. Assaf. Further, Mr. Assaf only argues a lack of personal jurisdiction and a lack of merit in this case in his motion to dismiss, ignoring subject matter jurisdiction and venue altogether. As such, it could rightfully be concluded he misunderstood the difference between personal jurisdiction and subject matter jurisdiction as well as venue in his haste to ensure he did not default. There is no indication, therefore, that Mr. Assaf intended to waive his objection to the court's jurisdiction, not would there be any prejudice against Plaintiffs if the Court considers the arguments, considering Plaintiffs have briefed for such a possibility.

Not in dispute here is the fact that Mr. Assaf is a citizen of California and has no connection to the forum state of Texas. Plaintiffs have not alleged that Mr. Assaf has contacted anyone specifically in Texas regarding this matter, either for commentary or for publication reasons. The question, therefore, is if Mr. Assaf's alleged statements on a YouTube stream are enough to establish personal jurisdiction.

Plaintiffs also allege the same facts to establish personal jurisdiction universally. Should the Court be unable to consider the motion for this mistake on Mr. Assaf's part, the Court still maintains the right to dismiss the case *sua sponte* should the facts weigh in Defendants' favor. In the interest of justice, since these facts are universally alleged against Defendants, if one defendant should be dismissed for lack of personal jurisdiction then it is reasonable for the Court to similarly dismiss it against all defendants. This is also true for Ms. Kundert, as she has not been served by Plaintiffs.

### III. PLAINTIFFS ARGUE THAT JURISDICTION IS PROPER BECAUSE ONE PLAINTIFF LIVES IN TEXAS.

All parties agree that personal jurisdiction, if present, must be specific personal jurisdiction and that Plaintiffs must properly show Mr. Assaf has "minimum contacts" with Texas directly relating to the alleged defamation. Plaintiffs allege the following concerning this issue:

> Assaf expressly aimed his defamation at Texas. He knew that Poulter lives and works in Texas. When he called Poulter a pedophile and a child pornographer, he knew and intended that the brunt of the harm would be felt in Texas. Under the rule in Calder, that contact alone is sufficient for this Court to exercise personal jurisdiction over him.

Pl. Br. at 10. Plaintiffs allege that knowledge of Mr. Poulter's living in Texas is enough to confer personal jurisdiction alone. However, in defamation cases there are two categories of "contacts" with the forum state defined for establishing personal jurisdiction: (1) defamation "expressly aimed" at the forum state and (2) defamation in which "the brunt of the harm" is found in the forum state. Here, Plaintiffs are attempting to derive both types of contact from a single piece of information: the alleged knowledge that Mr. Poulter lives in Texas. As such, Plaintiffs' complaint alleges only a single contact with Texas.

### IV. KNOWLEDGE OF A PLAINTIFF'S LOCATION IS NOT SUFFICIENT FOR PERSONAL JURISDICTION.

Plaintiffs allege that the simple knowledge of where one party lives is enough to confer jurisdiction, citing several cases to support their argument. However, in all cases they cite they misinterpret or misrepresent the decisions of the respective courts in those cases to argue their claims.

#### A. Plaintiffs Misrepresent *Calder v. Jones*

In *Calder v. Jones*, 465 U.S. 783 (1984), Shirley Jones brought suit in California against the National Enquirer and its editor Iain Calder, both of whom are in Florida. The U.S. Supreme Court held that sufficient minimum contacts existed between the National Enquirer and California to support personal jurisdiction because (1) California was the focal point of the story and (2) California is where the brunt of the harm was suffered.

California was the focal point because the National Enquirer had made phone calls to individuals in the forum for information sourced in the article. The reporter also called Ms. Jones's home in California to obtain comment. It is also the state where most of the brunt of the harm was suffered, as Ms. Jones lived and worked in California and where the National Enquirer had its largest circulation:

> [The National Enquirer] publishes a national weekly newspaper with a total circulation of over 5 million. About 600,000 of these copies, *almost twice the level of the next highest State*, are sold in California. (emphasis added)

*Calder,* 465 U.S. at 785

Plaintiffs rely on a claimed "effects test" or "the rule in *Calder*" (Pl. Br. at 7, 10) to justify their claim that personal jurisdiction is appropriate if the Plaintiff's residence can be found in the forum state. However, *Calder* does not support this claim, and Plaintiffs misrepresent this to the court in the following:

> Third, the share of the audience in the forum state is not relevant...the defendants in *Calder* published their statements in a national magazine "that had only about one-tenth of its circulation in California").

