IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN T. LAMONT and PRESTON POULTER, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:21-cv-1176-K-BN |
| DEAN ASSAF a/k/a DA TALK, VICTORIA KUNDERT a/k/a VIKKIVERSE, and ETHAN VAN SCIVER, | § § § § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiffs John T. Lamont, a Texan, and Preston Poulter, a Floridian, bring claims of defamation; slander per se; cyber libel; and statutory libel against Defendants Ali "Dean" Assaf a/k/a "DA Talk" (Assaf), alleged to be a citizen of California; Victoria C. Kundert a/k/a VikkiVerse (Kundert), alleged to be a citizen of New Mexico; and Ethan Van Sciver, alleged to be a citizen of New Jersey [Dkt. No. 6] (the First Amended Complaint (FAC)).

United States District Judge Ed Kinkeade referred this case to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b). *See* Dkt. No. 21.

Van Sciver moved to dismiss the claims against him under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). *See* Dkt. Nos. 19, 20. Plaintiffs responded to the motion to dismiss. *See* Dkt. No. 28. And Van Sciver replied. *See* Dkt. No. 30.

Assaf, proceeding *pro se*, answered the FAC. *See* Dkt. No. 18. He then moved to dismiss the claims against him under Rules 12(b)(2) and 12(b)(6). *See* Dkt. No. 26. Plaintiffs responded. *See* Dkt. No. 29. And Assaf replied. *See* Dkt. No. 31.

As for Kundert, after she failed to respond to the FAC, Defendants moved for entry of default, *see* Dkt. No. 33, which the Clerk of Court entered on November 29, 2021, *see* Dkt. No. 34.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should grant Van Sciver's motion to dismiss under Rule 12(b)(2), dismissing the claims against him without prejudice, and deny Assaf's motion to dismiss.

**Applicable Background**

Plaintiffs allege the following facts:

> John T. Lamont is a writer and illustrator of gothic and fantasy comics that are primarily released through the internet and dedicated community chat rooms and YouTube channel.
> Preston Poulter is a publisher, producer, writer and illustrator of gothic and fantasy comics, and also hosts a web presence called Comicsgate and hosts a show on a YouTube channel and interactive community that promotes and discusses comics and their authors.
> Optical Illusion Studios released #TheDemonatrix, a Daz3d comic series that premiered on March 1, 2021 and was written and illustrated by Plaintiff John T. Lamont.
> Preston Poulter promoted TheDemonatrix comic and placed it in the Comicsgate umbrella of recognized comics.
> The storyline of TheDemonatrix is [ ] fictional.
> Once the comic series was posted in a CGDG stream, beginning March 1, 2021, Defendants Assaf and Kundert made statements regarding the comic, its content, and made directly and through innuendo defamatory statements about the author, John T. Lamont.
> In particular, Defendant Ali "Dean" Assaf blatantly accused John T. Lamont of being a pedophile, of sharing and participating in "Lolicon"[ – "[a] Japanese term derived from the English phrase 'Lolita

complex,' lolicon describes a fascination with cartoons of very young-looking girls engaged in varying degrees of erotic behavior" and "can be used to describe both the genre and its aficionados" – ]with others on the internet, and that John T. Lamont was a diseased person who should be ostracized from society and/or be shot. Among other statements, Defendant Ali "Dean" Assaf a/k/a DA Talk made the following defamatory statements about Mr. Lamont on a public platform to Victoria C. Kundert a/k/a VikkiVerse :

"3D depictions of little girls having sex shows the guy is a pediophilic."

"The guy is making f_____ be pedophilic comics."

"Loli in 3D renders it to be pedophilic".

"He is a diseased minded f_____ person who should be ostracized from society."

"John Lamont is a pedophile."

"John Lamont is attracted to drawings of children."

"John Lamont is a pedophile. They should be shot."

Again on April 12, 2021 Defendant Ali "Dean" Assaf a/k/a DA Talk made statements to "Big Daddy" on a public platform. In his statements, Defendant Ali "Dean" Assaf a/k/a DA Talk repeated his prior defamatory statements that accused Mr. Lamont of being a "pedophile" and "his comic is a pedophile comic." Defendant Assaf a/k/a DA Talk further stated that he should "be shamed" and "not normalized."

