In the United States District Court
Northern District of Texas
Dallas Division

| | | |
|---|---|---|
| John T. Lamont and Preston Poulter | § | |
| Plaintiffs | § | |
| | § | |
| | § | |
| v. | § | No. 3:21-cv-1176-K-BN |
| | § | |
| Dean Assaf a/k/a DA Talk and | § | |
| Victoria Kundert a/k/a Vikkiverse | § | |
| Defendants | § | |

## Plaintiffs' Response to Defendant Victoria Kundert's Motion to Vacate Default (Dkt. No. 45)

# Table of Contents

Table of Contents ................................................................................2

Table of Authorities ............................................................................4

Plaintiffs' Response in Opposition ......................................................5

Context of the Motion .........................................................................5

A.    Factual Background.......................................................................5

B.    Procedural Posture .......................................................................7

    1.    Service on Assaf and Van Sciver.......................................7

    2.    Service on Kundert ...........................................................8

    3.    Plaintiffs' motion for default judgment and Kundert's
       motion to vacate default ............................................... 10

Arguments & Authorities ................................................................ 10

A.    Kundert was properly served. ................................................... 10

    1.    Proof of Service............................................................... 10

    2.    Method of Service under Rule 4(e)................................. 11

       a)    Service was proper under Rule 4(e)(1)............................. 11

       b)    Service was proper under Rule 4(e)(2)(A)......................... 12

    3.    Timing of Service under Rule 4(m) ............................... 12

    4.    Kundert was properly served by personal delivery in
       California........................................................................ 13

B.    Standard of Review under Rules 55(c) and 60(b)...................... 14

C.    Five of the six factors weigh against vacating the default. .................. 15

    1.    Kundert's default was willful...................................... 15

    2.    Kundert did not present a meritorious defense. ........................ 16

3.  Kundert did not act expeditiously to correct the default............. 16

4.  Setting aside the default would prejudice Lamont and
    Poulter. ........................................................................ 17

5.  Vacating the default is contrary to the public interest in the
    just, speedy, and inexpensive determination of legal
    disputes. ...................................................................... 17

6.  Paying the judgment would likely be a significant financial
    loss. ............................................................................ 18

D.  What next if the Court vacates the default? ......................................... 18

Conclusion .......................................................................................... 19

Certificate of Service ............................................................................ 21

# Table of Authorities

<u>Case Law</u>

*Bludworth Bond Shipyard Inc. v. M/V Caribbean Wind*, 841 F.2d 646 (5th Cir. 1988) ............................................................................ 18–19

*Dierschke v. O'Cheskey (In re Dierschke)*, 975 F.2d 181 (5th Cir. 1992) ......... 16

*In re Chinese-Manufactured Drywall Products*, 753 F.3d 521 (5th Cir. 2014) ....................................................................................... 13 16

*Jenkens & Gilchrist P.C. v. Groia & Co.*, 542 F.3d 114 (5th Cir. 2008) ... 14–16

*Lacy v. Sitel Corp.*, 227 F.3d 290 (5th Cir. 2000) ........................................... 16

*Stelly v. Duriso*, 982 F.3d 403 (5th Cir. 2020) ................................................ 12

*Wooten v. McDonald Transit Associates Inc.*, 788 F.3d 490 (5th Cir. 2015) ....................................................................................... 14–16

<u>Statutes and Rules</u>

Fed. R. Civ. P. 1 ............................................................................... 17

Fed. R. Civ. P. 4 ........................................................................*passim*

Fed. R. Civ. P. 55 .............................................................................. 13

Fed. R. Civ. P. 60 ......................................................................... 13–14

## Plaintiffs' Response in Opposition

The Court should deny Defendant Victoria Kundert's motion to vacate default because Kundert was properly served under Rule 4(e)(1) and (e)(2)(A). She willfully chose to default, failed to act expeditiously to correct it, and failed to present a meritorious defense to the claims against her—all to the prejudice of the Plaintiffs and the public interest in the just, speedy, and inexpensive determination of legal disputes. The Court should deny her motion to vacate the default and grant Plaintiffs' motion for default judgment.

