**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| JOHN T. LAMONT and | § | |
| PRESTON POULTER, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 3:21-CV-1176-K-BN |
| | § | |
| v. | § | |
| | § | |
| DEAN ASSAF A/K/A DA TALK | § | |
| VICTORIA KUNDERT A/K/A | § | |
| VIKKIVERSE, AND ETHAN VAN | § | |
| SCIVER. | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT ALI ASSAF'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)
AND/OR RULE 16**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................. ii

DEFENDANT'S MOTION TO DISMISS COMPLAINT........................................1

    A.    Introduction                                           1

    B.    Procedural Background                               2

    C.    Standards of Review                                 7

    D.    Plaintiffs' Meager Disclosures Prove Their Amount in Controversy Allegations Not Remotely Plausible    8

    E.    Plaintiffs Meager Disclosures Have Fatally Damaged Their Case    9

    F.    Investigation Of Plaintiffs' Public Records Show Plaintiffs Have No Damages    9

MEMORANDUM OF LAW......................................................................................12

I.        INTRODUCTION...................................................................................12

II.       FACTUAL BACKGROUND...................................................................... 13

III.     ISSUES TO BE RESOLVED.....................................................................13

IV.     LEGAL ARGUMENT............................................................................... 13

    A.    Lack of Subject Matter Jurisdiction              13

    B.    No Triable Issues Remain                    15

V.        CONCLUSION........................................................................................ 17

**TABLE OF AUTHORITIES**

**Cases**                                                                                      **Page**

*Bank of N.Y. Mellon v. Riley,*
   No. 21-40383, 2022 WL 1773364 (5th Cir. 2022, June 1, 2022)             14

*Carr v. Brasher,*
   776 S.W.2d 567 (Tex.1989)              15

*Chapin v. Knight-Ridder, Inc.,*
   993 F.2d 1087 (4th Cir. 1993)             16

*Deng v. Fed. Bureau of Investigation Agencies,*
   No. 2:20-CV-154-Z-BR, 2021 WL 742297 (N.D. Tex. Jan. 26, 2021)        7

*Dodds v. ABC, Inc.,*
   145 F.3d 1053 (9th Cir. 1998)             16

*Dowling v. J. C. Penney Co.,*
   300 F. Supp. 307 (W.D. Pa. 1969)            14

*Enviroglas Products, Inc. V. Enviroglas Products, LLC,*
   705 F. Supp.2d 560 (N.D. Tex. 2010)          7

*FW/PBS, Inc. v. City of Dallas,*
   493 U.S. 215 (1990)              13

*Hawbecker v. Hall,*
   88 F.Supp.3d 723 (W.D. Tex. 2015)          15

*Jones v. Knox Expl. Corp.,* 2 F.3d 181 (6th Cir. 1993).        8

*Kotlikoff v. The Cmty. News,*
   89 N.J. 62 (1982)              16

*Lopez v. Don Herring Ltd.,*
   327 F.R.D. 567 (2018)            8, 9

*Matthiesen v. Northwestern Mutual Ins. Co.,*
   286 F.2d 775 (5th Cir. 1961)            14

*Newman v. Granger,*
   141 F.Supp. 37 (W.D.Pa.1956)             8

*Olivarez v. GEO Group, Inc.,*
   844 F.3d 200 (5th Cir. 2016)            8

*Pifcho v. Brewer*,
  77 F.R.D. 356 (M.D. Pa. 1977) ........................................................ 8

*Randall's Food Mkts., Inc. v. Johnson*,
  891 S.W.2d 640 (Tex. 1995) ........................................................ 15

*Ruhrgas AG v. Marathon Oil Co.*,
  526 U.S. 574 (1999) ........................................................ 13

*St. Paul Mercury Indem. v. Red Cab Co.*,
  303 U.S. 283 (1938) ........................................................ 7

*Stockman v. Fed. Election Comm'n*,
  138 F.3d 144 (5th Cir. 1998) ........................................................ 13

*Williamson v. Tucker*,
  645 F.2d 404 (5th Cir. 1981) ........................................................ 7

