In the United States District Court
For the Northern District of Texas
Dallas Division

| | | |
|---|---|---|
| John T. Lamont and Preston Poulter | § | |
| Plaintiffs | § | |
| | § | No. 3:21-cv-1176-K-BN |
| v. | § | |
| | § | |
| Dean Assaf et al. | § | |
| Defendants | § | |

**Plaintiffs' Response to Defendant Ali Assaf's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or Rule 16 [Dkt. 66]**

# Table of Contents

Table of Contents ................................................................................................. i

Table of Authorities ............................................................................................ ii

Brief in Response ................................................................................................ 1

Factual Background ............................................................................................ 1

Procedural Posture ............................................................................................. 3

Arguments & Authorities .................................................................................. 4

A. Assaf's motion is not timely. ......................................................................... 4

B. Rule 12(b)(1): The Court has subject matter jurisdiction. ........................... 5

C. Rule 16: Triable issues remain. .................................................................... 6

   1. Rule 16 is not a proper vehicle for resolving disputed issues. .................. 6

   2. The evidence was timely disclosed. .......................................................... 7

   3. The evidence supports Plaintiffs' claims. ................................................. 7

      a) Assaf published statements to third parties ...................................... 8

      b) That were defamatory concerning the Plaintiffs ............................... 9

      c) With the requisite degree of fault ................................................... 10

      d) Causing Plaintiffs to suffer injury .................................................. 12

      e) Summary of the Evidence ............................................................... 12

D. Rule 11: Good Faith Filings ....................................................................... 13

Conclusion ....................................................................................................... 14

Certificate of Service ....................................................................................... 15

# Table of Authorities

<u>Case Law</u>

*Bentley v. Bunton*, 94 S.W.3d 561, 583 (Tex. 2002) ...........................................9

*Dallas Morning News v. Tatum*, 554 S.W.3d 614, 623–24 (Tex. 2018) ........ 7, 9

*Fluor Corp. v. Zurich American Ins. Co.*, No. 4:16CV00429 ERW
(E.D. Mo. July 12, 2021) ......................................................................................6

*Foster v. Laredo Newspapers Inc.*, 541 S.W.2d 809, 812–13 (Tex.
1976) ................................................................................................................... 10

*Huckabee v. Time Warner Entertainment Co.*, 19 S.W.3d 413, 420
(Tex. 2000) .......................................................................................................... 10

*Innovative Block v. Valley Builders Supply*, 603 S.W.3d 409, 417
(Tex. 2020) ............................................................................................................7

*In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) ................................................ 10

*Neely v. Wilson*, 418 s.W.3d 52, 70 (Tex. 2013) ............................................... 11

*Pifcho v. Brewer*, 77 F.R.D. 356, 357 (M.D. Pa. 1977) ......................................6

*Randall's Food Markets Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex.
1995) .....................................................................................................................7

*Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966) ...................................................... 10

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938) ..............5

*Texas Disposal Systems Landfill Inc. v. Waste Management Holdings
Inc.*, 219 S.W.3d 563, 581 (Tex. App.—Austin 2007, pet. denied)................... 12

*Thomas-Smith v. Mackin*, 238.W.3d 503, 506 (Tex. App.—Houston
[14th Dist.] 2007, no pet.) ....................................................................................8

*WFAA-TV Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) ............... 10–11

Statutes and Rules

28 U.S.C. § 1332 ..................................................................................4

Fed. R. Civ. P. 11 ..................................................................... 1, 4, 13

Fed. R. Civ. P. 12 ..................................................................... 1, 4, 13

Fed. R. Civ. P. 16 ......................................................................... 1, 4

Tex. Civ. Prac. & Rem. Code § 73.001 ................................................7

## Brief in Response

Plaintiffs John T. Lamont and Preston Poulter sued Defendant Dean Assaf for defamation arising out of a series of conversations broadcast on YouTube between him, Victoria Kundert, and Ethan Van Sciver in which Assaf called Lamont and Poulter pedophiles and child pornographers. Early in the case, Assaf filed a motion to dismiss Plaintiffs' claims under Rule 12(b)(6) for failure to state a claim. Dkt. 26. After briefing, the Court denied the motion. Dkt. 37. Assaf has now filed a subsequent motion, purportedly seeking dismissal under Rule 12(b)(1) and/or Rule 16, as well as perhaps Rule 11. The Court should deny the motion in all respects. The Court has subject matter jurisdiction, there are triable issues to be decided after trial, and Plaintiffs filed their complaint in good faith.