Pl. Br. at 9

The actual language of *Calder* holds there must be more than simple domicile to confer jurisdiction. As stated previously, the National Enquirer had its largest presence in California (over 10% of its publication and sales), had specifically distributed their material in California, and had engaged in sourcing information from California. In the present case, Plaintiffs have not shown how any defendant—let alone Mr. Assaf—have done anything similar. They have not shown that the stream was broadcast with emphasis on Texas residents seeing it nor that there is a physical copy available specifically in Texas. They do not show that the defendants sourced information from individuals in the forum state. There is not even an indication that the forum state is mentioned. Finally, Plaintiffs fail to show if anyone in Texas other than Mr. Poulter have watched any of these streams.

### B.  Plaintiffs Misrepresent *Revell v. Lidov*

Plaintiffs allege that Mr. Assaf "picked a fight in Texas" and so "it is reasonable to expect that it will be finished there." Pl. Br. at 4-5 (citing *Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002)). However, *Revell's* ruling directly contradicts the Plaintiff's stated claims.

In *Revell*, an article was posted to a publicly accessible bulletin board maintained by Columbia University School of Journalism in New York City. The article singled out Oliver Revell, a Texas resident, for his handling of the Pan Am Flight 103 bombing (also known as the Lockerbie Bombing, as the plane was bombed over Lockerbie, Scotland), accusing Revell of participating in a conspiracy and a coverup of the bombing. *Revell*, 317 F.3d at 469.

Mr. Revell sued in Texas, his home state. The trial court ruled against him on personal

jurisdiction because the article (1) contained no reference to Texas, (2) did not refer to the Texas activities of Revell, (3) was not directed to Texas residents in particular, and (4) Texas was not the focal point of the article or the harm suffered. *Id.* at 473. The trial court granted the New York and Massachusetts defendants' motion to dismiss for lack of personal jurisdiction and after Mr. Revell appealed, the 5th Circuit affirmed the ruling. *Id.* at 476.

This case is very similar to *Revell*. Defendants Assaf and Kundert host a show that is "broadcast worldwide on YouTube" (Pl. Br. at 11) and Plaintiffs show nothing to support that any stream could be, or was, directed with particularity at Texas, that there was any attempt to solicit input from Texas residents, and did not discuss any activities of the Plaintiffs in Texas. There is nothing to prove that anyone from Texas other than Mr. Poulter saw the stream(s).

### C. Less Cited Cases Provide No Basis For Jurisdiction

Plaintiffs cite several cases to establish jurisdiction but they do not apply here. In each of those cases, the defendant had some type of direct contact with the forum state. In *Lewis v. Fresne*, 252 F.3d 352, 358-359 (5th Cir. 2001) the defendant had a telephone conversation with the plaintiff in the forum state, directing his conduct to it. In *Wien Air Alaska v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) the defendant had made phone calls, sent letters and faxes whose contents contained fraudulent misrepresentations which were at the center of the altercation. In *Hawbecker v. Hall*, 88 F.Supp.3d 723, 729 (W.D. Tex. 2015) the defendant had created a Facebook page with the defamatory statements, and had directly contacted friends, family, and the employer of the plaintiff, all of whom were in the forum state.

Two other cases cited support the defendants in this matter, not the plaintiffs. In *Fielding v. Hubert Burda Media, Inc.,* 415 F.3d 419 (5th Ci. 2005), no personal jurisdiction was found for a series of allegedly defamatory articles despite the fact several copies were sent to Texas and the

defendants sourced information from Texas residents. This was because the clear focus of the articles was not in Texas and knowledge of harm in Texas was lacking. *Fielding* also held "a plaintiff's mere residence in the forum state is not sufficient to show the the defendant had knowledge the effects would be felt there." *Id*. 415 F.3d at 426-427.