Defendant Victoria C. Kundert a/k/a VikkiVerse endorsed, adopted and republished the above statements made by Defendant Ali "Dean" Assaf a/k/a DA Talks and on the same public platform, made the following defamatory statements there were attributed to John Lamont:

"Created woman that looked like they were underage."

"a woman that looks like that you would go to jail for f_____."

"its Loli in 3D reflection."

"just because Loli is legal it doesn't mean it not child porn." (a double negative)

"woman that are created young enough to look like they're underage."

On April 25, 2021, Defendant Ethan Van Sciver joined Ali "Dean" Assaf a/k/a DA Talks and Vikki Verse on the DA Talks' YouTube channel and stated that wanted to obtain the Comicsgate trademark and would protect the trademark by preventing Preston Poulter from publishing child pornography. In discussing Ethan Van Sciver's trademark dispute with Preston Poulter, Defendant Ethan Van Sciver said, "In order to have a trademark you have to protect it. I will not allow it to be put on child pornography by Preston Poulter." Again, on April 25, 2021 on the DA Talks YouTube channel, Defendant Ethan Van Sciver repeated his accusation that Preston Poulter was a child

- 3 -

pornographer. Defendant Ethan Van Sciver stated "I don't want Preston to make child pornography and put Comicsgate on it." Defendants Ali "Dean" Assaf a/k/a DA Talk and Victoria C. Kundert a/k/a VikkiVerse endorsed, agreed, adopted, and republished Ethan Van Sciver's defamatory remarks.

Ethan Van Sciver and Preston Poulter have a previous issue over the Comicsgate trademark that Ethan Van Sciver claims is no longer of interest to him, but he made statements on the DA Talks YouTube channel that he would do whatever he had to do to interfere with Mr. Poulter's comic business.

Defendants Ali "Dean" Assaf a/k/a DA Talk and Defendant Victoria C. Kundert a/k/a VikkiVerse accused Preston Poulter of knowingly promoting and supporting John T. Lamont despite his alleged knowledge that John T. Lamont was a pedophile. In addition, by innuendo, they ascribed the same alleged deviant behavior of John T. Lamont to Preston Poulter because as owner of Comicsgate and his dedicated discord server, he actively defended John T. Lamont, promoted John T. Lamont, participated and hosted on-going exchanges between participants of "lolicon" through Comicsgate and thus shared an interest in underage girls having sex as allegedly represented in John T. Lamont's TheDominatrix comic.

Defendants Ali "Dean" Assaf a/k/a DA Talk and Defendant Victoria C. Kundert a/k/a VikkiVerse accused Preston Poulter of knowingly promoting and supporting John T. Lamont as a known pedophile and child pornographer. They further accused Preston Poulter of also being a pedophile because he shared and actively participated in "lolicon." In addition, by innuendo, they ascribed the same alleged deviant behavior of John T. Lamont to Preston Poulter because as promoter of Comicsgate and his dedicated discord server, he actively defended John T. Lamont, promoted John T. Lamont, participated and hosted on-going exchanges between participants of "lolicon" through Comicsgate and thus shared an interest in little girls having sex as represented in John T. Lamont's TheDominatrix comic.

On May 2, 2021 DA Talks and VikkiVerse repeated their defamatory statements regarding John Lamont and Preston Poulter.

Defendants Ali "Dean" Assaf a/k/a DA Talk and Defendant Victoria C. Kundert a/k/a VikkiVerse intentionally repeated the defamatory statements and defied Plaintiffs to seek remedies. Since the defamatory statements were first made, they have been disseminated into a large part of the community of comic book professionals and enthusiasts. The defamatory statements have been the source of discussions on social media and their publication has been repeated.

Dkt. No. 6, ¶¶ 9-23.

## Legal Standards and Analysis

    I.    The Court should find that Assaf waived his right to seek dismissal of the operative complaint for lack of personal jurisdiction but should dismiss the claims against Van Sciver without prejudice for lack of <u>personal jurisdiction.</u>

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the nonresident. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

This defense "exists to ensure fairness to defendants and to protect federalism." *Johnson v. TheHuffingtonPost.com, Inc.*, ___ F.4th ___, No. 21-20022, 2021 WL 6070559, at *4 (5th Cir. Dec. 23, 2021) (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)).