## Context of the Motion

### A.    Factual Background

Preston Poulter is a well-known figure in the independent comics community. For the last few years, he has been engaged in a public dispute with Ethan Van Sciver for control of the ComicsGate mark. Dkt. No. 6 at 8. Poulter registered the mark first, but Van Sciver claims to have a common law right to it. Those issues are being litigated before the Trademark Trial and Appeal Board. But Van Sciver and his allies, including specifically Defendants Dean Assaf and Victoria Kundert, have taken the fight outside the realm of intellectual property law.

Assaf and Kundert host a show on YouTube called "ComicsGate Dumping Ground," or "CGDG." Dkt. No. 26 at 5 n.2. In March, April, and May 2021, Assaf and Kundert used their show to broadcast claims that Plaintiff John T. Lamont "is a pedophile" who "is making f_____ be pedophilic comics"

and "child porn." Dkt. No. 6 at 7. Assaf and Kundert called for Lamont to "be ostracized from society" and "shot." Dkt. No. 6 at 7. Assaf and Kundert also claimed that Poulter engaged in the same activities (i.e., being a pedophile and making pedophilic comics and child pornography). Dkt. No. 6 at 9.

On April 25, 2021, Assaf and Kundert had Van Sciver on their show as a guest. On the show, Van Sciver made the following statements about Poulter's use of the ComicsGate seal on a comic series developed by Lamont:

> But I mean, you know my side of things is that is that it's pretty demonstrable that COMICSGATE has been used in commerce by me and me alone, up until Preston [Poulter] decided he would try to spite trademark the term.
>
> . . .
>
> . . . So I just, I don't want Preston to make child pornography and put COMICSGATE on the label. You know what I mean?
>
> [Assaf:] Yea, that was a pretty fuckin' gross move.
>
> [Van Sciver:] Especially right now, you know, at this point one of his pals, Slick Jimmy, outed as an actual, you know, child pornographer, uh pedophile. You know it's like, this, now is not a good time for that bullshit.
>
> . . .
>
> In order to have a trademark you do have to protect it. So I will protect it in that way. I will not allow it to be put on child pornography by Preston Poulter.

Dkt. No. 19-1 at 4–6. Assaf and Kundert echoed and agreed with Van Sciver's

comments. Dkt. No. 6 at 9.

Lamont and Poulter are not pedophiles, nor are they child pornographers. Assaf, Kundert, and Van Sciver's statements were objectively and verifiably false. But, as a result of those false statements, Lamont and Poulter have suffered losses of sales and income and been forced to incur increased expenses for personal security and mental health treatment. Dkt. No. 6 at 13–18.

## B.   Procedural Posture

Lamont and Poulter sued Assaf, Van Sciver, and Kundert under various theories of defamation on May 23, 2021. Dkt. No. 1; *see also* Dkt. No. 6. They promptly began attempting service on all defendants.

### 1.   *Service on Assaf and Van Sciver*

Assaf was served first, by delivery to "Hussam Assaf (father), a person of suitable age and discretion who resides" at Assaf's residence. Dkt. No. 16. Assaf answered on August 4, 2021, and, two weeks later, moved to dismiss for lack of personal jurisdiction and failure to state a claim. Dkt. No. 18, 26. The Court denied Assaf's motion to dismiss on February 7, 2022. Dkt. No. 37.

Van Sciver was served next, by personal delivery on July 14, 2021. Dkt. No. 15. Van Sciver moved to dismiss the claims against him, and only him, for lack of personal jurisdiction and failure to state a claim. Dkt. No. 19. The Court granted the motion as to personal jurisdiction and dismissed without prejudice the claims against Van Sciver, and only the claims against Van Sciver, on

February 7, 2022. Dkt. No. 37.[1]

## 2.    *Service on Kundert*

Kundert evaded service. Lamont and Poulter attempted service on Kundert in New Mexico, where they believed her to be. *See* Dkt. No. 1 at 1; Dkt. No. 6 at 1. Those attempts failed, and the summons was returned unserved on July 31, 2021. Dkt. No. 17.

Kundert, however, knew she had been sued. On August 13, 2021, she posted on Twitter: "As some of you may know, [Van Sciver], [Assaf], and I are being sued by Preston Poulter for expressing an opinion." Appendix at 3 (Kundert tweet).