**Rules**

FED. R. CIV. P. 12(h)(3) ........................................................ 7, 13

FED. R. CIV. P. 11 ........................................................ 3, 6, 12

FED. R. CIV. P. 12(b)(1) ........................................................ 1, 2, 12

FED. R. CIV. P. 16 ........................................................ 1, 8

FED. R. CIV. P. 26(a), (e) ........................................................ passim

FED. R. CIV. P. 37 ........................................................ 8, 9, 15

FED. R. EVID. 106 ........................................................ 16

**Treatises**

6A Wright & Miller, Fed. Prac. & Proc. Civ.
  § 1529 (3d ed. 2023) ........................................................ 8

## DEFENDANT' MOTION TO DISMISS COMPLAINT
## PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)1); 16

Defendant, Ali Assaf hereby moves this Honorable Court to enter the proposed Order attached dismissing Plaintiffs' First Amended Complaint [Dkt. No. 6] with prejudice for lack of subject matter jurisdiction and/or because no triable issues remain following the pretrial conference; and, in support thereof, avers the following:

### A.      Introduction

*Jurisdiction Amount*. Plaintiffs' recent document disclosures utterly fail to support Plaintiffs' damages claims. Accordingly, Defendant Ali Assaf moves to dismiss the complaint of Plaintiffs John T. Lamont and Preston Poulter pursuant to FED. R. CIV. P. 12(b)(1) for lack of adequate amount in controversy to invoke this Court's diversity based subject matter jurisdiction.

The Court had previously dismissed the original complaint on this ground, which led Plaintiffs to amend the complaint. It appears, to a legal certainty, that Plaintiffs' subsequent damages claims were made in bad faith. It is now clear that actual damages have always amounted to far less than the jurisdictional threshold of $75,000.

*No triable issue remains.* Defendant also moves to dismiss the complaint, as part of the FED. R. CIV. P. 16 Pretrial Conference, because no triable facts remain. Defendant has received from Plaintiff insufficient evidence supporting Plaintiffs' causes of action. During the discovery period Defendant had received no documents, no names of lay witnesses, or expert witnesses, no testimony. (Perhaps this is because Plaintiffs never had any evidence of Defendant's defamation to begin with.)

Only now have Plaintiffs begun disclosing their evidence to Defendant and it remains inadequate. Moreover, in view of the late disclosure, this meager evidence is inadmissible. Plaintiffs are attempting to "sandbag" Defendant with these late disclosures, violating their duty under FED. R. CIV. P. 26(a) or (e). The appropriate sanction is to exclude the evidence from use at trial.

### B.   Procedural Background

1.   Briefly, this controversy arose out of a series of YouTube videos published from February to April of  2021. In a few instances within these videos Defendant Ali Assaf criticized Plaintiff Lamont's comic, "The Demonatrix." Assaf, while clearly basing his opinion on the comic book's illustrations of underaged girls in pornographic situations, referred to the author of such  as a "pedophile."

*The Original Complaint is Dismissed*

2.   Plaintiffs John T Lamont and Preston Poulter filed their Complaint on May 23, 2021.

3.   On May 25, 2021, this Court ordered the complaint dismissed as lacking subject-matter jurisdiction [Dkt. No. 5]. The Court held that the conclusory allegation that the amount in controversy exceeds $75,000, without more, was an insufficient jurisdictional allegation. The court granted Plaintiffs leave to amend the complaint.

4.   On June 4, 2021, Plaintiffs filed their First Amended Complaint [Dkt. No. 6] containing more explicit claims to damages, which the Court accepted.

*Plaintiffs Initial Legal Counsel Withdraw*
*Leaving Replacement Counsel Responsible*

5.   On June 17, 2021, Mr. Eric D. Fein, the author of the First Amended Complaint requested, and was granted, permission to withdraw [Dkt. Nos. 7, 9] due to "differences with

respect to how to proceed with the case." This left Plaintiffs temporarily without legal representation.