## Factual Background

In March, April, and May 2021, Assaf and Kundert used their show on YouTube to broadcast claims that Plaintiff John T. Lamont "is a pedophile" who "is making f_____ be pedophilic comics" and "child porn." Dkt. 6 at 7. Assaf and Kundert called for Lamont to "be ostracized from society" and "shot." Dkt. 6 at 7. Assaf and Kundert also claimed that Poulter engaged in the same activities (i.e., being a pedophile and making pedophilic comics and child pornography). Dkt. 6 at 9. Specifically, Assaf said that Plaintiff Lamont:

- is a pedophile;

1

- shares and participates in "Lolicon"[1] with others on the internet;

- is a diseased person who should be ostracized from society and/or be shot;

- makes "3D depictions of little girls having sex," which, according to Assaf, "shows the guy is a pediophilic";

- "is making f_____ be pedophilic comics";

- is making "Loli in 3D renders" that are "pedophilic";

- "is attracted to drawings of children"; and

- is making a comic that "is a pedophile comic."

Dkt. 6 at 6–7. Assaf said that Plaintiff Poulter:

- knew Plaintiff Lamont "was a pedophile";

- promoted and supported child pornography made by Plaintiff Lamont;

- engaged in the same behavior (i.e., pedophilia, child pornography, and Lolicon);

- participated and hosted on-going exchanges between participants of Lolicon through Comicsgate;

- shared an interest in underage girls having sex; and

- "Preston [made] child pornography and put COMICGSATE on the label."[2]

Dkt. 6 at 7–9. All these statements were made on YouTube and broadcast them

---

[1] "Loli" or "Lolicon" is a derogatory term referring to a fascination with cartoons of very young-looking girls engaged in varying degrees of erotic behavior. Dkt. 6 at 7 n.1.

[2] This last statement was made by Van Sciver, to which Assaf responded, "Yea, that was a pretty fuckin' gross move."

to the world.

Lamont and Poulter are not pedophiles, nor are they child pornographers. Assaf's statements were objectively and verifiably false.

As a result of those false statements, Lamont and Poulter have suffered noneconomic harm, such as embarrassment, humiliation, and loss of respect, as well as losses of sales and income and been forced to incur increased expenses for personal security and mental health treatment. Doc. 6 at 13–18; *see also* Dkt. 66-8, 66-9).

## Procedural Posture

After Assaf made his statement, Lamont and Poulter retained counsel. On April 27 and May 10, 2021, Lamont and Poulter, through counsel, requested that Assaf retract his false statements. Plaintiffs' Appendix 5 to 12. Assaf refused, so Lamont and Poulter filed suit on May 23, 2021.[3] Dkt. 1; Dkt. 6.

Assaf answered on August 4, 2021. Dkt. 18. Two weeks later, Assaf filed a motion to dismiss for lack of personal jurisdiction and for failure to state a claim. Dkt. 26. Lamont and Poulter filed a response in opposition on September 20, 2021. Dkt. 29. Among other things, Lamont and Poulter argued that Assaf consented to personal jurisdiction by filing an answer first and that they had,

---

[3] Lamont and Assaf also sued Van Sciver and Kundert in this lawsuit. The Court dismissed the claims against both of them for lack of personal jurisdiction. Dkt. 37 (Van Sciver); Dkt. 59 (Kundert). Kundert has claimed publicly that Lamont and Poulter missed the deadline to appeal those orders. However, those orders are neither final nor appealable so long as the claims against Assaf remain pending.

in fact, stated a claim for defamation. The Court denied Assaf's motion on February 7, 2022. Dkt. 35 (magistrate's report); Dkt. 37 (order accepting report).

On April 4, 2022, the Magistrate issued an Initial Scheduling Order setting the deadline for filing dispositive motions as May 8, 2023. Dkt. 44 at 9. No dispositive motions were filed, and the case was returned to this Court for trial on May 30, 2023. Dkt. 60. The parties attempted mediation on June 27, 2023. Dkt. 63. This case is set for trial on the September 11 docket. Dkt. 61.

On July 17, 2023, Assaf filed the instant motion to dismiss. Dkt. 66. The motion appears to be based on Fed. R. Civ. P. 12(b)(1) and 16, and seeks leave to file a motion under Rule 11.

Lamont and Poulter now file this response in opposition.

### Arguments & Authorities

**A.    Assaf's motion is not timely.**

The Court ordered Assaf to file any dispositive motions no later than May 8, 2023. Dkt. 44 at 9. Assaf did not file the instant motion until July 17, 2023. Dkt. 66. The motion is therefore untimely and can be denied on that ground alone.