In *Clemens v. McNamee*, 615 F.3d 374 (5th Cir. 2010) Roger Clemens sued in Texas over alleged defamatory statements which were published nationwide by every national news service. The trial court dismissed the case for lack of personal jurisdiction, and the appeals court affirmed the decision because despite Clemens's residence in Texas, the article focused on the alleged use of performance enhancing drugs outside of Texas, namely in New York and Canada. *Id.* at 377, 380.

Plaintiffs finally argue that the "*Zippo* test is not determinative in internet defamation cases where the defaming defendant does not operate the website." Pl. Br. at 12 (citing *U.S. Trade Ass'n* case, *supra*). Plaintiffs are wrong in this case. The court pointed out that the analysis in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119 (W.D. Pa 1997) had been applied in *Revell* to a defendant who posted an allegedly defamatory article on a website of another. The court questioned how *Zippo* would apply to the website operator. In this case, none of the Defendants are website operators and so the discussion is irrelevant. Since YouTube is a passive website, *Zippo* states that the contacts with the website are insufficient to establish personal jurisdiction.

V. **PLAINTIFFS FAIL TO ESTABLISH HOW MR. LAMONT IS AFFECTED IN TEXAS.**

Plaintiffs go to relatively great lengths to establish how Mr. Poulter has been harmed by the alleged defamatory statements made by defendants. However, Mr. Lamont is conspicuously absent in almost all arguments that Plaintiffs make in their response. Mr. Lamont is a resident of

Florida (Am. Com., Doc. 6, at 1), and Plaintiffs have failed to demonstrate that Mr. Lamont is in any way affected in Texas. Indeed, Plaintiffs allege that the cancellation of Mr. Lamont's project, *The Demonatrix*, by Kickstarter was because of the defamation, despite Mr. Lamont's claims that he canceled it to lower the funding amount by 50%, and Kickstarter's own Terms of Service prohibit pornographic material. If this were the case, then the damage would be felt in Florida where Mr. Lamont resides, not Texas, and as such any damages would be felt there. Because of this, the case should be dismissed with regards to Mr. Lamont.

## VI. PLAINTIFFS FAIL TO ESTABLISH DEFAMATORY COMMENTS MADE AGAINST MR. POULTER BY ALI ASSAF

Plaintiffs allege that the defamatory statements allegedly made by Mr. Assaf were specifically targeting Mr. Lamont, a non-Texas plaintiff. In their amended complaint, they allege that "among other statements...[Mr. Assaf] made the following defamatory statements about *Mr. Lamont* on a public platform to [Ms. Kundert]..." (emphasis added) (Am. Com., Doc 6. at 7). However, there are no statements attributed to Mr. Assaf concerning Mr. Poulter. Plaintiffs allege statements were made but offer nothing to substantiate the claim, where-as they attribute actual quotes (of dubious origin and accuracy) to Mr. Assaf when speaking of the claims concerning Mr. Lamont. Indeed, the closest we get to Plaintiffs ascribing any comments made by Mr. Assaf are "by innuendo, they [Mr. Assaf and Ms. Kundert] ascribed the same alleged deviant behavior of John T. Lamont to Preston Poulter..." *Id.* at 8.

Plaintiffs allege that Mr. Assaf has defamed Mr. Poulter by "republishing" the statements Mr. Van Sciver made on his April 25, 2021 appearance on their YouTube show. However, it should be noted that at the time the statements were made, an actual image of the comic book cover made by Mr. Lamont was being shown, and Mr. Van Sciver said:

Especially right now, you know, at this point one of his pals, Slick Jimmy [Love],

> outed as an actual, you know, child pornographer, uh pedophile.  You know, it's like this: now is not a good time for that bullshit.

Exhibit 1, Doc. 19-1, Appn pages 4-6.  Instead Plaintiffs chose to paraphrase Mr. Van Sciver's words and represents it as the following:

> Van Sciver showed a few images, then made broad statements, bolstered by the allegation that Poulter was associated with "an actual, you know, child pornographer, uh, pedophile." Van Sciver clearly intended to make or to imply a false assertion of fact about Lamont and Poulter.