Consistent with these values,

> a defendant must have "fair warning" that his activities may subject him to another state's jurisdiction. That warning permits the defendant to "structure its primary conduct to lessen or avoid exposure to a given State's courts." The limits on specific jurisdiction also "ensure that States with little legitimate interest in a suit" cannot wrest that suit from "States more affected by the controversy."

*Id.* at *2 (quoting *Ford Motor*, 141 S. Ct. at 1025).

If the court rules on the defense without an evidentiary hearing, "the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (quoting *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018)). And the

Court will "accept the plaintiff's uncontroverted, nonconclusional factual allegations as true and resolve all controverted allegations in the plaintiff's favor." *Id.* (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (per curiam)).

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant and (2) the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). "As the Texas long-arm statute extends as far as constitutional due process allows, we only consider the second step of the inquiry." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

Two types of personal jurisdiction may be exercised over a nonresident defendant: specific jurisdiction and general jurisdiction. This case implicates only the first.

> In evaluating whether due process permits the exercise of specific jurisdiction, [courts in this circuit] consider
> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.
> If the plaintiff establishes the first two prongs, the burden shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable.

*Carmona*, 924 F.3d at 193 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006); footnote omitted).

"For there to be minimum contacts, a defendant must have 'purposefully availed himself of the benefits and protections of the forum state' 'such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007), then *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting, in turn, *World-Wide*, 444 U.S. at 297)). This "constitutional touchstone" "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 474, 475 (cleaned up).

"That is, the plaintiff cannot supply 'the only link between the defendant and the forum.'" *Carmona*, 924 F.3d at 924 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). "Rather, jurisdiction is proper only where the 'defendant *himself*' made deliberate contact with the forum." *Id.* (quoting *Walden*, 571 U.S. at 284 (quoting, in turn, *Burger King*, 471 U.S. at 475)).

Starting with Assaf, the Federal Rules of Civil Procedure require "that a party raise certain defenses by motion or in its first responsive pleading, including the lack of personal jurisdiction." *Tango Marine S.A. v. Elephant Grp., Ltd.*, 19 F.4th 808, 812-13 (5th Cir. 2021) (citing FED. R. CIV. P. 12(b)(2), 12(h)). Through his first response to the FAC, the answer that he filed on August 4, 2021, Assaf asserted several defenses, but none were that this Court lacks jurisdiction over him. *See* Dkt. No. 18 at 2-5. So the Court cannot now consider Rule 12(b)(2) as a basis to dismiss the claims against Assaf.

As to Van Sciver, the Court should take up his lack-of-personal-jurisdiction argument first, because "[a] court without personal jurisdiction is powerless to take further action." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) (per curiam) (citing *Read v. Ulmer*, 308 F.2d 915, 917 (5th Cir. 1962) ("It would seem elementary that if the court has no jurisdiction over a defendant, the defendant has an unqualified right to have an order entered granting its motion to dismiss."); citation omitted).

Under Rule 12(b)(2), Van Sciver argues that, because he has no contacts with Texas, his connection to this suit, through a website he characterizes as passive, is not sufficient to show that he is subject to this Court's jurisdiction. *See* Dkt. No. 19 at 12-13. Adopting language from *Revell v. Lidov*, 317 F.3d 467, 476 (5th Cir. 2002), Plaintiffs, in sum, counter that, because Van Sciver "picked a fight in Texas," "that fight should be settled in Texas." Dkt. No. 28 at 7-15.

As Judge Kinkeade recently observed,

> [t]he seminal authority on specific jurisdiction in a libel suit is the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, an editor and a writer for the National Enquirer, both residents of Florida, were sued in California for libel arising out of an article published in the Enquirer about the plaintiff. *See id.* at 784-85. The Supreme Court upheld the exercise of personal jurisdiction over the two defendants because they had "expressly aimed" their conduct towards California. *Id.* at 789. The allegedly libelous story concerned the California activities of a California resident, impugning the professionalism of an actress whose television career was centered in California. *Id.* The article was drawn from California sources, with the "brunt of the harm," including both the California resident's emotional distress and the injury to her professional reputation, felt in California. *Id.* In sum, California was the focal point both of the story and the harm suffered. *See id.* at 788–89.
> 
> The Fifth Circuit Court of Appeals' primary case interpreting