Lamont and Poulter then learned that Kundert might be in California. A process server was dispatched, and he made the following return:

> I, Richard Steiber, do hereby affirm that on the 14th day of October, 2021 at 7:20 pm, I:
>
> PERSONALLY served by delivering a true copy of the SUMMONS IN A CIVIL ACTION; COMPLAINT, with the date and hour of service endorsed thereon by me, to: VICTORIA KUNDER A/K/A VIKKIVERSE at the address of: 7701 WARNER AVENUE, APT# G122, HUNTINGTON BEACH, CA 92647, and informed said person of the contents therein, in compliance with state statutes.

Dkt. No. 32 (capitalization and spelling as in original).

---

[1] Lamont and Poulter have now sued Van Sciver in New Jersey state court.

About a month later, all counsel in the case received an anonymous email from the email address sourcrystals@protonmail.com, which claimed the following:

> I would like to inform all attorneys of record in this case that plaintiff, Preston Poulter, is aware that defendant Victoria C. Kundert no longer resides in California, yet has alleged that she was properly served there a month ago.
>
> On April 16th, 2020, plaintiff published a conversation he had with the defendant on his YouTube channel. He asks her if she was on the east coast to which she answers yes, and that she was, "kind of glad I got out of California," after growing up there. As I am not a lawyer, I do not know what ethical obligations you may in this matter but wished to bring it to your attention.

Appendix at 5 (email from sourcrystals@potonmail.com).

After receiving the email, the undersigned reviewed the return of service again. In the return, the process server swears that he "PERSONALLY served" Kundert in accordance with California law. Dkt. No. 32 (emphasis in original). Taking the anonymous email at face value, Sour Crystals' email did not claim Kundert was not personally served or that she had not been in California at the time of service, only that she no longer resided there.[2]

Lamont and Poulter requested entry of default on November 24, 2021, and the clerk entered default on November 29, 2021. Dkt. No. 33, 34.

---

[2] As discussed below, Kundert's motion likewise does not deny that she was actually served in California, only that she no longer resides there.

3.   *Plaintiffs' motion for default judgment and Kundert's motion to vacate default*

After the Court ruled on Van Sciver and Assaf's motions to dismiss, the Court ordered Plaintiffs to move for default judgment against Kundert by March 2, 2022. Dkt. No. 39. Plaintiffs did so. Dkt. No. 40.

Over a month later, on April 5, 2022, while the motion for default judgment was pending, Kundert filed a *pro se* motion, asking the Court to vacate the default and deny the motion for default judgment "because of the Court's lacks personal jurisdiction due to Defendant Kundert not being properly served under Federal Rule of Civil Procedure 4(e)(2) and 4(m)." Dkt. No. 45 at 6 (grammar as in original). Kundert's motion does not make any other legal or factual arguments.

Plaintiffs are opposed to Kundert's motion and urge the Court to deny the motion to vacate and grant the motion for default judgment.

## Arguments & Authorities

A.   **Kundert was properly served.**

1.   *Proof of Service*

The evidence that Kundert was properly served is the return of service filed with the Court on October 21, 2021. According to the return, the summons was personally delivered to Kundert on October 14, 2021, in California, "in compliance with state statutes." Dkt. No. 32. Service was therefore proper under both Rule 4(e)(1) and 4(e)(2)(A).

Kundert has not presented any evidence otherwise. Instead, she raises two objections to service: that the summons was not served on her within 90 days of the filing of the complaint and that she "does not reside at the address that was served." Dkt. No. 45 at 4–6. Neither passes muster.