6.        On June 25, 2021, Jeremy Masten and Sameer Ahmed appeared on behalf of the Plaintiffs. It is unclear whether either Mr. Masten or Mr. Ahmed reviewed the First Amended Complaint drafted by Mr. Fein, in particular the excessive damages allegations. They are, nevertheless, saddled with it via FED. R. CIV. P. 11, in view of their "later advocating" the complaint, to insure it is "not being presented for any improper purpose." Note: Defendant Assaf has given Plaintiffs' counsel the required Rule 11 notice of the filing of this motion on June 20, 2023. Exhibit 1.

7.        The First Amended Complaint added specific damages allegations in three general categories: (1) economic losses (2) collateral economic loss and (3) mental health costs.

*Alleged Economic Damages*

8.        The loss of sales alleged for Plaintiff Poulter's "most recent campaign on Kickstarter" was a "20 % drop" in average funding (no specific amount was claimed); $25,000 in lost revenue this year [2021] and at least $75,000.00 over the next three (3) years [2022-24]. Dkt. No. 6 at ¶ 7a(ii).

9.        The loss of sales for Plaintiff Lamont are "$25,000.00 in annual sales and at least $75,000.00 for [the] next 3 years [2022-24]" *Id*. at ¶ 7(b)(ii).

10.       The loss of sales for Plaintiff Lamont for "not attending conventions and meetings," due to "fears that he will be harmed and fears for the safety of his family members," are "approximately $5,000.00 to $10,000.00 per year." *Id*. at ¶ 7(b)(v).

*Alleged Collateral Economic Loss*

11.     Poulter alleges "additional security" costs (he claims to have "fear for his safety" due to the defamation) of "at least $14,000 through the year 2021.

12.     Both Poulter and Lamont allege damages to "reputation." Poulter claims "Damages to his reputation . . . exceed $100,000.00. *Id*. at ¶ 7(a)(vi). Lamont alleges they "exceed $150,000." Id. at ¶ 7(b)(viii).

*Alleged psychological evaluation and treatment*

13.     Incredibly, *both* plaintiffs claim to be afflicted with severe psychological damage: Mr. Poulter allegedly suffered $1500 for" significant stress, lack of sleep, vexation, anxiety and worry "which needed "psychological evaluation and treatment." He claims to also need $41,250 for "the next 36 months" of therapy and to have suffered "in excess of $100,000.00 in mental anguish damages." *Id*. at ¶ 7(a)(iv)

14.     Mr. Lamont, allegedly suffering "significant stress, anxiety, sleeplessness, headaches, stomach pains and a racing heart" and "many sleepless nights . . . has resorted to involuntary stress eating . . . gained a significant amount of weight, his cholesterol is high, and his medical doctor has expressed concern for his overall health" and needs $24,960 for three years of therapy and "in excess of $150,000" for "mental anguish." *Id*. at ¶ 7(b)(vii).

15.     Lamont also claims he has been "forced to keep to himself for fear that others not in the comic community will learn of the defamatory comments." Id. at ¶ 7(b)(iv) (He does not explain how "keep[ing] to himself" accomplishes this. Is he fond of wearing an "I've been called a pedophile" t-shirt to social events? Is he an incurable gossip?)

*Plaintiffs' Rule 26 Disclosures*

16.     On April 4, 2022 the Court issued its Scheduling Order directing the parties to

"exchange initial disclosures in compliance with Federal Rule of Civil Procedure 26(a)(1) by

April 18, 2022." Dkt. No. 44 at pp. 5-6.

17.     On April 18, 2022, Plaintiffs jointly submitted their Rule 26(a)(1) disclosure to

Defendant. Exhibit 2

18.     Plaintiffs' "copy, or description of documents" disclosure [26(a)(1)(ii)] was generic

and cursory:

- Eight YouTube videos by date and channel. These videos are located on five
  different channels with five different owners
- "Defendants' Twitter and other social media feeds" and
- "Plaintiffs' various comic books and campaigns"

19.     For their Rule 26(a)(1)(iii) "computation of each category of damages" Plaintiffs

listed:

   For Preston Poulter:

   • $100,000 in lost sales through Kickstarter;
   • $14,000 in increased security costs in 2021;
   • $1,500 in past therapy costs;
   • $41,250 in future therapy costs;
   • $100,000 in mental anguish damages; and
   • $100,000 in general damages for harm to his reputation.