**B.    Rule 12(b)(1): The Court has subject matter jurisdiction.**

This Court has diversity jurisdiction under 28 U.S.C. § 1332(a). First, there is complete diversity of citizenship. Lamont is a citizen of Florida, Poulter is a citizen of Texas, and Assaf is a citizen of California. Dkt. 6 at 1. Second,

4

the amount in controversy exceeds $75,000 for both Lamont and Poulter.

The starting point for the amount-in-controversy analysis is "the sum claimed by the plaintiff." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). Here, Lamont claimed the sum of $414,960 in damages, and Poulter claimed $330,250 in damages:

|  | Lamont | Poulter |
|---|---|---|
| Lost sales (past) | $5,000.00 | |
| Lost revenue from future lost sales | 75,000.00 | $75,000.00 |
| Additional security | | 14,000.00 |
| Lost revenue from not attending conventions | 10,000.00 | |
| Mental health expenses | 24,960.00 | 41,250.00 |
| Mental anguish | 150,000.00 | 100,000.00 |
| Reputational damages | 150,000.00 | 100,000.00 |
| **TOTAL** | **$414,960.00** | **$330,250.00** |

Dkt. 6 at 13–17. These sums do not take into account Lamont and Poulter's claims for exemplary damages. Dkt. 6 at 17–18.

Because these amounts were claimed in good faith, that should be the end of the inquiry. It bears noting, however, that the evidence, including Assaf's own evidence, generally supports Plaintiffs' claims. *See, e.g.,* Plaintiffs' Appendix at 24–28 (Lamont affidavit); Plaintiffs' Appendix at 13–16 (Poulter affidavit); Dkt. 66-9 (showing that Lamont raised $35,238 in 2022 and $25,095 so far in 2023); and Dkt. 66-8 (showing that Poulter raised $27,065 in 2019,

$42,072 in 2020, $41,011 in 2021, $29,202 in 2022, and $8,916 so far in 2023).

Thus, the amount in controversy exceeds the jurisdictional minimum, and this Court has subject-matter jurisdiction. Assaf's motion to dismiss under Rule 12(b)(1) should be denied.

## C.   Rule 16: Triable issues remain.

In his second issue, Assaf asks the Court to dismiss Plaintiffs' claims "because there is no admissible evidence" and "because there remain no triable issues of fact going forward." Dkt. 66 at 22. The argument appears to be, essentially, that a failure to disclose under Rule 26 leads to automatic exclusion of the undisclosed evidence, which eliminates any triable issues. *See* Dkt. 66 at 20–22. There are three problems with Assaf's argument.

### 1.   *Rule 16 is not a proper vehicle for resolving disputed issues.*

Assaf is attempting to shoehorn a no-evidence motion for summary judgment into Rule 16. But federal courts favor substance over form. Rule 16 should not be used to resolve legal and factual issues more properly resolved through summary judgment. *See Fluor Corp. v. Zurich American Ins. Co.*, No. 4:16CV00429 ERW (E.D. Mo. July 12, 2021) (citing *Pifcho v. Brewer*, 77 F.R.D. 356, 357 (M.D. Pa. 1977)). And it's too late to file a no-evidence motion for summary judgment. Dkt. 44 at 9 (setting the deadline for dispositive motions as May 8, 2023).

### 2.   *The evidence was timely disclosed.*

Plaintiffs' initial disclosures were made and served on April 28, 2022. Dkt. 66-4. The initial disclosures identified several categories of documents on which Plaintiffs intended to rely. Dkt. 66-4 at 2. Assaf never requested the documents themselves. On July 10, 2023, after mediation failed, Plaintiffs supplemented their disclosures to provide newly available evidence and the documents themselves. Dkt. 66-5. Notably, the supplemental disclosures were served more than 2 months before the scheduled trial docket. The initial disclosures were clearly timely, and there was no harm in making the supplemental disclosures more than two months before trial.

### 3.   *The evidence supports Plaintiffs' claims.*

Plaintiffs sued Assaf for defamation, slander per se, and statutory libel. Dkt. 6 at 10–13. Slander and libel are both subsets of defamation, with the only difference being whether the statements were made orally or "in written or other graphic form"). *See Dallas Morning News v. Tatum*, 554 S.W.3d 614, 623–24 (Tex. 2018) (citing *Randall's Food Markets Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995); Tex. Civ. Prac. & Rem. Code § 73.001). For both slander and libel, the elements are: the publication of a false statement of fact to a third party, that was defamatory concerning the plaintiff, with the requisite degree of fault, and "damages, in some cases." *Innovative Block v. Valley Builders Supply*, 603 S.W.3d 409, 417 (Tex. 2020). There is evidence for each of the elements.

a)    *Assaf published statements to third parties*

Assaf made comments on a YouTube broadcast referring to Plaintiffs as pedophiles and child pornographers. Dkt. 6 at 6–9. The comments were heard by at least two people: Van Sciver and Kundert. That by itself is sufficient.