Doc. 28 at 16.  Providing this out of context statement is a clear issue, as there are other statements that appear to have been truncated as well.  As Mr. Van Sciver has briefed already, taking this out of context quotation and changing it to distinguish Mr. Poulter from an "actual...child pornographer" to one associated with an "actual...child pornographer" is not a substitute for a legal argument, especially when Plaintiffs stipulate that the image is correct.  Doc. 30 at 7-8.  Further, the quote provided and truncated does not mention Mr. Lamont at all, rather another of Mr. Poulter's associates, James Randall Adams, a non-party to the case who was arrested January 14, 2021 for possession of child pornography.  Clearly, Mr. Van Sciver intended to differentiate Mr. Poulter from Mr. Adams.

Finally, since the Plaintiffs have stipulated to the image provided by Mr. Van Sciver in his motion to dismiss being correct, and admit that images were shown before and during the statement made by Mr. Van Sciver, legal precedent protects this as a non-actionable opinion under the first amendment.  *See eg. Chapin v. Knight Ridder, Inc.,* 993 F.3d 1087, 1093 (4th Cir. 1993); *Dodds v. ABC, Inc.,* 145 F.3d 1053, 1067 (9th Cir. 1998) D. Br. at 11-12.

## VII. REQUEST FOR THE COURT TO TAKE JUDICIAL NOTICE OF EXHIBITS.

At issue in this case is the claim that the alleged statements made by Defendants led to the poor sales and ultimate cancellation of Mr. Lamont's project *The Demonatrix* on Kickstarter.

Plaintiffs allege in their Amended Complaint that Mr. Lamont "launched his first comic, The Demonatrix, on March 1, 2021 with projected sales of $5,000.00." (Am. Com., Doc. 6, at 3). They further allege that "[o]n the same day the comic was launched, [Defendants Assaf and Kundert] began an intense campaign of denigration and vilification of John Lamont, calling him a pedophile. Comic book sales immediately stalled...Poor sales forced the campaign's cancellation." *Id.* at 3-4. Exhibit 1 attached to Mr. Assaf's motion to dismiss is a true and correct copy of the webpage from Kickstarter for Mr. Lamont's campaign, showing the pornographic material. Exhibit 2 is a true and correct copy of the Kickstarter webpage, showing the campaign alongside its start date and end date, as well as Mr. Lamont's own words as to why he took the campaign down. The campaign was started by Mr. Lamont on March 15, 2021 with a stated funding goal of $1,000.00 and ended one day later on March 16, 2021. This specifically flies in face of the claim made by Plaintiffs that the campaign was "launched March 1, 2021" with "projected sales of $5,000.00" and was canceled because Mr. Lamont wanted to bring the funding goal downwards by 50%. The price point to begin with was 20% of what Plaintiffs allege in the amended complaint, and they wished to cut that by 50%. Exhibit 3 is a true and correct copy of Kickstarter's terms of service, specifically prohibited items which lists pornographic material on it.

    Judicial notice is appropriate in this instance. Plaintiffs have alleged multiple claims regarding the campaign that are provably false. The images themselves come from a website that is publicly viewable. Further, the website has a track record of accurately compiling start and end dates, to include cancellation dates of projects. Finally, it is difficult to believe that a true and correct copy of the website's terms of service cannot be considered for judicial notice. Since these issues are at the heart of the causes of action Plaintiffs have brought against

Defendants, it is appropriate for the Court to take judicial notice of these exhibits incorporated in Mr. Assaf's Motion to Dismiss. These items are obtained from public record using the original site. The complaint incorporates these facts, by reference, and as such provides sufficient reason for the Court to take judicial notice.

## VIII. CONCLUSION.

For the reasons stated above as well as in his Motion to Dismiss, Defendant Ali "Dean" Assaf respectfully requests this Court dismiss him from this suit because the Court lacks personal jurisdiction under Rule 12(b)(2) based on the facts presented by Plaintiffs in their Amended Complaint as well as relevant case law and to dismiss this suit in its entirety because it fails to state a cause of action under Rule 12(b)(6).

Date:   Oct. 3, 2021					Respectfully submitted,


    /Ali Assaf/
_____
Ali Assaf
Aliassaf959@gmail.com
(415) 450-5212
1014 East Alameda Street
Manteca, California 95336


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record for Plaintiffs are being served with a copy of this document, via the Court's CM/ECF system on October 3, 2021


    /Ali Assaf/
_____