> *Calder* is *Revell*…. In *Revell*, the Fifth Circuit affirmed a dismissal for lack of personal jurisdiction in a defamation case where a Texas resident sued nonresidents of Texas for allegedly defamatory statements posted on an internet bulletin board of a New York university. *Id.* 468-69. The Fifth Circuit explained that for *Calder* to apply, the brunt of the harm from a defendant's alleged defamation had to be felt in the forum state and the forum had to be the geographic focus, or focal point, of the publication. *See id.* at 474 n.48. Applying that test, the Fifth Circuit held that specific jurisdiction did not exist over a defendant because the allegedly defamatory statements "contain[ed] no reference to Texas," did not "refer to the Texas activities" of the plaintiff, were "not directed at Texas readers," and did not find their "largest audience in Texas." *Id.* at 473. The Fifth Circuit also explained that "[k]nowledge of the particular forum where a potential plaintiff will bear the brunt of the harm forms an essential part of the *Calder* test." *Id.* at 475. Even though a defendant must know that the harm of the defamation will be disruptive wherever the plaintiff resides, that is the case with nearly any defamation and a *more direct aim* is required. *Id.* at 476 (emphasis added). Residing in a forum and suffering harm there does not alone support specific jurisdiction under *Calder*. *See id.* at 473.

*Soignet v. Ross*, No. 3:20-cv-2418-K, 2020 WL 73888603, at *5 (N.D. Tex. Dec. 16, 2020).

Through *Revell*, the Fifth Circuit further "explained how to apply" the "principles" underlying personal jurisdiction – fairness and federalism – "to cases in which a defendant's website is the claimed basis for specific jurisdiction vis-à-vis an intentional tort." *Johnson*, 2021 WL 6070559, at *2 (citing *Revell*, 317 F.3d at 470 (citing, in turn, *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997))). A court must

> first look to the website's interactivity. If the site is passive – it just posts information that people can see – jurisdiction is unavailable, full stop. But if the site interacts with its visitors, sending and receiving information from them, [a court] must then apply our usual tests to determine whether the virtual contacts that give rise to the plaintiff's suit arise from the defendant's purposeful targeting of the forum state.

*Id.* (citing *Revell*, 317 F.3d at 470, 472-76).

But the Fifth Circuit has not specified whether the *Zippo* framework strictly applies where, like here, a defendant does not own the website that is the claimed basis for personal jurisdiction through an intentional tort. *See, e.g., So. U.S. Trade Ass'n v. Unidentified Parties*, No. Civ. A. 10-1669, 2011 WL 2457859, at *9 (E.D. La. June 16, 2011) (*SUSTA*) ("[I]n *Revell*, the Fifth Circuit suggested that the *Zippo* framework maybe relevant in ascertaining whether there are minimum contacts in an Internet defamation case. But, as in *Zippo*, one of the defendants in that case was a website operator. Thus, in evaluating the nature of the website to determine whether there were sufficient contacts with the forum state, the court, in line with the court in *Zippo* itself, appeared to have in mind the question of personal jurisdiction over the website operator." (citations omitted)).

Even so, the subject website's interactivity – though maybe not dispositive where that website is passive – may still be a factor. *See Hawbecker v. Hall*, 88 F. Supp. 3d 723, 729 (W.D. Tex. 2015) ("Unlike *Revell*, the alleged Facebook page and messages make the website and contacts with Texas interactive in nature."); *SUSTA*, 2011 WL 2457859, at *10 ("The Fifth Circuit's analysis in *Revell* [ ] indicates that, at best, the interactivity of the website is only a single, non-dispositive factor in resolving the question of personal jurisdiction, one that does not outweigh the factors that are crucial under *Calder*. At worst, it demonstrates that whether a website is passive or interactive is simply not a relevant consideration.")[1]; *cf. Johnson* at *10

---

[1] *But see Shippitsa Ltd. v. Slack*, No. 3:18-cv-1036-D, 2019 WL 2372687, at *6 n.3 (N.D. Tex. June 5, 2019) ("'[C]ourts have applied the *Zippo* test to social media websites and held that personal jurisdiction is not established by merely posting

("At bottom, the dissent urges that we have power over HuffPost because it erected a website where Texans can visit and click ads. Accepting that position would give us unlimited jurisdiction over virtual defendants – and not just our cooking-blog granny. A rising YouTube star enables advertising on his channel, then libels someone in a video he posts there. If the dissent is right, all fifty states may hale him into court to answer for it. But our law is clear that more is needed to protect due process. How much more is a question for another day.").