**2.     *Method of Service under Rule 4(e)***

Kundert challenges the method of service, claiming that she was not "properly served under Federal Rule of Civil Procedure 4(e)(2)." Dkt. No. 45 at 5, 6. There are two problems with her argument.

a)     *Service was proper under Rule 4(e)(1).*

The first problem with Kundert's argument is that it fails to address the propriety of service under Rule 4(e)(1). Rule 4(e), including alternative subparagraphs (1) and (2), governs the service of process on individuals in the United States. Under subparagraph (1), individuals may be served in a manner "following state law for serving a summons in an action brought in courts of general jurisdiction in the state . . . where service is made." Fed. R. Civ. P. 4(e)(1). Here, service was made in California, and the return of service expressly states that service was made "in compliance with state statutes." Dkt. No. 32. Kundert has not argued or presented evidence challenging the propriety of service under California law. Because Rule 4(e)(1) and (2) are separated by "or," service under either subparagraph (1) or subparagraph (2) is sufficient. Consequently, regardless of whether service was proper under subparagraph (2), it was proper under subparagraph (1).

b)      *Service was proper under Rule 4(e)(2)(A).*

The second problem with Kundert's argument is that it fails to address the propriety of service under Rule 4(e)(2)(A). Subparagraph (2) contains three alternative sub-subparagraphs: (A) authorizes service by personal delivery, without any geographic restriction; (B) authorizes service by leaving the summons at the defendant's residence; and (C) authorizes service by leaving the summons with an authorized agent. The return of service expressly states that it was "PERSONALLY served" on Kundert in California. Dkt. No. 32 (emphasis in original). It does not state that it was left anywhere or with anyone other than Kundert herself. Her argument—that the "summons was served at an address in California, and not delivered to Ms. Kundert personally in North Carolina, nor was it left at her dwelling or with an authorized agent" (Dkt. No. 45 at 5)—only challenges service under Rule 4(e)(2)(B) and (C). It does not squarely challenge the service averred in the return, service by personal delivery under Rule 4(e)(2)(A).

### 3.      *Timing of Service under Rule 4(m)*

Kundert also challenges the timing of service on her, arguing that it was not timely under Rule 4(m). But Rule 4(m)'s time limit for service is neither jurisdictional nor self-executing. Delayed service does not affect the Court's jurisdiction. *Stelly v. Duriso*, 982 F.3d 403, 407 n.5 (5th Cir. 2020). Instead, a

defendant must move for dismissal under Rule 4(m),[3] though "the court must extend the time for service" if the plaintiff shows good cause. Fed. R. Civ. P. 4(m).

As set forth above, Plaintiffs diligently worked to serve the summons on Kundert, but had difficulty locating her. The Plaintiffs filed suit on May 23, 2021, promptly obtained summonses, and made their first, unsuccessful, attempt at service by July 31, 2022. *See* Dkt. No. 1, 6, 17. They spent the next two months attempting to locate Kundert. Although she knew they were looking for her, and commenting on it publicly, she made no effort to contact Plaintiffs' counsel, either before or after the return was filed showing service by personal delivery in California. Plaintiffs respectfully submit that Plaintiffs' diligence and Kundert's evasiveness would satisfy the good-cause showing required by Rule 4(m) if Kundert had filed a Rule 4(m) motion.

## 4.   *Kundert was properly served by personal delivery in California.*

In sum, Kundert was properly served under Rule 4(e)(1) and (2)(A). She has not presented any argument or evidence otherwise. The Court should therefore find that she was properly served. She failed to answer, and the clerk entered a default. The question before the Court is, succinctly, whether it should vacate the default or enter a default judgment.

---

[3] A court may dismiss under Rule 4(m) on its own motion, after giving notice to the plaintiff notice. That did not happen here.

**B.      Standard of Review under Rules 55(c) and 60(b)**

Rule 55 provides that a court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c).[4] This is "essentially the same standard" used under Rule 60(b) for setting aside default judgments, though "the standard for setting aside a default decree is less rigorous than setting aside a judgment for excusable neglect." *In re Chinese-Manufactured Drywall Products*, 753 F.3d 521, 544 n.20 (5th Cir. 2014) (citations omitted). Courts consider some or all of several factors in deciding whether to vacate a default:

- whether the default was willful,

- whether setting it aside would prejudice the adversary,

- whether a meritorious defense is presented,

- whether the public interest is implicated,

- whether there was significant financial loss to the defendant, and

- whether the defendant acted expeditiously to correct the default.

*In re Chinese-Manufactured Drywall Products*, 753 F.3d 521, 544–45 (5th Cir. 2014) (citations omitted).