   For John T. Lamont:

   • $30,000 in lost sales due to not attending conventions and meetings;
   • $24,960 in therapy costs;
   • $150,000 in mental anguish damages; and
   • $150,000 in general damages for harm to his reputation, and

   exemplary damages in an amount to be determined by the jury.

*No Damages Evidence*

20.     To this date Plaintiffs have not disclosed to Defendant a single document on which

these computations of damages were based, as required by FED. R. CIV. P. 26(a)(1)(A)(iii).

21.     With respect to Plaintiff's claimed future damages, Dkt. No. 6 at ¶ 7, to date Defendant

Assaf has received no disclosure of Expert Testimony, as required by FED. R. CIV. P.

26(a)(2), which would be required to prove future damages.

*Time has Run Out*

22.     The Court's Scheduling Order instructed the parties that "All discovery must be

initiated in time to be completed by April 7, 2023" Dkt. No. 44 at 6.

*Plaintiffs Supplemental Rule 26 Disclosures*

23.     On June 20, 2023, Defendant Assaf served Plaintiffs' Counsel Mr. Masten a Rule 11

warning letter, detailing the fatal flaws in this case and warning him of the filing of this

motion if he did not withdraw the First Amended Complaint in 21 days.

24.     On July 10, 2023—the Rule 11 deadline—Mr. Masten served Defendant Assaf

"Plaintiffs' Rule 26 Supplemental Initial Disclosures." Exhibit 3

25.     This supplemental disclosure was not only late but, remarkably, is still grossly

deficient.

26.     It contained 14 documents.

> (1)-(2) Two Cease and Desist letters, dated April 27, 2021; May 10, 2021
> (3)-(4) Two CVs: a Forensic and Clinical Psychologist and a Security Expert
> (5) A witness deposition transcript from another case, *Van Sciver v. Poulter,* No.
>     BUR-L-689-22  (Sup. Ct. N.J., filed April 18, 2022) of Ms. Kundert, a former
>     party in this case.
> (6) An Agreement (unsigned) with "NetReputation.com" to attempt to de-index search
>     engine results to three websites: a tweet; a page from a public "message board,"
>     and a link to this case on "www.courtlistener.com"

---

**DEFENDANT ALI ASSAF'S**
**MOTION TO DISMISS**                    **PAGE 6**

(7)-(14) Eight clips from YouTube videos.

27.     The supplement contained no damages evidence.

28.     On July 13, 2023, Defendant Assaf contacted Plaintiffs' counsel, pointing out these

deficiencies and giving counsel a final deadline to withdraw the First Amended Complaint.

This communication was ignored. Exhibit 4.

    C.      **Standards of Review**

*Subject Matter Jurisdiction*

29.     FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks

subject-matter jurisdiction, the court must dismiss the action.")

30.     The Court has the unique power to make factual findings which are decisive of subject

matter jurisdiction. *Enviroglas Products, Inc. V. Enviroglas Products, LLC*, 705 F. Supp.2d

560, 565 (N.D. Tex. 2010)

 (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)

).

31.     To defeat diversity jurisdiction, "[i]t must appear to a legal certainty that the claim is

really for less than the jurisdictional amount." *St. Paul Mercury Indem*. v. *Red Cab Co.,* 303

U.S. 283, 289 (1938)

.

32.     "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good

faith." *Id*. at 288.

33.     The "good faith" inquiry focuses on whether the claim is really for less than the

jurisdictional amount. . . . Plaintiff's supplemental materials indicate an amount in controversy

---

in excess of the jurisdictional amount; however, . . . Plaintiff's failure to present remotely plausible factual claims nullifies a rational factual basis for this Court to find that the amount in controversy for any "injury" would actually exceed $75,000. *Deng v. Fed. Bureau of Investigation Agencies*, No. 2:20-CV-154-Z-BR, 2021 WL 742297, at *5 (N.D. Tex. Jan. 26, 2021), report and recommendation adopted sub nom. *Deng v. FBI Agencies*, No. 2:20-CV-154-Z, 2021 WL 735207 (N.D. Tex. Feb. 25, 2021), *aff'd*, 850 F. App'x 323 (5th Cir. 2021).