In *Thomas-Smith v. Mackin*, the defendant made comments about the plaintiff to a third party during a private phone call. *Thomas-Smith*, 238.W.3d 503, 506 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The defendant moved for directed verdict on the basis that there was no publication. The court held:

> A person publishes a slanderous remark if she communicates it to a third person who is capable of understanding its defamatory meaning and in such a way that the person did understand its defamatory meaning.
>
> The undisputed evidence in this case shows that two people heard and understood the comment. One was [the other person on the phone call], who understood it . . . . The second person was [the defendant's] secretary, who understood it . . . .

*Thomas-Smith*, 238 S.W.3d at 507–08 (citations omitted). As such, "there was evidence of publication," and the trial court properly denied the motion for directed verdict. *Id*. Assaf's "nobody watches my show anyway" defense does not pass muster.

Additionally, the evidence shows that people *do* watch Assaf's show, that they heard his comments, and that they understood what they meant. *See* Plaintiffs' Appendix at 64, 66 (Kundert acknowledging that she and Assaf have

8

an audience who knows who Poulter and Lamont are); 99 (acknowledging that people who comment are people who are watching); 93–94 (people commenting about Poulter); 74 (Van Sciver "joined the livestream" after being "in the chat" (i.e., watching)); 117 (the original videos are still up and able to watched).

      *b)*    *That were defamatory concerning the Plaintiffs*

To be defamatory, a statement must be verifiable as false and, in its context, be understood to convey a verifiable fact. *Dallas Morning News v. Tatum*, 554 S.W.3d 614, 639 (Tex. 2018). This is a question of law for the Court. *Id.* In *Bentley v. Bunton*, the Texas Supreme Court held that accusations that a judge was corrupt were defamatory where the defendant "plainly and repeatedly stated that his accusations of corruption were based on actual fact," "cited specific cases and occurrences," and "constantly insisted that his charges were borne out by objective, provable facts," even though he "often also said that it was his opinion that [the judge] was corrupt." *Bentley*, 94 S.W.3d 561, 583 (Tex. 2002). Just so here.

Assaf did not merely throw out the words "pedophile" and "child pornographer" like epithets; he purported to back up his accusations with evidence. He specifically claimed that Lamont was making "3D depictions of little girls having sex," including "Loli in 3D renders," and that Poulter, by promoting Lamont's comics, was promoting and supporting child pornography. Dkt. 6 at 6–9.

Assaf's statements were verifiable statements of fact, and he made them

9

intending to convey verifiable facts. They are therefore actionable as statements of fact.

        c)     *With the requisite degree of fault*

Plaintiffs are private figures, so they need only show negligence. But even if the burden were heavier, they could carry it because Assaf knew his statements were false when he made them.

The requisite degree of fault in a defamation case is determined by the plaintiff's status. The Texas Supreme Court expressed it succinctly in *In re Lipsky*:

> A private individual need only prove negligence, whereas a public figure or official must prove actual malice. "Actual malice" in this context means that the statement was made with knowledge of its falsity or with reckless disregard for its truth.

*Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (citing *WFAA-TV Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *Huckabee v. Time Warner Entertainment Co.*, 19 S.W.3d 413, 420 (Tex. 2000)).

Neither Lamont nor Poulter hold any government position, so they are not public officials. *See Foster v. Laredo Newspapers Inc.*, 541 S.W.2d 809, 812–13 (Tex. 1976) (citing *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966)).

Nor are they public figures. An individual is a limited purpose public

10

figure[4] if:

> (1) the controversy at issue is public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution;

> (2) the plaintiff must have more than a trivial or tangential role in the controversy; and

> (3) the alleged defamation must be germane to the plaintiff's participation in the controversy.

*Neely v. Wilson*, 418 s.W.3d 52, 70 (Tex. 2013). The "controversy at issue" is who owns the Comicsgate mark. *See* Dkt. 6 at 8. Regardless of the role either Lamont or Poulter have in that controversy, whether they are pedophiles or child pornographers is not germane to who owns the mark.