And, even if posting content to YouTube is sufficiently interactive, what is dispositive for personal jurisdiction in this context is whether a defendant aims the allegedly defamatory content at the forum state, not just that a defendant may know that a plaintiff resides in that state. For example, in *Hawbecker*, on which Plaintiffs rely, the court first laid out the allegations demonstrating that the defendant both knew that the plaintiff resided in Texas and that the defendant targeted the plaintiff in Texas:

> Hawbecker provided alleged Facebook posts and emails between Hall and Texas residents as exhibits to the Complaint. A Facebook post by Hall states that Hawbecker "lives and works in San Antonio Texas so please pass the word on to any one [sic] that you may know there," apparently in an effort to publicize her allegations to Texas residents. Hawbecker also provided a record of a Facebook message exchange

---

content on websites such as Facebook,' because Facebook postings are not sufficiently commercial or interactive." (quoting *Binion v. O'Neal*, 95 F. Supp. 3d 1055, 1060 (E.D. Mich. 2015))); *Int'l Unions, Sec. Police & Fire Prof'ls of Am. v. Maritas*, No. 19-10743, 2019 WL 3503073, at *5 (E.D. Mich. Aug. 1, 2019) ("Even though numerous defamatory statements about SPFPA have been posted on multiple websites, YouTube channels, and social media accounts, this alone is not enough to create personal jurisdiction. The nature of the websites and the YouTube channels is simply 'middle ground' or 'passive' under the *Zippo* test and therefore insufficient to establish personal jurisdiction.").

> between Hall and a Nebraska resident in which Hall states her allegation and demonstrates knowledge that Hawbecker resides in Texas. Hall also allegedly personally contacted Hawbecker's friends, relatives, students, and employer in Texas via Facebook.

*Hawbecker*, 88 F. Supp. 3d at 729. The court then concluded that

> Hall apparently knew Hawbecker lives in Texas, and the focal point or effects of her allegations were designed to be felt in Texas by Hawbecker. Taking Hawbecker's allegations as true for the purpose of answering this jurisdictional question, Hall expressly aimed online contacts to Texas residents and intended the focal point and brunt of her posts and interactions to be felt by Hawbecker in Texas. Therefore, specific jurisdiction over Hall is proper because she had sufficient minimum contacts with Texas.

*Id.* (citations omitted).

Similarly, in *SUSTA*, on which Plaintiffs also rely, the alleged conduct was aimed at Louisiana:

> the record, when it is viewed in the light most favorable to Plaintiffs, demonstrates the following. First, in the course of unsuccessfully obtaining assistance from SUSTA, Defendant came to know that SUSTA and its employees reside and work in Louisiana. Second, because of his dissatisfaction with that experience, Defendant decided to draw upon that very experience and write and publish the allegedly defamatory statements. And third, these statements assert a variety of misconduct in Louisiana on the part of SUSTA and its employees. The record therefore belies the notion that Defendant's connection with Louisiana is "random, fortuitous, or attenuated." Instead, the record shows that Defendant intentionally engaged in conduct that was "calculated to cause injury to [Plaintiffs] in [Louisiana]."

*SUSTA*, 2011 WL 2457859, at *12 (citations omitted).

Here, Plaintiffs' response asserts multiple times that Van Sciver knew that Poulter resides in Texas. *See* Dkt. No. 28 at 7, 11, 13, 14. And they argue that this is enough under *Calder*. *See, e.g., id.* at 6-7 (Van Sciver "picked a fight in Texas by calling someone he knew to be a Texas resident a pedophile and child pornographer,

intending to cause him harm in Texas.").