Courts need not consider all the factors in all cases. The Fifth Circuit has expressly held that the first and third factors "carry special significance" under Rule 60(b). *Jenkens & Gilchrist P.C. v. Groia & Co.*, 542 F.3d 114, 119 (5th Cir. 2008). A "finding of willful default ends the inquiry, for when the court finds an intentional failure of responsive pleadings there need be no other finding."

---

[4] The rule also provides that the Court may set aside a final default judgment under Rule 60(b), but there has been no final default judgment entered in this case.

*Wooten v. McDonald Transit Associates Inc.*, 788 F.3d 490, 500 (5th Cir. 2015). Importantly, the "defendant has the burden of showing by a preponderance of the evidence that its neglect was excusable, rather than willful." *Wooten*, 788 F.3d at 500–01. Likewise, if the defendant "fails to present a meritorious defense sufficient to support a finding on the merits for the defaulting party," the Court "has the discretion to refuse to set aside a default judgment under 60(b)(1)." *Jenkens & Gilchrist*, 542 F.3d at 120.

**C.    Five of the six factors weigh against vacating the default.**

*1.    Kundert's default was willful.*

The first and arguably most important factor in the good-cause analysis is whether the default was willful. Although Kundert bears the burden of proof on this factor, *Wooten*, 788 F.3d at 500–01, she presented no evidence of excusable neglect. On the contrary, the evidence in the record shows the opposite.

Kundert has known she had been sued since at least August 13, 2022. Appendix at 3 (Kundert tweet). She knew that a return of service was filed on October 21, 2021. Dkt. No. 32; Appendix at 5 (email from sourcrystals@protonmail.net). She knew that default had been entered on November 29, 2021. Dkt. No. 34. She knew that a motion for default judgment was filed on March 2, 2022. Dkt. No. 40. And yet she waited until April 5, 2022—four months after the default was entered and seven months after she knew she had been sued—to challenge the entry of default. She never once

contacted Plaintiffs' counsel about any alleged defects in service.

In short, this is not a simple misunderstanding; this is Kundert "playing games with the court." *See Wooten*, 788 F.3d at 501 (quotations omitted).[5] The evidence shows and the Court should find that Kundert's default was willful. This factor weighs heavily against vacating the default.

### 2.      *Kundert did not present a meritorious defense.*

Even if her default were not willful, Kundert has not presented a meritorious defense to the claims against her. In fact, her motion does not address the merits of the claims against her at all. That by itself justifies the Court in refusing to set aside the default. *Jenkens & Gilchrist*, 542 F.3d at 120. This factor weighs heavily against vacating the default.

### 3.      *Kundert did not act expeditiously to correct the default.*

Kundert waited four months after the entry of default and seven months after she knew she had been sued to make any kind of appearance in this Court. Kundert has been watching this litigation. She knew that she had been served and that a default had been entered, but she sat watching for four more months before doing anything about it. This factor weighs against vacating the default.

---

[5] Though "playing games" is not expressly a factor, the *Wooten* cited several opinions affirming the entry of default where the defendant was "playing games with the court." *See Wooten*, 788 F.3d at 501 (citing *In re Chinese-Manufactured Drywall Products*, 742 F.3d 576, 595 (5th Cir. 2014); *Dierschke v. O'Cheskey (In re Dierschke)*, 975 F.2d 181, 183–84 (5th Cir. 1992); *Lacy v. Sitel Corp.*, 227 F.3d 290, 292–93 (5th Cir. 2000)).

**4.      Setting aside the default would prejudice Lamont and Poulter.**

Lamont and Poulter have incurred substantial expense trying to find Kundert, hiring two separate process servers in two separate states (and a third, if the motion is granted), requesting the entry of default, filing a motion for default judgment, and responding to this motion. They will also have to redo work already done in this case, such as the Rule 26(f) conference and report previously done with her codefendant Assaf. This factor weighs against vacating the default.

**5.      Vacating the default is contrary to the public interest in the just, speedy, and inexpensive determination of legal disputes.**

Rule 1 of the Federal Rules of Civil Procedure plainly sets forth the policy of those rules:

> These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.

Fed. R. Civ. P. 1. Kundert has played games with the Court and knowingly refused to deal with the default in a timely manner. Even if she were right on every issue, she has forced the parties and the Court to needlessly expend time and money on proceedings dealing solely with her default. This factor weighs against vacating the default.

**6.    *Paying the judgment would likely be a significant financial loss.***

The remaining factor is whether there was significant financial loss to the defendant.  It is true that Plaintiffs are seeking a default judgment against her in the amounts of $354,960 (Lamont) and $356,750 (Poulter). *See* Dkt. No. 40 at 2. Although Kundert did not present any evidence on the issue, Plaintiffs do not dispute that paying a judgment in the amount of $711,710 would likely be a significant financial loss to Kundert. But the judgment has not yet been entered, Plaintiffs have not yet collected on it, Kundert has not presented any evidence of it, and as discussed more fully above, Kundert voluntarily placed herself in this position. This factor is therefore neutral.

**D.    What next if the Court vacates the default?**

Kundert's motion asked the Court to vacate the default and deny the motion for default judgment as moot. Dkt. No. 45 at 4. But that would not be a final order. She does not address the consequences of the default being vacated, i.e., what comes next in this case. In candor, neither the rules nor the case law is particularly clear. For the benefit of the Court, Plaintiffs submit one case that may provide some guidance.

In *Bludworth Bond Shipyard Inc. v. M/V Caribbean Wind*, 841 F.2d 646 (5th Cir. 1988), the plaintiff attempted to serve the defendant through the Texas long-arm statute but failed to strictly comply with it. On appeal, the Fifth Circuit held that anything less than strict compliance renders service invalid under that statute. *Bludworth*, 841 F.2d at 650. The Fifth Circuit

therefore reversed the trial court's entry of default judgment and remanded for further proceedings:

> [W]e express no opinion on what procedure the district court should employ on remand after it sets aside the judgment. At least one option is to quash service of process pursuant to Fed. R. Civ. P. 12(b)(5) and address [the defendant's] amenability to service under the long-arm statute when and if he is properly served thereunder.

*Bludworth*, 841 F.2d at 651.

For the avoidance of doubt, Plaintiffs contend that service was proper in all respects and that default judgment should be entered. But if the Court is inclined otherwise, Plaintiffs respectfully suggest one of two courses of action:

> Option 1: If the Court finds that Kundert was properly served but the default should nevertheless be vacated, the Court should enter a scheduling order for her to file responsive pleadings.
>
> Option 2: If the Court finds that Kundert was not properly served, the Court should enter a scheduling order for Plaintiffs to perfect service on her now that she has been located.

Again, Plaintiffs contend that service was proper and default judgment should be entered. This section is offered only to assist the Court in managing this case and because both defendants are proceeding pro se.

## Conclusion

Kundert was properly served under Rule 4(e)(1) and (e)(2)(A). She willfully chose to default, failed to act expeditiously to correct it, and failed to present a meritorious defense to the claims against her—all to the prejudice of

the Plaintiffs and the public interest in the just, speedy, and inexpensive determination of legal disputes. The Court should deny her motion to vacate the default and grant Plaintiffs' motion for default judgment. Plaintiffs ask for this and such other and further relief to which they may be entitled.

Respectfully submitted,

Jeremy M. Masten
Texas Bar No. 24083454
masten@hcgllp.com
HAWASH CICACK & GASTON LLP
3401 Allen Parkway, Suite 200
Houston, Texas 77019
(254) 307-9185

M. Sameer Ahmed
THE AHMED FIRM PLLC
Texas Bar No. 24001631
sameer@theahmedfirm.com
13601 Preston Road, Suite E770
Dallas, Texas 75240
(972) 934-5858 - tel
(972) 934-5859 - fax

Counsel for Plaintiffs

**Certificate of Service**

I hereby certify that a true and correct copy of the foregoing was served on all parties through the Court's CM/ECF system, including those listed below, on May 12, 2022.

Dean Assaf                              Victoria Kundert
aliassaf959@gmail.com                   vckundert@gmail.com
Pro se defendant                        Pro se defendant


_____
Jeremy M. Masten