34.     "Courts distinguish between subsequent events that cannot destroy subject matter jurisdiction and later revelations that, in fact, the required amount was or was not in controversy at the commencement of the action." *Jones v. Knox Expl. Corp.*, 2 F.3d 181, 183 (6th Cir. 1993).

*Rule 16*

35.     [T]he use of Rule 16 to determine whether there are any issues remaining in the case that justify proceeding to a full trial on the merits is not inconsistent with the general purpose of Rule 16. 6A Wright & Miller, Fed. Prac. & Proc. Civ. § 1529 (3d ed. 2023)

.

36.     "Since the parties at pre-trial conference agreed upon all necessary and relevant facts and exhibits, a decision on the merits may be entered without formal trial." *Newman v. Granger*, 141 F.Supp. 37, 39 (W.D.Pa.1956), *aff'd per curiam*, 239 F.2d 384 (3d Cir. 1957)

37.    "[J]udgment may be ordered . . . if there is no triable issue left at the end of the [pretrial] discussion." *Pifcho v. Brewer*, 77 F.R.D. 356, 357 (M.D. Pa. 1977)

.

### Rule 26(a)

38.    [A] party is subject to sanctions under Rule 37(c)(1) if the 'party fails to provide information or identify a witness as required by Rule 26(a) or (e), ... unless the failure was substantially justified or is harmless.' " *Lopez v. Don Herring Ltd*., 327 F.R.D. 567 (2018) (Horan, Mag. J.) (citing *Olivarez v. GEO Group, Inc.,* 844 F.3d 200, 203 (5th Cir. 2016))

### D.    Plaintiffs' Meager Disclosures Prove Their Amount in Controversy Allegations Not Remotely Plausible

39.    Plaintiffs have not provided a single piece of evidence to substantiate their damages claims.

40.    Many of Plaintiffs' damages claims are for future damages, e.g. future lost sales, future therapy costs. These damages require expert testimony. Plaintiffs have failed to provide any of the essentials for expert testimony, e.g. expert reports, names of experts during the discovery period. The CVs of two purported experts recently provided, see ¶26 above, are inadequate. Plaintiff needed to provide expert reports during discovery and allow its proposed experts to be deposed. FED. R. CIV. P. 26 (a)(2).

### E.    Plaintiffs Meager Disclosures Have Fatally Damaged Their Case

41.    Defendant does not know how much more evidence Plaintiffs plan to disclose at this late date. If they provide nothing more, then their case has significant and fatal flaws as outlined in Exhibit 5, with a copy of Plaintiffs' First Amended Complaint annotated with the numerous gaps in the evidentiary record.

DEFENDANT ALI ASSAF'S
MOTION TO DISMISS            PAGE 9

42.     On the other hand, should Plaintiffs plan to disclose additional evidence, for example

listing its "Experts" as witnesses, or providing sales receipts, Defendant will seek to have

them excluded from trial as a sanction under FED. R. CIV. P. Rule 37(c)(1). *See Lopez*, 327

F.R.D. at 575.

### F.     Investigation Of Plaintiffs' Public Records Show Plaintiffs Have No Damages

43.      Defendant investigated the publicly available records of Plaintiffs. See Exhibits 5, 6.[1]

44.     Plaintiff Poulter, in November of 2020 (months before the alleged defamation)  had

two campaigns: (1) "White Lily: the Trade Paperback" raised $5,424 with 135 backers; (2)

"Guinevere and the Divinity Factory #3 & #4" raised $963 with 39 backers.

45.     After the alleged defamation, Poulters sales increased. A campaign running during

April of 2021, "Guinevere and the Divinity Factory #4: Mega-campaign!" raised $10,171 with

315 backers. A campaign running from June to July of 2021, "Guinevere and the Divinity

Factory #5 raised $8,175 with 253 backers. Just one month later, in August of 2021, Poulter

had the best results of this entire career. His campaign "Guinevere and the Divinity Factory #5

/ Trade Paperback" raised $14,081 with 325 backers. Thus, if Defendant Assaf's alleged

defamatory statements had any effect on Mr. Poulter, these sales data suggest they boosted his

reputation with his customers.

46.     Poulter's annual damages claims do not survive close scrutiny either. He claims to

have "$25,000 in lost revenue this year [2021] and at least $75,000.00 over the next three (3)

years [2022-2024]" See Para. 8, above.

---

[1] Defendant's research may not be comprehensive. These are Plaintiffs' records and it is
Plaintiffs' obligation to disclose their sales data.

47.    His actual annual sales figures are as follows: 2020-$42,072; 2021-$41,011;

2022-$31,212. Exhibit 6. At first glance there appears to be a slight drop in the year 2021 until

one takes into account there were 8 campaigns in 2021 and only 6 in 2022. *Id*. Thus, his

average revenue per campaign went *up* from $5,259 in 2020 to $6,835 in 2021. Similarly,

annual revenues for 2022 are misleading. *Id*. Poulter ran only 4 campaigns that year so his

average revenue per campaign was $7,301. *Id*.

48.    Thus, these actual sales data suggest Poulters' earning power has, at least, remained

steady from 2020 through 2022. There is no evidence of damages. Accordingly, Poulter's

pleadings of lost revenue of $25,000 per year could not have been made in good faith. They

are absurd.

49.    Plaintiff Lamont's damages claims fair no better. Lamont began making comics in

2021. On the popular crowdfunding site KickStarter, his average revenue per campaign is as

follows: 2021-$4,266 (2 campaigns); 2022-$11,746 (3 campaigns); 2023-$12,548 (2

campaigns). See Exhibit 6. As with Plaintiff Poulter, if anything Lamont's sales data suggest

his reputation has improved since the alleged publication of Defendant's statements.

50.    For the same reason, Lamont's claims of loss of "$25,000.00 in annual sales and at

least $75,000.00 for [the] next 3 years [2022-24]" could not have been made in good faith.

51.    Additionally, both Plaintiffs' reputation damages: to "exceed $100,000" (Poulter) and

to "exceed 150,000" (Lamont) are utterly groundless and could not be based on a good faith

belief.

52.    Finally, we turn to Lamont's comic, "The Demonatrix." It was Defendant Assaf's

criticism of this comic, with its illustrations of underaged girls having sex, that led to this

lawsuit. In the First Amended Complaint Plaintiffs cite The Demonatrix seven times. Lamont alleges "Kickstarter rejected it upon re-submission by Mr. Lamont. Kickstarter declined to approve his next book project "Angel of Darkness."

53.     Notwithstanding Lamont's allegations,  Kickstarter *approved* "Angel of Darkness" in a campaign that ran from October 1, 2021 to November 1, 2021. See Exhibit 7. The campaign raised $4,266 from 141 backers.

54.     And perhaps even more astonishing in view of Plaintiffs' allegations, The Demonartix, by Plaintiff Lamont, is now selling its third volume on the platform "DriveThruComics.com," an adult oriented comic website:

  

https://www.drivethrucomics.com/product/352928/The-Demonatrix-1&affiliate_id=3035738
https://www.drivethrucomics.com/product/362331/The-Demonatrix-2&affiliate_id=3035738
https://www.drivethrucomics.com/product/411293/The-Demonatrix-3&affiliate_id=3035738
websites last visited on 7/14/2023

55.     Plaintiff Lamont's damages claims are even more absurd than that of his co-Plaintiff.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| JOHN T. LAMONT and | § | |
| PRESTON POULTER, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 3:21-CV-1176-K-BN |
| | § | |
| v. | § | |
| | § | |
| DEAN ASSAF A/K/A DA TALK | § | |
| VICTORIA KUNDERT A/K/A | § | |
| VIKKIVERSE, AND ETHAN VAN | § | |
| SCIVER. | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OF LAW OF DEFENDANT, ALI ASSAF IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS COMPLAINT  PURSUANT TO**

**FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) AND/OR RULE 16**

Defendant Ali Assaf hereby submits his Memorandum of Law in support of his

Motion to Dismiss Pursuant To Federal Rule Of Civil Procedure 12(B)(1) And/Or Rule 16

("Motion to Dismiss") as follows:

**I.      INTRODUCTION**

Defendant Ali "Dean" Assaf seeks an Order from this Honorable Court dismissing the

First Amended Complaint filed by Plaintiffs John T. Lamont and Preston Poulter with

prejudice. Recent events have shown the complaint lacked good faith allegations of the

jurisdictional amount. Defendant has recently challenged Plaintiffs' counsel to withdraw the

complaint citing violations of Rule 11.

Plaintiff did not withdraw the complaint. Instead Plaintiff served Defendant with a

"supplemental" preliminary disclosure under Rule 26(a). The supplemental disclosure shows

an utter lack of good faith belief in their damages claims. Accordingly, the amount in controversy alleged in the First Amended Complaint was not made in good faith and this Court should dismiss the case as lacking subject matter jurisdiction.

As matters now stand, Plaintiffs' case has evidentiary gaps that are numerous and fatal. Accordingly Defendant, in the alternative, seeks an Order dismissing this case as part of the upcoming pretrial conference because no triable issues remain.

## II.      FACTUAL BACKGROUND

In the interest of avoiding redundancy, Defendant incorporates herein by reference the numbered paragraphs of its Motion to Dismiss as though the same were fully set forth at length.

## III.     ISSUES TO BE RESOLVED

1.      Whether the case should be dismissed as lacking subject matter jurisdiction.

2.      Whether the case should be dismissed as part of the Rule 16 Pretrial Conference.

## IV.     LEGAL ARGUMENT

### A.      Lack of Subject Matter Jurisdiction

As the Court pointed out at the beginning of this lawsuit:

> "A federal court has no power to adjudicate claims where subject-matter jurisdiction does not exist and, consequently, must dismiss the action. *Stockman v. Fed. Election Comm'n,* 138 F.3d 144, 151 (5th Cir. 1998); see FED. R. CIV. P. 12(h)(3). The Court has an obligation to examine its subject-matter jurisdiction *sua sponte* at any time. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230–31 (1990); see also *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."). Subject-matter jurisdiction may not be waived. See *Ruhrgas AG*, 526 U.S. at 583."

Dkt. No. 5 at 1 (May 25, 2021).

The long held standard followed in this circuit was recently affirmed. "'Where the plaintiff has alleged a sum certain that exceeds the requisite amount in controversy, that amount controls if made in good faith.' . . . When a specific sum is alleged, a court may only dismiss for jurisdiction if "it . . . appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *Bank of N.Y. Mellon v. Riley*, No. 21-40383, 2022 WL 1773364 at *2 (5th Cir. 2022, June 1, 2022)  (citations omitted).

The current dispute is remarkably similar to *Dowling v. J. C. Penney Co*., 300 F. Supp. 307 (W.D. Pa. 1969)  (*citing Matthiesen v. Northwestern Mutual Ins. Co.*, 286 F.2d 775 (5th Cir. 1961)). This was an oral defamation case in which the Plaintiff was suing because she had been wrongly accused of stealing a purse by a store clerk. *Id*. at 308. After discovery, and as part of the pretrial conference, the Court reviewed Plaintiff's pretrial narrative. The Court informed Plaintiff's counsel that it was convinced to a legal certainty that the claim could not possibly reach the jurisdictional minimum. *Id*. at 309. The Court granted leave for Plaintiff to file supplemental pretrial reports but found the supplemental pretrial material entirely insufficient. *Id*. The court ordered the case dismissed. *Id*. at 311.

That case is closely analogous to ours. Both are on or about the pretrial conference stage. In that case the only damage evidence was a $50 bill from a doctor. In this case we have *no* evidence of damages. In that case the Plaintiff admitted that no one heard the alleged defamation. In this case there is no evidence that anyone heard the alleged defamation.

But there is more. As shown in Defendant's Motion, both Plaintiffs enjoyed greater success in the marketplace after the alleged defamation. Their average revenue per campaign

increased. Plaintiff Lamont even found he could market the Demonatrix a few months after the alleged defamation. He went on to publish three volumes.

These are Plaintiffs' own documents. Yet none of this information is evident in Plaintiffs First Amended Complaint.  It is difficult to imagine how Plaintiffs, in good faith, could so badly misjudge the effect Defendant's comments had on them and their reputations.

### B.      No Triable Issues Remain

Plaintiffs utterly failed to disclose evidence during discovery. This forces them now to navigate between Scylla and Charybdis. This is impossible. If Plaintiffs decide to stand pat, steering clear of charges of late disclosure of evidence, they will have no evidence to prove their case. The case must be dismissed.

On the other hand, if Plaintiffs steer in another direction, deciding to fill the many gaps in their evidence, they will have to serve on Defendant all of the evidence between now and the trial. But this sort of "sandbagging" is specifically prohibited by the rules of civil procedure, in particular Rule 26(a) and the evidence would be inadmissible as a sanction for discovery abuse under Rule 37(c)(1).

As matters now stand, Plaintiffs lack the minimum evidence needed to prove their case. To maintain a defamation cause of action, the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989)

. The defamatory statement must be "orally communicated or published to a third person"

---

*Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). See also *Hawbecker v. Hall*, 88 F.Supp.3d 723, 731 (W.D. Tex. 2015) ("however scandalous a publication might be, it can lead to a loss of reputation only if communicated to third persons.")

Plaintiffs have provided no evidence that even a single person heard these statements, much less believed them to be facts damaging to the Plaintiffs' reputations. This will prove difficult.  As pointed out previously, both Plaintiffs had better sales after the alleged defamation than before. Clearly the alleged statements had little or no effect on Plaintiffs customers. And, moreover, discovery is closed. Defendant will have no chance to offer any third persons, much less provide Defendant the chance to cross examine the witness.

Finally, Plaintiffs have provided some excerpts of YouTube videos, but these are inadmissible unless and until Defendant is provided the entire video as required by FED. R. EVID. 106. Indeed, a cursory review of the video excerpts shows that Plaintiffs have clipped off portions of the video in which Defendant Assaf makes clear he is talking about a comic book with an underaged girl in a pornographic setting. Where an opinion is accompanied by its underlying nondefamatory factual basis . . . a defamation action premised upon that opinion will fail, no matter how unjustified, unreasonable or derogatory the opinion might be. This is so because readers can interpret the factual statements and decide for themselves whether the . . . opinion was justified. *Kotlikoff v. The Cmty. News*, 89 N.J. 62, 72 (1982) . As the Fourth Circuit noted, "[b]ecause the bases for the . . . conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993). *See also Dodds v. ABC, Inc*., 145 F.3d 1053, 1067 (9th Cir. 1998) (an opinion "based

on an implication arising from disclosed facts is not actionable when the disclosed facts

themselves are not actionable").

## V.     CONCLUSION

Because the Plaintiffs' have not reached the jurisdictional amount in controversy,

Defendant requests the Court DISMISS the case because it lacks subject matter jurisdiction.

In the alternative, because there is no admissible evidence Defendant requests the

Court DISMISS this case because there remain no triable issues of fact going forward.

Finally, Defendant requests leave to file a motion for Rule 11 sanctions based on

Plaintiff and Plaintiff's counsels' behavior during this litigation.

Date:  July 17, 2023

Respectfully Submitted,

___/s/ Ali Assaf_____

Ali Assaf
Aliassaf959@gmail.com
(415) 450-5212
1014 East Alameda Street
Manteca, California 95336

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record for Plaintiffs are being served with a copy of this document together with its attachments, via the Court's CM/ECF system on July 17, 2023.

                                               /s/ Ali Assaf

                                              **Ali Assaf**
                                              **Aliassaf959@gmail.com**
                                              **(415) 450-5212**
                                              **1014 East Alameda Street**
                                              **Manteca, California 95336**