Thus, they need only prove negligence. But even if they had to show actual malice—reckless disregard for the truth—they could do so. Assaf made specific and positive assertions that Lamont hade made comics showing little girls having sex and that Poulter was promoting those comics. Dkt. 6 at 6–9. If he had done any investigation at all, he would have known that his claims were false. For example, he would have known that Lamont's comics could not have contained "3D depictions of little girls having sex," because, at that time, Lamont had not actually produced a single comic. The Demonatrix, the comic that prompted Assaf's claims, was canceled on March 16, 2021, before raising

---

[4] Plaintiffs submit that neither Lamont nor Assaf has "achieved such pervasive fame or notoriety that they [have] become public figures for all purposes and in all contexts." *WFAA-TV Inc. v. McLemore*, 978 s.w.2D 568, 571 (Tex. 1998).

any funds, and he did not attempt another project until that October. Dkt. 66-9.

    *d)*    *Causing Plaintiffs to suffer injury*

Where statements are defamatory per se, injury and general damages are presumed without requiring specific evidence of harm to the plaintiff's reputation. Whether statements are defamatory per se is generally a matter of law for the Court to decide. A false statement will typically be classified as defamatory per se if it injures a person in his office, profession, or occupation; charges a person with the commission of a crime; imputes sexual misconduct; or accuses one of having a loathsome disease. *Texas Disposal Systems Landfill Inc. v. Waste Management Holdings Inc.*, 219 S.W.3d 563, 581 (Tex. App.— Austin 2007, pet. denied).

In the case at bar, if nothing else, Assaf's statements impute sexual misconduct to Lamont and Poulter. Assaf accused Lamont of being "a pedophile" and making a "pedophile comic." Dkt. 6 at 6–7. And Assaf accused Poulter of being "a pedophile," promoting and supporting child pornography, and being interested in underage girls having sex. Dkt. 6 at 7–9. In addition, Assaf plainly stated that Lamont "is a diseased person who should be ostracized." Dkt. 6 at 6–7.

Therefore, the statements were defamatory per se, and injury is presumed.

    *e)*    *Summary of the Evidence*

Assaf made specific statements about Lamont and Poulter as if they were

12

verifiable fact and as if he had evidence to back them up. He made those statements to two third parties during several shows broadcast on YouTube and watched by at least the people who were commenting on the shows. He had the requisite degree of fault because he knew his statements were false, or at least he knew that he did not know and had not done any investigation. And because of the nature of the statements and what they accuse Lamont and Poulter of, injury is presumed. Therefore, there is evidence to support each of the elements of Plaintiffs' claims, and this case should proceed to trial.

### D.   Rule 11: Good Faith Filings

As set forth above, Plaintiffs' claims in this lawsuit are all warranted by existing law and have evidentiary support. *See also* Dkt. 35, 37 (denying Assaf's Rule 12(b)(6) motion to dismiss on its merits).

Nevertheless, Assaf asked leave of Court to file a Rule 11 motion for sanctions against Plaintiffs' counsel. Dkt. 66 at 22. The request apparently arises from Assaf's claim that "the amount in controversy alleged in the First Amended Complaint was not made in good faith." Dkt. 66 at 17–18. That claim appears to be premised on his conclusion that "Poulter['s] earning power has, at least, remained steady" and "if anything Lamont's . . . reputation has improved since" Assaf said he drew pictures of little girls having sex. Dkt. 66 at 15.

The Court should therefore deny Assaf's request for leave to file a motion under Rule 11.

13

## Conclusion

The Court should deny Assaf's motion in its entirety. First, the motion is untimely. Second, the allegations and evidence show that this Court has subject-matter jurisdiction. Third, the evidence shows that there are triable issues to be determined by the finder of fact. And fourth, Plaintiffs' claims are warranted by existing law and supported by the evidence. The Court should therefore deny Assaf's motion and grant to Plaintiffs all such other and further relief to which they may be entitled.

Respectfully submitted,


*/s/ Jeremy M. Masten*
Jeremy M. Masten
Texas Bar No. 24083454
jeremy@themastenlawfirm.com
P.O. Box 541411
Houston, Texas 77254
(254) 307-9185

M. Sameer Ahmed
**THE AHMED FIRM PLLC**
Texas Bar No. 24001631
sameer@theahmedfirm.com
555 Republic Drive, Suite 300
Plano, Texas 75074
(972) 934-5858 - tel
(972) 934-5859 – fax

Counsel for Plaintiffs

14

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served on all parties through the Court's CM/ECF system, including those listed below, on July 26, 2023.

Dean Assaf                                      Pro se defendant
Aliassaf959@gmail.com


                                    */s/ Jeremy M. Masten*
                                    Jeremy M. Masten

15