But Plaintiffs fail to allege that Van Sciver knew that Poulter resides in Texas. *See generally* Dkt. No. 6. And it would be improper to consider allegations made for the first time in a response to a motion to dismiss, as "[a] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g.*, *Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

Even had Plaintiffs alleged that Van Sciver knew that Poulter resides in Texas, they fail to present allegations showing that Van Sciver's actions were both "expressly aimed" at Texas and "calculated to cause injury to" Poulter in Texas. *Calder*, 465 U.S. at 789, 790. As such, Van Sciver's only alleged connection to Texas – that he allegedly defamed a Texan on the internet – is just "random, fortuitous, [and] attenuated." *SUSTA*, 2011 WL 2457859, at *12 (quoting *Burger King*, 471 U.S. at 474).

Put another way, Plaintiffs have not alleged that Van Sciver deliberately acted to make contact with Texas. *See Burger King*, 471 U.S. at 475; *Walden*, 571 U.S. at 284; *Carmona*, 924 F.3d at 924. The Court should therefore grant Van Sciver's motion to dismiss to the extent that it should dismiss the claims against him without prejudice for lack of personal jurisdiction.

> II. **The Court should deny Assaf's request to dismiss the claims against him for failure to state a claim upon which relief may be granted.**

The undersigned turns to Assaf's request for dismissal under Rule 12(b)(6). In deciding such a motion, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555; *see also Sewell*, 974 F.3d at 582 ("Although this framework is one-sided, the issue 'is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims.' The other side will have its say later." (quoting *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *vacated on other grounds*, 113 F.3d 1412 (5th Cir. 1997))).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* And "[a] claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer

- 14 -

more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all factual allegations a plaintiff makes as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

And a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* Instead, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends supports entitlement to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities*, 920 F.2d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519

F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."))).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [his] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And, again, a plaintiff may not amend his allegations through a response to a motion to dismiss.

To maintain a valid claim of defamation under Texas law, a plaintiff must demonstrate that the defendant: (1) published a statement; (2) containing assertions of fact that are defamatory, injuring the plaintiff's reputation; (3) while acting with either actual malice – if plaintiff is considered a public official or public figure – or negligence – if plaintiff is a private individual – regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *see generally N.Y. Times v. Sullivan*, 376 U.S. 254, 279-80 (1964). A plaintiff may avoid dismissal of a

defamation claim by presenting clear and specific evidence as to each element. *See D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017). "Clear and specific evidence means that the plaintiff 'must provide enough detail to show the factual basis for its claim.'" *Id.* (quoting *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015)).

Defamation may occur through either libel or slander. *See Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018). An action for libel requires the publication of a defamatory statement about the plaintiff to a third party in written or other graphic form. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.001. While slander is defamation in oral form that is likewise published to a third party. *Tatum*, 554 S.W.3d at 623-24.

Libel or slander, the threshold question in a case alleging defamation is "whether the words used 'are reasonably capable of a defamatory meaning.'" *Id.* at 624 (citing *Musser v. Smith Prot. Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987)). A statement is (1) defamatory when it "tends to injure a living person's reputation and thereby expose theperson to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation," TEX. CIV. PRAC. & REM. CODE ANN. § 73.001, and (2) "defamatory per se when it is 'so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed,'" *Tatum*, 554 S.W.3d at 638 (citations omitted). And, unless a statement is verifiably false, it is not defamatory regardless of whether it is in oral or written form. *See id.* at 624.

Here, Assaf argues that the claims should be dismissed because Plaintiffs have

not established how any statement that he allegedly made (1) led to cancellation of Lamont's Kickstarter campaign; (3) similarly led to economic harm against Poulter; and (3) has prevented Poulter's attending conventions. *See* Dkt. No. 26. But none of these arguments show that the defamation claims alleged against Assaf are not plausible based on the facts alleged in the operative complaint. Indeed, Plaintiffs have pled enough facts on the *prima facie* elements of defamation to allege plausible claims against Assaf. *See* Dkt. No. 6, ¶¶ 14-23. The Court should therefore deny Assaf's request for dismissal under Rule 12(b)(6).

## Recommendation

The Court should grant Defendant Ethan Van Sciver's motion to dismiss [Dkt. No. 19] to the extent that the claims against him should be dismissed without prejudice for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). And the Court should deny the motion to dismiss filed by Defendant Ali "Dean" Assaf a/k/a "DA Talk" [Dkt. No. 26].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

- 20 -

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 18, 2022

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE